IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **ZACHARY ZURICH,**<br><br>Plaintiff,<br><br>v.<br><br>**DAVID NEISWENTER;**<br><br>**NEIS ACQUISITIONS 5192, LLC;**<br>and<br>**NEIS ACQUISITIONS AUXGA, LLC,**<br><br>Defendants. | Civil Action No.<br>**5:26-cv-00388-MTT** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, Zachary Zurich, by and through undersigned counsel, files this First Amended Complaint against Defendants and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action for money damages against David Neiswenter for breach of the fiduciary duties he owes Zachary Zurich as his co-member in two closely held Georgia limited liability companies, and, secondarily, for judicial dissolution of those companies under O.C.G.A. section 14-11-603.

2. Zurich and Neiswenter each hold a fifty percent interest in Neis Acquisitions AUXGA, LLC, and each holds a fifty percent interest in the Illinois limited liability company that is the sole member of record of Neis Acquisitions 5192, LLC. Those two Georgia companies, together with two further companies that Zurich and Neiswenter each wholly own, hold the whole of a regional shopping center in Macon, Bibb County, Georgia, and of an adjoining auxiliary parcel.

3. Since at least early 2026, Neiswenter has refused to execute lease renewals, expansions, and new leases at the property that would have produced substantial income, has

repudiated to a prospective tenant a transaction that had progressed to construction drawings, has refused to engage with unsolicited offers to purchase the property, and has refused to permit Zurich to market it. He has done so, Zurich alleges, in order to suppress the value of the companies and of Zurich's interest in them, and to acquire that interest at a discount.

4. The companies face a loan of approximately $8.37 million that matures on December 17, 2026, on which the lender has already asserted a financial covenant default. Neiswenter's refusal to lease, to sell, or to permit action has left the companies unable to address that maturity.

5. Zurich seeks compensatory damages from Neiswenter personally, and a decree dissolving the companies so that their assets may be realized and distributed.

## II. PARTIES

6. Plaintiff Zachary Zurich is a natural person and a citizen of the Commonwealth of Virginia, domiciled in Fairfax County, Virginia.

7. Defendant David Neiswenter is a natural person and a citizen of the State of Florida, domiciled in Broward County, Florida.

8. Defendant Neis Acquisitions 5192, LLC ("5192 Georgia") is a Georgia limited liability company, organized on October 6, 2021 under Control Number 21260064, whose registered agent is Registered Agents Inc., 8735 Dunwoody Place, Suite R, Atlanta, Fulton County, Georgia 30350. Section 3.1 of its written operating agreement identifies its sole member as Neis Acquisitions 5192, LLC, an Illinois limited liability company ("5192 Illinois"), holding a one hundred percent interest. 5192 Georgia is named as a nominal defendant only.

9. 5192 Illinois is not a party to this action. Section 3.1 of its written operating agreement identifies its only members as Zachary Zurich, holding a fifty percent interest, and David Neiswenter, holding a fifty percent interest. Zurich and Neiswenter executed the operating agreement of 5192 Georgia in their capacities as members of 5192 Illinois, and at all material times managed the business of 5192 Georgia in that capacity.

10. Defendant Neis Acquisitions AUXGA, LLC ("AUXGA") is a Georgia limited liability company, organized on October 29, 2021 under Control Number 21278319, whose registered agent is Registered Agents Inc., 8735 Dunwoody Place, Suite R, Atlanta, Fulton County, Georgia 30350. Section 3.1 of its written operating agreement, executed by both men

on November 1, 2021, identifies its only members as David Neiswenter, holding a fifty percent interest, and Zachary Zurich, holding a fifty percent interest. AUXGA is named as a nominal defendant only.

11. Two additional Georgia limited liability companies hold record interests in the Bibb County property but are not parties to this action. 2364 TICZ, LLC, Control Number 21278790, is wholly owned by Zurich. Neis Acquisitions GA, LLC, Control Number 21278742, is wholly owned by Neiswenter. Each was organized on October 29, 2021, each takes the citizenship of its sole member, and neither is asserted to be a real party to the controversy pleaded here. Their interests are described below so that the record of ownership is accurately stated.

## III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. section 1332(a)(1). Zurich is a citizen of Virginia and Neiswenter is a citizen of Florida, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. The amount in controversy is satisfied by Count I. Zurich seeks compensatory damages from Neiswenter personally, in an amount pleaded with particularity in Section VI below and substantially exceeding $75,000. Plaintiff does not rely upon the dissolution claim pleaded in Count II to establish the amount in controversy.

14. 5192 Georgia and AUXGA are named as nominal defendants only. Zurich asserts no claim for damages against either, seeks no recovery from either, and alleges no wrongdoing by either. The substantive controversy is between Zurich and Neiswenter, the two men whose deadlock prevents the companies from acting. The companies are named solely to the extent necessary to effectuate the dissolution relief sought in Count II.

15. For purposes of diversity jurisdiction, federal courts disregard nominal parties and determine jurisdiction upon the citizenship of the real parties to the controversy. *Thermoset Corp. v. Building Materials Corp. of America*, 849 F.3d 1313, 1317 (11th Cir. 2017) (quoting *Navarro Savings Association v. Lee*, 446 U.S. 458, 461 (1980)). A Georgia limited liability company has been held to be a nominal party in an action for judicial dissolution under O.C.G.A. section 14-11-603, where the statute authorizes dissolution on application by or for a member, nothing in the statute requires that the company be named, and the plaintiff asserts no claim against it. *Fox v. Bulkley*, No. 3:24-cv-00031-TES, Doc. 16 (M.D. Ga. May 17, 2024).

16. Plaintiff discloses to the Court that the nominal character of the entity Defendants is material to the exercise of jurisdiction. A limited liability company takes the citizenship of each of its members. Because Zurich is a member of AUXGA and a member of 5192 Illinois, which is in turn the sole member of 5192 Georgia, each entity Defendant would be a citizen of Virginia as well as of Florida if its citizenship were counted. Plaintiff alleges that neither entity's citizenship is to be counted, for the reasons stated in the preceding two paragraphs, and pleads the alternative set out in the paragraph that follows so that the question may be resolved without prejudice to the claim that carries the amount in controversy.

17. In the alternative, and without conceding that either entity Defendant is other than a nominal party, if the Court determines that 5192 Georgia or AUXGA is a real party in interest whose citizenship must be considered for purposes of 28 U.S.C. section 1332(a)(1), that entity is a dispensable party as to Count I. Count I seeks damages from Neiswenter personally for breach of fiduciary duties owed directly to Zurich as a member of a closely held limited liability company. No relief is sought from either entity on Count I, complete relief on Count I can be accorded between Zurich and Neiswenter alone, and neither entity claims an interest relating to the subject of Count I that would as a practical matter be impaired by adjudication in its absence. Fed. R. Civ. P. 19(a)(1). Plaintiff therefore respectfully requests that, in lieu of dismissing this action, the Court exercise its authority under Fed. R. Civ. P. 21 to drop the entity Defendant or Defendants and to dismiss Count II without prejudice, permitting Count I to proceed. See N*ewman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989); *Grupo Dataflux v. Atlas Global Group*, *L.P.*, 541 U.S. 567, 572 (2004).

18. This Court has personal jurisdiction over Neiswenter because he owns and manages membership interests in Georgia limited liability companies that own and operate Georgia real property, has transacted business concerning that property in this District, and the claims arise directly from that conduct.

19. Venue is proper in this District under 28 U.S.C. section 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred here and a substantial part of the property that is the subject of the action is situated in Bibb County, Georgia.

20. This action is properly assigned to the Macon Division because Bibb County lies within the Macon Division of the Middle District of Georgia. 28 U.S.C. section 90(b)(2).

## IV. THE COMPANIES AND THE PROPERTY

21. By Limited Warranty Deed dated December 17, 2021 and recorded January 21, 2022 in Deed Book 11126, Page 338 of the records of the Clerk of the Superior Court of Bibb County, Georgia, DDRTC Eisenhower Crossing LLC, a Delaware limited liability company, conveyed approximately twelve acres in Land Lot 111 of the 4th Land District, Bibb County, Georgia, known as Eisenhower Crossing and bearing tax parcel numbers L0840167 and L0840168 (the "Property"), to three grantees as tenants in common in the following undivided shares:

(a) Neis Acquisitions 5192, LLC, a Georgia limited liability company, as to a 60.75% interest;

(b) Neis Acquisitions GA, LLC, a Georgia limited liability company, as to a 19.625% interest; and

(c) 2364 TICZ, LLC, a Georgia limited liability company, as to a 19.625% interest.

22. 5192 Georgia therefore holds the largest single undivided interest in the Property, but not the whole of it. It cannot convey, encumber, or lease the entirety of the Property without the joinder of both co-tenants. One of those co-tenants, Neis Acquisitions GA, LLC, is wholly owned and controlled by Neiswenter. The other, 2364 TICZ, LLC, is wholly owned and controlled by Zurich.

23. AUXGA is not a grantee under the December 2021 deed. AUXGA has at all material times acted as the landlord and leasing entity for a portion of Eisenhower Crossing, and has been identified as the landlord in letters of intent, in tenant construction correspondence, and, jointly with 5192 Georgia, as the owner in a brokerage listing agreement for the shopping center dated June 11, 2026. Upon information and belief, AUXGA holds title to an adjoining legal parcel that is physically integrated with the Property, comprising the building extending from the Ross premises to the Staples premises, and referred to herein as the "Auxiliary Property."

24. The Property and the Auxiliary Property together constitute a regional shopping center. Its tenants have included Kroger, Ross Stores, Marshalls, Bed Bath & Beyond, Dick's Sporting Goods, Old Navy, Staples, Rainbow, and others, as reflected in the memoranda of lease recorded against the Property.

25. On December 17, 2021, 5192 Georgia executed a promissory note payable to City National Bank of Florida in the original principal amount of $8,967,915.00, bearing interest at a fixed rate and requiring monthly payments of principal and interest of $45,436.69 on a twenty-five year amortization, maturing December 17, 2026 (the "CNB Loan").

26. The CNB Loan is secured by a Mortgage, Assignment of Leases and Rents, Security Agreement and Financing Statement given by 5192 Georgia, 2364 TICZ, LLC, and Neis Acquisitions GA, LLC, recorded in the public records of Bibb County, Georgia. Zurich, Neiswenter, and 2364 TICZ, LLC each executed a Limited Guaranty of Payment and Performance in favor of the lender.

27. As of the most recent statement, the outstanding balance of the CNB Loan is $8,369,190.47.

28. By letter dated June 5, 2026, City National Bank of Florida notified the borrower of a default under the loan's debt service coverage ratio covenant, asserting a ratio of 1.07 to 1.00 against a required ratio of 1.30 to 1.00.

29. The CNB Loan matures on December 17, 2026. The companies do not have cash sufficient to retire the principal balance at maturity.

## V. THE GOVERNING AGREEMENTS AND THE DEADLOCK

30. 5192 Georgia is governed by a written operating agreement dated November 1, 2021, a true and correct copy of which is attached as *Exhibit A*. Its sole member of record, 5192 Illinois, is itself governed by a written operating agreement dated March 1, 2019, a true and correct copy of which is attached as *Exhibit B*. AUXGA is governed by a written operating agreement dated November 1, 2021 and executed by Zurich and Neiswenter, a true and correct copy of which is attached as *Exhibit C*.

31. Section 1.1 of the AUXGA operating agreement recites the name of the company as "Neis Acquistions GA, LLC." Plaintiff alleges that this recital is a scrivener's error carried over from a form. The agreement was executed by Zurich and Neiswenter on November 1, 2021, the members have at all times treated it as the operating agreement of AUXGA, and no other written operating agreement of AUXGA exists.

32. Section 2.1 of the 5192 Georgia operating agreement provides, in relevant part:

> a. The limited company's everyday business and affairs shall be vested in its members.
>
> b. Any member or agent authorized by a member may enter into any contract or execute and deliver any instrument on behalf of the limited company, consistent with the terms of this agreement, unless that member is aware that the other member objects in which case there shall be a vote by all those with voting interest and the majority shall prevail. This authority may be general or confined to specific instances. No contract for sale or lease shall be entered into unless either both members sign or there is a vote of voting interest and the majority authorizes such action. Notwithstanding anything contained herein Zachary Zurich is authorized to sign any document necessary for completing any purchase or sale of real property including borrowing money in connection therewith without further authorization.

33. Section 2.1 of the AUXGA operating agreement and Section 2.1 of the 5192 Illinois operating agreement are identical to the foregoing in every respect except that neither contains the final sentence. Each provides, without qualification, that "[n]o contract for sale or lease shall be entered into unless either both members sign or there is a vote of voting interest and the majority authorizes such action."

34. Plaintiff pleads the final sentence of Section 2.1(b) of the 5192 Georgia operating agreement affirmatively, and alleges that it does not relieve the deadlock alleged here. By its terms it authorizes Zurich to sign documents necessary to complete a purchase or sale of real property and to borrow money in connection with a purchase or sale. It does not extend to leasing, and no leasing transaction described in Section VI below falls within it. It appears in no other operating agreement in this structure. And it cannot in any event accomplish a sale of the shopping center, because 5192 Georgia owns only an undivided 60.75% interest in the Property, so that any conveyance of the whole requires the joinder of Neis Acquisitions GA, LLC, which Neiswenter wholly owns and controls.

35. Because Zurich and Neiswenter each hold exactly fifty percent of the voting interest in AUXGA and each hold exactly fifty percent of the voting interest in 5192 Illinois, no majority of voting interest can be assembled in either company. Neither company can lease its property, and neither can sell its property, unless both men agree.

36. Section 6.1 of each of the three operating agreements provides that "[m]embership interest cannot be sold without consent of a majority interest." Because no majority interest can be assembled, neither member can sell or transfer his interest to a third party without the consent of the other. There is no market, ready or otherwise, in which Zurich can dispose of his interest.

37. None of the three operating agreements contains a tiebreaking provision, a buy-sell provision, a put or call right, an appraisal or valuation procedure, a deadlock-breaking mechanism, or any dispute resolution provision.

38. Georgia law requires a member who participates in the management of a limited liability company to act in a manner he believes in good faith to be in the best interests of the company, and with the care an ordinarily prudent person in a like position would exercise under similar circumstances. O.C.G.A. section 14-11-305(1).

## VI. NEISWENTER'S CONDUCT

39. Beginning no later than January 2026, Zurich presented Neiswenter with a series of specific, documented transactions that would have increased occupancy, net operating income, and value at the shopping center. Neiswenter refused to execute each of them, repudiated one of them to the prospective tenant, or failed to respond at all. Those transactions are set out below as follows:

### A. Rainbow; Suite 428 Expansion and Extension

40. The tenant Rainbow USA Inc., a New York corporation, has occupied Unit No. 2 at the shopping center, containing approximately 4,993 square feet, under a lease dated August 13, 2008 as amended January 1, 2011.

41. On June 16, 2026, counsel for Rainbow transmitted an execution copy of a Second Amendment to Lease, stating that it "has been signed on behalf of Tenant" and asking that the landlord countersign. The Second Amendment provided for the expansion of the premises into Unit No. 3, containing approximately 2,625 square feet and formerly occupied by AT&T, for a total of 7,618 square feet, and for a corresponding extension of the term.

42. The Second Amendment defines "Landlord" to mean "NEIS ACQUISITIONS 5192, LLC, NEIS ACQUISITIONS GA, LLC and 2364 TICZ, LLC, as tenants-in-common." It identifies the shopping center as Macon-Bibb County tax parcel L0840168, approximately 7.34 acres, containing gross leasable area of 43,263 square feet in three buildings at 4632, 4634 and 4640 Presidential Parkway.

43. The tenant gave the landlord one week to countersign, advised that it would not negotiate further, and advised that it would close Store No. 428 at the expiration of the existing

lease if the amendment were not accepted. The expansion also secured a co-tenancy requirement benefiting another tenant at the shopping center.

44. Zurich forwarded the executed amendment to Neiswenter on July 8, 2026, executed it that day on behalf of 5192 Georgia and on behalf of 2364 TICZ, LLC, and asked Neiswenter to countersign, writing that if he could not obtain an extension he should "countersign." The tenant executed by Gabriel J. Chehebar as Authorized Representative.

45. The signature block of the Second Amendment for Neis Acquisitions GA, LLC, the co-tenant that Neiswenter wholly owns and controls, remains blank. Neiswenter did not sign it in that capacity or in any other.

46. On August 3, 2026, Neiswenter wrote that the Second Amendment "as drafted is factually incorrect" and was one "which we could not execute in its current form anyway." He did not propose a conforming amendment, and none was ever executed.

**B. Ross Dress For Less and dd's Discounts**

47. By letter of intent dated January 20, 2026, The Shopping Center Group, LLC, acting through Jeff Kerker, proposed to Newmark, acting through Justin Callaway, a lease of a store of 23,748 square feet of leasable floor area at 4628-4696 Presidential Parkway for a dd's Discounts store. The letter of intent identifies the tenant as Ross Dress For Less, Inc. and the landlord as "NEIS Acquisitions AUXGA, LLC."

48. The letter of intent provides for minimum rent of $3.00 per square foot of leasable floor area for lease years one through ten, or $71,244.00 per year, with four option periods at annual minimum rents of $83,118.00, $94,992.00, $106,866.00 and $118,740.00 respectively. It obligates the landlord, among other things, to repair or replace the roof as a delivery condition. It states that it is non-binding and that neither party is bound until a definitive lease is executed.

49. Zurich executed the landlord acknowledgment of the letter of intent as "Member." The tenant's acknowledgment block, by which Ross Dress For Less, Inc. would acknowledge the terms to be submitted to the Ross Real Estate Committee, was never executed.

50. The transaction nevertheless progressed. On August 17 and 18, 2026, Ross Stores, Inc. circulated a tenant progress plan for landlord review and approval, marked as requiring

urgent approval, which identifies “NEIS Acquisitions AUXGA, LLC” as the landlord and “Andy Neiswenter” as the Landlord’s Representative.

51. On August 18, 2026, Neiswenter responded to the tenant’s team, asking “what has been mutually agreed to by landlord and tenant? I am not aware of any mutual agreement of any-kind,” and “why is the Tenant’s construction team presenting construction plans for Landlord review and approval, to a Landlord that has not entered into a Lease with said Tenant?” By that communication Neiswenter repudiated the transaction directly to the prospective tenant. No lease was executed.

52. On July 31, 2026, Neiswenter had written to Zurich that he was “nearly done with the abstract of the Ross lease, necessary to confirm all restrictive rights, existing Co-Tenancy, and OEA covenants which need to be addressed in the proposed Amendment,” and that he expected to have “a fully vetted draft Amendment” shortly. He never produced one.

**C. Five Below**

53. By letter of intent dated July 10, 2026, a lease was proposed of Suite C11, containing approximately 11,048 leasable square feet, to Five Below. The letter of intent identifies the landlord as “NEIS Acquisitions AUXGA, LLC which is the fee simple owner of Eisenhower Crossing.”

54. The letter of intent provides for minimum rent of $5.00 per square foot for lease years one through five, or $55,240.00 per year, and $6.00 per square foot for lease years six through ten, or $66,288.00 per year, together with a tenant improvement allowance of $50.00 per square foot, or $552,400.00, and an exclusive against competing variety and general merchandise use at the shopping center.

55. The Five Below transaction was expressly conditioned upon the dd’s transaction. The tenant reserved the right to terminate if no fully executed dd’s lease was in place six months before delivery of the premises, and the opening co-tenancy required Ross, dd’s, Best Buy and Kroger to be open and operating.

56. The landlord acceptance block of the Five Below letter of intent was never executed. Neiswenter would not authorize its execution. Because the dd’s transaction failed, the condition upon which Five Below depended could not be satisfied, and that transaction failed with it.

**D. Electric Vehicle Charging Installation**

57. By Electric Vehicle Charging Station Hosting Agreement dated February 25, 2026, Georgia Green Energy Services, LLC proposed to install and operate three direct current fast charging dual port stations at the shopping center for a term of five years. The agreement identifies the host as "nies acquisitions 5192, llc."

58. The agreement provides for compensation to the host of $100.00 per month per charging space, together with twenty-five percent of Gross Charging Revenue. It is expressly contingent upon approval under the Georgia Power Make Ready Program and terminates automatically if that approval is not obtained.

59. Zurich executed the agreement on February 25, 2026 as Member. Neiswenter declined to execute the documents required to advance the application, and the opportunity did not close.

**E. GameStop**

60. GameStop, an existing tenant at the shopping center, advised that it would remain in occupancy but would not agree to an increase in rent. Upon information and belief, Neiswenter rejected that proposal without notice to Zurich and without his consent. The store closed, the premises were vacated, and the rental stream was lost.

**F. Deferred Landlord Obligations**

61. Zurich obtained and presented quotations for roof replacement work at the shopping center. That work is a landlord obligation to an existing tenant and was also a delivery condition of the dd's transaction described above. Neiswenter did not approve the work.

**G. Offers to Purchase and the Refusal to List**

62. The members obtained broker opinions of value for the shopping center from four separate national brokerage firms. The opinions ranged from approximately $21,000,000 to approximately $29,000,000, with the majority falling between $23,000,000 and $27,000,000.

63. Neiswenter contended that the shopping center would be worth more with its vacant space left unleased, on the theory that a purchaser would prefer the opportunity to lease that space itself at a higher rate. Each of the brokers rejected that contention in writing, advising that the value of a shopping center is a function of its occupancy and its net operating income,

and that the shopping center would be worth materially less if the proposed leases were not executed.

64. An offer to purchase was received from Dhanani Private Equity Group in the approximate amount of $22,400,000, with an indication that the offeror would consider a higher figure. Zurich transmitted the offer to Neiswenter. Neiswenter did not respond to it.

65. A further offer to purchase was received from Elevate, also referred to as Soleil Holdings. Neiswenter likewise declined to engage with it.

66. A listing agreement dated June 11, 2026 with Atlantic Capital Partners identifies "NEIS Acquisition 5192, LLC and NEIS Acquisition AUXGA, LLC" as Owner of Eisenhower Crossing. The owner signature block is blank. Neiswenter has refused to list the shopping center for sale, refused to execute any listing agreement, and refused to permit Zurich to market it.

67. Neiswenter's control of Neis Acquisitions GA, LLC forecloses a sale of the shopping center independently of any question of authority under the operating agreements. Because that company holds an undivided 19.625% interest in the Property as a tenant in common, no conveyance of the Property as a whole can be made without its joinder, and Neiswenter alone decides whether it will join.

## H. Written Demand and Refusal

68. By electronic mail dated August 3, 2026, Zurich made written demand upon Neiswenter, stating that Neiswenter had not listed the shopping center, had not initiated financing, had not responded to the offer to purchase, and had not provided comments on the Ross or dd's transactions; that the Rainbow lease extension was "hanging by a thread"; that distributions had been halted; and that if the Rainbow amendment were not signed by noon the following day Zurich would request the appointment of a receiver.

69. That demand further stated that in Zurich's view the members were "too deadlocked on too many issues to keep trying to run this together."

70. Neiswenter did not sign the Rainbow amendment, did not respond substantively to the demand, and did not take any of the actions demanded.

## I. Purpose

71. Upon information and belief, Neiswenter withheld consent to each of the foregoing transactions not for any legitimate business reason but in order to deprive the companies of income, to suppress the market value of the shopping center and of the membership interests in the companies, and thereby to compel Zurich to sell his membership interests to Neiswenter at a price below fair value.

72. Neiswenter has communicated, directly and through counsel, that he wishes to acquire Zurich's membership interests and to retain the properties.

## VII. THE CONSEQUENCES

73. As a direct and proximate result of Neiswenter's conduct, substantial space at the shopping center remains vacant that would have been leased, existing tenancies have been placed at risk, net operating income is materially lower than it would otherwise be, and the market value of the shopping center and of the companies is materially depressed.

74. The lost minimum rent from the transactions described in Section VI, exclusive of option periods, percentage rent, recoveries and the value of preserved co-tenancy, exceeds $126,000 per year in the aggregate, and would have continued for the initial terms of the leases proposed.

75. The injury is not measured by lost rent alone. A shopping center is valued by reference to its net operating income, so that each dollar of foregone annual rent reduces the value of the asset by a multiple of that dollar. The foregone rent described above therefore represents a reduction in the value of the shopping center substantially exceeding the rent itself.

76. The delay has caused further injury independent of the foregone rent. A purchaser's cost of debt is its principal expense, and an increase in prevailing interest rates reduces the price a purchaser will pay for an income-producing property. Upon information and belief, the shopping center would have been sold into a materially lower interest rate environment had Neiswenter engaged with the offers to purchase when they were made, and the movement in prevailing rates during the period of his refusal has reduced the value of the shopping center by several million dollars.

77. The depressed net operating income has in turn contributed to the debt service coverage ratio default asserted by City National Bank of Florida on June 5, 2026.

78. With the CNB Loan maturing on December 17, 2026 and the companies unable to retire it, the companies face default interest, enforcement costs, and the risk of foreclosure upon an asset for which an offer of approximately $22,400,000 was received.

79. Zurich has suffered injury separate and distinct from any injury to the companies, including the suppression of the value of his own membership interests for the purpose of a coerced sale to Neiswenter, the coercive acquisition effort directed at him personally, the personal exposure created by his guaranty of the CNB Loan, and the indefinite entrapment of his capital in companies that cannot act and from which the operating agreements afford him no exit.

## COUNT I

**Breach of Fiduciary Duty — O.C.G.A. § 14-11-305**
**(Direct Claim Against Defendant Neiswenter)**

80. Plaintiff realleges and incorporates by reference paragraphs 1 through 79 as though fully set forth herein.

81. Neiswenter participates in the management of 5192 Georgia and of AUXGA. Georgia law requires him to act in a manner he believes in good faith to be in the best interests of each company and with the care an ordinarily prudent person in a like position would exercise. O.C.G.A. section 14-11-305(1).

82. Zurich brings this Count directly and not derivatively.

83. The general rule that a claim for injury to a company must be brought in the right of the company is not an end in itself. In *Thomas v. Dickson*, 250 Ga. 772, 301 S.E.2d 49 (1983), the Supreme Court of Georgia identified the reasons underlying the rule: that "it prevents a multiplicity of lawsuits by shareholders"; that "it protects corporate creditors by putting the proceeds of the recovery back in the corporation"; that "it protects the interests of all shareholders by increasing the value of their shares, instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit"; and that "it adequately compensates the injured shareholder by increasing the value of his shares." 250 Ga. at 774. Where those reasons are not served, the rule need not be applied, and a shareholder in a closely held company may proceed directly.

84. Georgia has applied that principle to closely held limited liability companies and has declined to confine it to companies organized as statutory close corporations, holding that "a direct action is proper in the context of a close corporation where the exceptional circumstances found in *Thomas* . . . are present, even though the corporation was not created pursuant to OCGA § 14-2-901 et seq.," and that there is "no reason not to allow LLC members to bring direct actions in analogous situations." *Stoker v. Bellemeade, LLC*, 272 Ga. App. 817, 615 S.E.2d 1 (2005), rev'd in part on other grounds sub nom. *Bellemeade, LLC v. Stoker*, 280 Ga. 635, 631 S.E.2d 693 (2006).

85. None of the reasons for the derivative rule is served here:

(a) There is no danger of a multiplicity of suits. Zurich and Neiswenter are the only members of AUXGA and the only members of 5192 Illinois, the sole member of 5192 Georgia. No other person holds an interest capable of asserting this claim.

(b) Every member is before the Court. Zurich is the Plaintiff and Neiswenter is the Defendant. There is no absent member whose interests require the protection of a derivative action.

(c) No creditor is protected by requiring a derivative action here, and none is prejudiced by a direct one. The relief sought is a personal judgment against Neiswenter. It does not reach the assets of either company, does not withhold from either company proceeds to which it is entitled, does not diminish the collateral securing the CNB Loan, and does not alter the obligations of any guarantor.

(d) A recovery returned to the companies would not adequately compensate Zurich by increasing the value of his interest. Neiswenter holds half of each company and would therefore recover half of any judgment entered against himself. And because Section 6.1 of each operating agreement forbids the sale of a membership interest without the consent of a majority in interest that cannot be assembled, there is no market in which Zurich could realize any increase in the value of his interest. The premise of the fourth reason is absent here for the same want of a ready market that *Thomas* identified in the close corporation.

86. Zurich's injury is separate and distinct from any injury to the companies. Neiswenter's object was Zurich's membership interests, and the value suppressed was the value at which Neiswenter proposed to acquire them. Section 6.1 of each operating agreement forecloses any sale of that interest without the consent of a majority in interest that cannot be

assembled, so Zurich has no market in which to realize its value and no means of escaping the suppression except through this action.

87. Neiswenter breached the duties owed to Zurich by refusing to execute the transactions described in Section VI, by repudiating the dd's transaction directly to the prospective tenant, by refusing to engage with offers to purchase the shopping center, by refusing to permit Zurich to market it, by withholding the joinder of the co-tenant he controls, and by doing so for the purpose of acquiring Zurich's interests at a discount.

88. Neiswenter's conduct was in his own self-interest and contrary to the interests of the companies and of Zurich.

89. As a direct and proximate result, Zurich has suffered damages in an amount to be proven at trial, substantially exceeding $75,000, including the diminution in the value of his membership interests, lost distributions, and consequential damages.

90. In the alternative, and only if the Court determines that the injury alleged is an injury to AUXGA rather than to Zurich individually, Zurich brings this Count in the right of AUXGA pursuant to O.C.G.A. section 14-11-801, of which he is a member. Zurich made written demand upon Neiswenter on August 3, 2026 as set forth above. Neiswenter refused to take the action demanded. Waiting for the expiration of the ninety day period prescribed by O.C.G.A. section 14-11-801(3) would result in irreparable injury to AUXGA, because the CNB Loan matures on December 17, 2026, the lender has asserted a covenant default, and the leasing opportunities described above expire or have expired by their terms.

WHEREFORE, Plaintiff prays for judgment against Defendant David Neiswenter for compensatory damages in an amount to be proven at trial and in excess of $75,000, together with pre-judgment and post-judgment interest, costs, and such further relief as the Court deems just.

## COUNT II
## Judicial Dissolution — O.C.G.A. § 14-11-603

91. Plaintiff realleges and incorporates by reference paragraphs 1 through 79 as though fully set forth herein.

92. O.C.G.A. section 14-11-603(a) authorizes a court, on application by or for a member, to decree dissolution of a limited liability company whenever it is not reasonably

practicable to carry on the business in conformity with the articles of organization or a written operating agreement.

93. Zurich is a member of AUXGA and brings this Count as to AUXGA on application by a member.

94. As to 5192 Georgia, the member of record is 5192 Illinois. Zurich brings this Count as to 5192 Georgia on application for a member. 5192 Illinois is unable to make application on its own behalf for two independent reasons. First, it is governed by an operating agreement that requires the agreement of both Zurich and Neiswenter, holding fifty percent each, before it may act, and they do not agree. Second, 5192 Illinois has been administratively dissolved under the laws of the State of Illinois, and a dissolved Illinois limited liability company "shall continue for only the purpose of winding up its business." 805 ILCS 180/35-30(c). An entity so limited cannot apply to preserve or reorganize the business of another company. In the further alternative, Zurich brings this Count as to 5192 Georgia as the holder of a fifty percent interest in its sole member.

95. It is not reasonably practicable to carry on the business of either company in conformity with its operating agreement. The members hold equal fifty percent interests, the operating agreements condition action upon an agreement that cannot be compelled, and no tiebreaking or dispute resolution mechanism exists in any agreement in the structure.

96. The deadlock is structural rather than transient. So long as one member withholds consent, neither company can lease its property, sell its property, or address the maturity of the CNB Loan. The deadlock extends beyond the companies themselves: the shopping center is held by three tenants in common, and Neiswenter controls one of them.

97. The approaching maturity of the CNB Loan, the asserted covenant default, the inability to fund the principal balance, the blocked leasing transactions, and the inability to agree upon any disposition of the shopping center together demonstrate that continued operation under the existing structure is not reasonably practicable.

98. Zurich has no adequate remedy at law that will restore functioning governance while the members remain deadlocked, and no contractual means of exit.

WHEREFORE, Plaintiff prays for a decree dissolving Neis Acquisitions 5192, LLC and Neis Acquisitions AUXGA, LLC pursuant to O.C.G.A. section 14-11-603(a), together

with such ancillary orders as are lawful and necessary to effectuate the dissolution and winding up of the companies and the distribution of their assets.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Zachary Zurich respectfully prays that this Court:

(A) Enter judgment against Defendant David Neiswenter on Count I and award compensatory damages in an amount to be proven at trial and in excess of $75,000;

(B) Decree the dissolution of Neis Acquisitions 5192, LLC and Neis Acquisitions AUXGA, LLC pursuant to O.C.G.A. section 14-11-603(a), and enter such ancillary orders as are necessary to effectuate their winding up and the distribution of their assets;

(C) In the alternative, if the Court determines that either entity Defendant is not a nominal party, drop that Defendant and dismiss Count II without prejudice pursuant to Fed. R. Civ. P. 21, and permit Count I to proceed;

(D) Award pre-judgment and post-judgment interest as permitted by law;

(E) Award Plaintiff his costs and, to the extent permitted by law, his reasonable attorney fees; and

(F) Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable of right by a jury.

Respectfully submitted,

**HAIGLER & ASSOCIATES,**
**by J.A.S. LEGAL FIRM, LLC**

/s/ Ashanti Armstrong

______________________________________

Ashanti Armstrong
Georgia Bar No. ________________
400 Galleria Parkway, SE, Suite 1500
Atlanta, Georgia 30339
(404) 475-2585

*Counsel for Plaintiff, Zachary Zurich*