Buchalter

3475 Piedmont Road NE
Suite 1100
Atlanta, GA 30305
404.832.7530 Phone
(404) 832-7667 Direct
bgoldberg@buchalter.com

August 25, 2026

**VIA EMAIL AND CERTIFIED MAIL**

Zachary Zurich
1113 Towlston Road
McLean, VA 22102
zaczurich@gmial.com

Re: ***Zurich v. Neiswenter, et al.***
Superior Court of Bibb County, Georgia
Civil Action File No. 2026-CV-085533

Dear Zach:

As you are aware, our firm represents David "Andy" Neiswenter in the above-captioned action. Because you are proceeding *pro se*, this letter is directed to you personally.

Your filings ask the Court to restrict distributions, prohibit unilateral material action, preserve company assets, and appoint a neutral receiver to manage the companies pending resolution of the parties' dispute. They also represent that you and Neiswenter are equal owners and co-managers of multiple entities. Your own requested restrictions confirm that neither member should unilaterally transfer company funds, impair the other member's rights, or exercise exclusive control over company property.

Nevertheless, the available records indicate that you transferred or caused the transfer of substantial company funds without Neiswenter's knowledge or consent, denied him access to company accounts, and unilaterally suspended historically recurring distributions and partner-debt interest payments. A central purpose of this demand is to preserve the status quo and create an opportunity to resolve these issues without unnecessary emergency proceedings.

**<u>Demands</u>**

We demand that you complete the following no later than **AUGUST 26, 2026 5:00PM**:

**1. Identification of transferred funds**

Records presently available to our client reflect a pattern of unilateral transfers involving company funds totaling approximately $3,935,384.44. Specifically, company banking records reflect a transfer of $1,994,384.44 into a Treasury Direct account on or about May 12, 2026. Additional records reflect that on August 6, 2026, $1,941,000.00 was transferred from the Neis Acquisitions 5192, LLC money market account ending 547561 to account ending 642187. In contemporaneous correspondence, after being asked to identify the location of those funds, you expressly stated: “The funds are in my trust account and they'll stay there until further order of the court.” Our client strongly objects to your taking such unilateral action.

Records obtained thereafter further indicate that $997,168.89 was transferred on August 11, 2026, and $963,276.42 was transferred on August 18, 2026, from account ending 642187 through the Neis Acquisitions 5192, LLC operating account and then into Treasury Direct accounts. The records presently available also reflect additional transfers involving account ending 642187, including a transaction in the amount of $19,445.31. Again, our client objects.

To date, our client has received no consent request, accounting, authorization, supporting resolutions, or other documentation explaining the basis for these transactions, the ownership of the receiving accounts, the authority under which the transfers were made, or the present location and status of the transferred funds. Accordingly, we demand that you immediately provide a complete tracing and accounting of all company funds transferred by you or at your direction since May 12, 2026, including all funds transferred to account ending 642187 and all Treasury Direct accounts. Such accounting shall identify the current location, balance, and ownership of each account holding company funds; all deposits, withdrawals, purchases, sales, redemptions, maturities, and transfers involving those funds; all signatories and persons with authority over the receiving accounts; and all interest earned, gains, losses, fees, costs, or other financial consequences resulting from the transactions. Our client demands that these funds be returned.

Unless and until such accounting is provided, our client demands that all such funds be maintained intact, segregated, and fully traceable. No portion of those funds should be transferred, withdrawn, distributed, pledged, liquidated, re-invested, encumbered, or otherwise disposed of absent Mr. Neiswenter's written consent or further order of the Court. This demand is entirely consistent with the injunctive relief you have requested in the pending litigation and your stated position that company assets should be preserved pending judicial resolution of the parties' dispute.

The information presently available to our client raises substantial questions regarding the nature of account ending 642187 and the propriety of the transfers involving that account. Although you represented in your August 6, 2026 email that the funds were being held in your "trust account," our client has not been provided with sufficient documentation to determine

whether account ending 642187 is, in fact, an attorney trust account, escrow account, business account, money market account, or some other account. Nor have you provided any documentation demonstrating the legal basis upon which company funds were transferred into that account, the authority under which such transfers were made, or the terms under which those funds were thereafter held, invested, or transferred.

If account ending 642187 is in fact an attorney trust account maintained by you or your law firm, serious questions exist concerning whether the transfer, custody, accounting, investment, and handling of those funds complied with applicable legal, fiduciary, and professional obligations. Our client is unaware of any authorization, consent, escrow agreement, trust arrangement, operating agreement provision, company resolution, or court order authorizing the transfer of company funds into an account maintained by your law firm. Moreover, our client has not been provided the notices, accountings, records, or disclosures that would ordinarily permit him to verify the location, status, ownership, and disposition of those funds. *See, e.g*., Fla. Bar Rule 5-1.1 (requiring segregation of entrusted funds, notice, accounting, and delivery obligations with respect to trust property). Accordingly, all rights are expressly reserved, and our client intends to investigate fully the factual, legal, fiduciary, and potential professional responsibility implications of these transactions as this matter proceeds.

At a minimum, you must identify the precise nature of account ending 642187, the legal owner of the account, all authorized signatories, whether the account is maintained as an attorney trust account, and all transfers into and out of that account involving company funds.

In addition, because the circumstances surrounding the transfer, custody, control, and disposition of company funds raise potential claims for breach of fiduciary duty, conversion, negligence, professional negligence, and other causes of action, we hereby demand that you identify all liability, professional liability, errors and omissions, malpractice, fiduciary liability, umbrella, and excess insurance policies that may provide coverage for any claim arising out of the conduct described herein. To the extent applicable, this correspondence shall also constitute a request for insurance information pursuant to O.C.G.A. § 33-3-28. We therefore request that you identify the name of each insurer, the name of each insured, the policy number, and the limits of coverage for each potentially applicable policy, and provide copies of the declarations pages and any other documents sufficient to identify available coverage. If account ending 642187 was maintained in connection with your law practice or legal services, we specifically request identification of and the declarations page for any attorneys' professional liability, legal malpractice, errors and omissions, fiduciary liability, or similar coverage that may respond to claims arising from the transfer, handling, investment, custody, accounting, or disposition of company funds. O.C.G.A. § 33-3-28 requires disclosure of insurance information potentially applicable to a claim upon proper request.

**2. Restoration of financial access**

Immediately provide Neiswenter with full viewing access to every bank, money-market, brokerage, Treasury, investment, and other financial account containing assets of any jointly owned entity. This includes the six company accounts to which he has requested access. At minimum, the access must permit him to review balances, statements, transaction histories, transfers, authorized users, and account ownership information. The six accounts which our client demands immediate access to are as follows:

| | |
|---|---|
| NEIS Acquisitions 6471, LLC: | Acct # Ending -6633 |
| NEIS Acquisitions AUXGA, LLC: | Acct # Ending -5063 |
| NEIS Acquisitions 4651SC, LLC: | Acct # Ending -1582 |
| NEIS Acquisitions 22298, LLC: | Acct # Ending -1078 |
| NEIS Acquisitions 3502IN, LLC: | Acct # Ending -2041 |
| National Property Management Services, LLC: | Acct # Ending -8734 |

**Resumption of distributions and partner-debt payments**

We further demand that you immediately resume reasonable monthly distributions and partner-debt interest payments consistent with the parties' longstanding course of conduct and historical practices. Specifically, our client demands the immediate reinstatement of monthly payments totaling $52,000 per month, consisting of (a) a $45,000 monthly distribution, and (b) $7,000 per month in partner-debt interest payments. In addition, our client demands immediate payment of approximately $195,000 representing Texas property sale proceeds previously taken by you from our client's account.

We further demand that you immediately cause payment of approximately $193,000 to NEIS Acquisitions GA, LLC, representing unpaid income-sharing amounts for fiscal years 2024 and 2025 owed from Neis Acquisitions 5192, LLC in connection with the Kroger Center property. To the extent you dispute the amount owed, you must provide a complete accounting and supporting documentation sufficient to verify your position.

In addition, you must provide a complete accounting of all distributions, partner-debt payments, income allocations, intercompany transfers, and other member payments made since January 1, 2022, identifying for each transaction the date, amount, source entity, receiving account, recipient, and business purpose. That accounting must further identify any distributions or payments that were withheld, delayed, reversed, redirected, made unequally between the members, or otherwise modified from historical practice, together with all documents supporting those actions. We also request that you state the factual, financial, contractual, and legal basis for your unilateral opposition to further distributions.

In your Complaint, Amended Complaint, and Emergency Motion for Injunctive Relief, you contend that distributions should be prohibited because liquidity must be preserved for debt service, leasing obligations, tenant improvements, commissions, litigation expenses, and ongoing operations. However, the records available to our client indicate that the entities historically made substantial distributions while simultaneously maintaining significant cash reserves, satisfying operational obligations, funding leasing activities, and servicing debt. As a result, any assertion that distributions must cease should be supported by entity-specific financial statements, bank records, cash-flow analyses, reserve calculations, debt schedules, leasing budgets, litigation budgets, and other competent financial information, rather than generalized statements regarding the portfolio as a whole.

Absent such support, your unilateral suspension of distributions appears inconsistent with the companies' historical practices and may have improperly deprived our client of significant sums to which he is entitled. Accordingly, we demand that all withheld distributions, partner-debt interest payments, income allocations, and other amounts due be promptly identified, accounted for, and paid.

**3. <u>Accounting and production of records</u>**

We demand that you produce a complete set of financial records for each jointly owned entity from January 1, 2022, through the present, including all monthly bank, money market, brokerage, investment, and Treasury account statements; all wire-transfer records, ACH records, electronic fund transfer records, and cancelled checks; all documents reflecting the purchase, maturity, redemption, or transfer of Treasury securities or other investments; general ledgers, trial balances, balance sheets, profit-and-loss statements, distribution schedules, partner-loan records, intercompany transfer records, records of capital contributions and capital calls, current cash and reserve reports, and all documents identifying every account maintained by the entities together with all authorized signatories and individuals with access to those accounts.

Electronic records should be produced in their native format, together with available metadata and any spreadsheets, reconciliations, accounting workpapers, or other records used to track, analyze, or reconcile company transactions and account balances. This information is necessary to permit a complete accounting of company funds, determine the location and disposition of transferred assets, and evaluate the financial condition and operations of the entities.

**4. <u>Cessation of unilateral financial activity</u>**

Effective immediately, you are directed to cease any further unilateral actions involving company assets or finances, including transferring funds among entities without authorization, moving company assets into accounts controlled by you or your law practice, purchasing or

liquidating Treasury securities or other investment instruments without mutual consent, altering account access or signatory authority, making unequal distributions or payments, incurring material indebtedness or further encumbering company assets without approval, or taking any action that could impair the tracing, recovery, or proper accounting of company funds.

Notably, these demands are consistent with the very restrictions you have asked the Court to impose upon Mr. Neiswenter and the entity defendants in your pending Complaint and Emergency Motion for Injunctive Relief

**5. <u>Bank Account Administration and Unauthorized Account Access</u>**

Our client has recently become aware of information suggesting that an individual identified as “Linda Zurich” may be designated as an administrator, authorized user, signatory, or person with administrative access to one or more company bank accounts, financial accounts, Treasury Direct accounts, money market accounts, investment accounts, or related financial platforms. If this information is accurate, our client objects in the strongest possible terms.

Neither the governing agreements of the companies nor the parties' longstanding course of conduct authorized unrelated third parties to exercise administrative authority over company assets, records, or financial accounts. Accordingly, we demand that you immediately identify all persons who currently possess or have possessed administrative privileges, account-management authority, signatory authority, online banking credentials, approval rights, viewing rights, Treasury Direct access, investment authority, transfer authority, or other access to any company financial account since January 1, 2022.

For each such individual, please identify:

- The individual's full name;
- The individual's relationship to you and the companies;
- The dates during which such access or authority existed;
- The specific accounts involved;
- The nature and scope of the authority granted;
- Any transactions initiated, approved, reviewed, or facilitated by that individual; and
- All documents authorizing or reflecting the granting of such authority.

If Linda Zurich or any other person other than you and Mr. Neiswenter has been granted administrative authority, signatory authority, transfer authority, or other control over company accounts, we demand that such authority be immediately revoked and terminated pending resolution of this matter.

Our client further demands that he be immediately restored and added as an administrator and authorized user with full account access, visibility, and monitoring rights for all company bank accounts, money market accounts, Treasury Direct accounts, investment accounts, financial platforms, and related financial systems. Mr. Neiswenter specifically objects to any arrangement in which (a) you are the sole administrator or individual exercising account control, or (b) any person other than you and Mr. Neiswenter is granted administrator-level authority over company financial accounts and assets.

Please also provide complete copies of all bank signature cards, account-opening documents, account-maintenance records, resolutions, banking authorizations, online-access records, Treasury Direct authorization records, and any other documents identifying the persons who have held authority over company financial accounts from January 1, 2022 through the present.

To the extent any third party has been granted access to company accounts without Mr. Neiswenter's knowledge or consent, our client expressly reserves all rights, claims, objections, and remedies arising from such conduct.

**6. <u>Preservation of evidence</u>**

You are hereby instructed to preserve all documents, data, and electronically stored information that may be relevant to the claims and defenses in this action. Such information includes, without limitation, emails, text messages, messages transmitted through any messaging application, bank records, brokerage records, Treasury and investment records, accounting files, computers, mobile devices, external storage media, communications with banks, accountants, brokers, property managers, tenants, prospective purchasers, and any documents relating to distributions, reserves, debt obligations, leasing activities, refinancing efforts, proposed sales, or the management and operation of the jointly owned entities.

This preservation obligation further extends to all records concerning the drafting, creation, amendment, execution, maintenance, or storage of any operating agreement or governing company document. As a litigant and party to pending litigation, you have an independent legal duty under Georgia law to preserve potentially relevant evidence and electronically stored information regardless of whether this demand is made.

Accordingly, no potentially relevant information may be deleted, altered, overwritten, concealed, discarded, transferred beyond ordinary preservation measures, or otherwise destroyed. Any failure to preserve evidence may result in the pursuit of appropriate remedies, including sanctions, adverse evidentiary inferences, and any other relief available from the Court.

**<u>Proposed Resolution</u>**

Our client remains willing to discuss a consensual structure that preserves the entities and their assets while removing disputed financial decisions from either member's unilateral control. That structure may include a qualified neutral, clearly defined authority, continued property-management operations, objective reserve and distribution standards, and appropriate safeguards concerning leasing, financing, and capital expenditures. If you do not comply by the deadline above, our client will seek appropriate relief from the Court, including restoration and restraint of company funds, account access, an accounting, resumption of appropriate payments, neutral control over financial activity, damages, attorneys' fees, and other available relief.

This letter does not provide a complete statement of the facts, claims, defenses, or remedies available to our client or the entity defendants. All rights, claims, defenses, objections, and remedies are expressly reserved.

Sincerely,
BUCHALTER LLP

Brian S. Goldberg