Buchalter

3475 Piedmont Road NE
Suite 1100
Atlanta, GA 30305
404.832.7530 Phone

(404) 832-7667 Direct
bgoldberg@buchalter.com

September 24, 2026

**VIA EMAIL**

DC Lamb (dc@dcl-legal.com)

Re: **Supplemental Demand and Preservation Notice Regarding Matters Raised in the August 25, 2026 Demand Letter**

Dear DC:

As you may know, on August 25, 2026, our firm transmitted a detailed demand letter to your client concerning transferred Company funds, account access, distributions, accounting obligations, account administration issues, preservation of evidence, and related matters (the "August 25 Demand"). **A copy of the August 25 Demand is enclosed.**

To date, Mr. Zurich has failed to respond or comply with the August 25 Demand. The requested accounting has not been provided. The requested banking records have not been produced. The requested disclosures concerning account administration and access authority have not been made. Company funds transferred from company accounts have not been accounted for.

Access to Company financial information remains restricted. Requested information concerning Treasury Direct accounts, banking platforms, distributions, transfers, and related account activity has not been produced. Nor has Mr. Zurich restored access, resumed distributions, or otherwise provided the information demanded regarding transferred company funds.

Since transmission of the August 25 Demand, additional information has come to light that requires supplementation of those demands and the assertion of additional preservation obligations. Nothing contained in this correspondence narrows, modifies, limits, or waives any demand, request, claim, preservation obligation, or position set forth in the August 25 Demand. Rather, this correspondence supplements and expands upon those demands. All demands contained in the August 25 Demand remain outstanding and in full force and effect.

**Immediate Cessation of Unauthorized Marketing, Sale Activities, and Dissemination of Inaccurate Property Information**

We further demand that Mr. Zurich immediately cease and desist from any unilateral effort to market, list, solicit offers for, negotiate the sale and/or lease of, broker, advertise, circulate offering memoranda, provide due diligence materials, or otherwise represent that any company property is available for sale and/or lease absent the prior written consent of Mr. Neiswenter or further agreement of the parties. The only properties presently subject to mutually authorized sale efforts are the Vienna, Georgia Popeye's property, the McKees Rocks, Pennsylvania Family Dollar property, and the Dillon, South Carolina Family Dollar property. Those properties were listed with brokers mutually agreed to by Mr. Zurich and Mr. Neiswenter, as confirmed by Mr. Zurich's email instructions dated July 17, 2025 at 12:28pm directing Mr. Neiswenter to list the McKees Rocks and Dillon Family Dollar properties for sale. Since those listings were placed, however, Mr. Zurich has refused to engage with fair-market offers from qualified purchasers, including offers relating to the Dillon, South Carolina property. Such conduct, undertaken while Mr. Zurich simultaneously seeks dissolution of the Company, further evidences unauthorized efforts to frustrate the sales process and breaches of fiduciary duties owed to the Company.

As you are aware, the jointly owned entities remain subject to active disputes concerning management authority, leasing strategy, distributions, reserves, financing, and operation of the properties. No agreement exists authorizing Mr. Zurich to unilaterally market company assets or represent to brokers, prospective purchasers, tenants, lenders, investors, or other third parties that any company-owned real estate has been approved for sale.

Further, our client has become aware of information suggesting that certain company properties may be marketed using financial projections, income figures, operating metrics, rent assumptions, net operating income calculations, valuation analyses, leasing assumptions, or other information that is inaccurate, incomplete, unsupported by existing leases, inconsistent with company books and records, or otherwise materially misleading. The dissemination of inaccurate information concerning company assets creates significant risk to the companies, their members, tenants, lenders, brokers, and prospective purchasers and may impair property values, leasing opportunities, and ongoing business operations.

Accordingly, we demand that Mr. Zurich:

1. Immediately cease any unilateral marketing, listing, brokerage, sale, or disposition efforts concerning ALL company owned real estate;

2. Immediately cease disseminating, publishing, transmitting, or authorizing the distribution of financial, operational, rent roll, leasing, valuation, ownership, projected income, projected net operating income, underwriting, or other property information that is not fully

supported by the companies' books and records, executed leases, current rent rolls, and historical operating data;

3. Cease providing financial, operational, leasing, valuation, ownership, or other confidential company information to prospective purchasers, investors, lenders, brokers, or other third parties without written authorization, except as permitted for the Vienna, Georgia Popeye's property, the McKees Rocks, Pennsylvania Family Dollar property, and the Dillon, South Carolina Family Dollar property;

4. Cease representing that any company property has been approved for sale, disposition, liquidation, refinancing, restructuring, or transfer;

5. Identify all brokers, agents, consultants, prospective purchasers, lenders, investors, and third parties to whom marketing materials, valuation materials, offering memoranda, financial information, rent rolls, underwriting analyses, projections, or property information have been provided since January 1, 2025;

6. Produce all broker agreements, listing agreements, engagement agreements, letters of intent, offering memoranda, valuation materials, broker opinions of value, appraisals, underwriting packages, rent rolls, financial projections, cash-flow analyses, marketing packages, buyer communications, and sale-related communications;

7. Identify all representations made concerning historical income, projected income, occupancy, anticipated leasing activity, future rent increases, renewals, redevelopment plans, projected net operating income, capitalization rates, or valuation metrics relating to any company asset;

8. Preserve all communications, emails, text messages, marketing materials, offering packages, financial analyses, valuation materials, broker communications, purchaser communications, and documents relating to any proposed disposition, valuation, refinancing, or marketing of company assets; and

9. Immediately notify any broker, advisor, agent, or third party currently engaged in marketing jointly owned company assets that authority to market or dispose of such assets is disputed and that no unilateral authorization exists for any disposition of company property.

Nothing in this demand prohibits the parties from discussing mutually agreed sale alternatives, business resolutions, or restructuring proposals. Rather, this demand seeks to prevent unilateral conduct that could impair company assets, interfere with ongoing leasing efforts, create

confusion in the marketplace, expose the companies to claims arising from inaccurate information, or otherwise prejudice the rights of the companies and their members.

Any prior and/or continued unilateral marketing activity, or any prior and/or continued dissemination of inaccurate, unsupported, or misleading information concerning company owned assets, will be considered further evidence of unauthorized conduct and may be presented to the Court as additional support for injunctive relief, appointment of a receiver, equitable relief, damages, attorneys' fees, punitive damages, and all other remedies available at law or in equity.

**Cease and Desist Use of Christine “Christie” Perez and Company Resources for Non-Company Assets**

We have reason to believe that personnel compensated through the jointly owned entities have been directed to perform services for properties, entities, or ventures in which Mr. Neiswenter holds no ownership interest and from which the jointly owned companies receive no benefit. This demand applies to all such non-company assets, except the five-unit residential condominium property known as Pompano Beach View Condominium, located at 840 Pine Drive, Pompano Beach, Florida. Mr. Neiswenter previously approved Christine “Christie” Perez’s provision of property-management services for that property, provided that Mr. Zurich compensates Ms. Perez directly under a separate management agreement and that no cost or expense is charged to Mr. Neiswenter or any affiliated company.

Specifically, it appears that Christine “Christie” Perez and potentially other personnel paid through company funds have been instructed to devote time, labor, administrative services, property-management services, accounting functions, leasing support, vendor coordination, records administration, and other business services to assets owned solely by Mr. Zurich or owned by Mr. Zurich in partnership with third parties. To the extent company funded personnel are performing services for non-company assets without reimbursement to the companies, such conduct improperly diverts company resources for personal benefit and diminishes resources available for the operation and management of company-owned properties.

Accordingly, Mr. Neiswenter demands that Mr. Zurich immediately cease and desist from directing, authorizing, permitting, encouraging, or otherwise causing any employee, contractor, consultant, property manager, administrator, or person compensated directly or indirectly by company funds to perform services relating to assets, entities, or ventures that are not owned by the jointly owned companies absent full disclosure, appropriate reimbursement, and the consent of all required parties.

In addition, please identify and produce:

1. All properties, entities, businesses, projects, and ventures for which Christine "Christie" Perez has performed work since January 1, 2020;

2. All properties, entities, businesses, projects, and ventures for which any company-paid employee, contractor, consultant, administrator, or property manager has performed work since January 1, 2020;

3. The nature and extent of all services provided;

4. All communications directing, requesting, authorizing, assigning, or approving such work;

5. The dates and estimated time devoted to such work;

6. All invoices, compensation records, reimbursements, journal entries, accounting records, and bookkeeping entries relating to such work;

7. All payments made by Mr. Zurich, his affiliates, or any third party intended to reimburse the companies for personnel time or services;

8. All documents reflecting the allocation of employee, contractor, or management costs among affiliated entities; and

9. All agreements, understandings, policies, or arrangements pursuant to which company personnel allegedly provided services for non-company assets.

To the extent company-paid personnel have performed services relating to assets not owned by the jointly owned Companies, please provide a complete accounting of all labor costs, management fees, administrative expenses, overhead allocations, and other company resources utilized in connection with such activities.

Any prior and/or continued use of company-funded personnel, company-paid contractors, company records, company administrative systems, or company resources for the benefit of non-company assets will be considered further evidence of self-dealing, misuse of company resources, breaches of fiduciary duty, and conduct warranting injunctive and equitable relief.

**<u>Misrepresentation of Legal Authority in Communications with Tenants and Tenant Counsel</u>**

Our client has also become aware of information suggesting that Mr. Zurich has communicated with existing and prospective tenants, tenant representatives, counterparties, and opposing counsel in a manner that misrepresents or creates the misleading impression that he is

acting in a legal-representation capacity on behalf of the landlord or jointly owned company entities. This includes, without limitation, communications sent from or through the Law Offices of Zachary Zurich P.A. email address, including communications involving Rainbow and other existing or prospective tenants.

Mr. Zurich is not authorized to hold himself out as counsel for Mr. Neiswenter, the landlord, or any jointly owned company entity in communications with tenants, prospective tenants, tenant counsel, adverse counsel, brokers, vendors, or other third parties. Any such communications risk creating confusion regarding authority, impairing tenant negotiations, interfering with existing leasing relationships, compromising company positions, and exposing the companies and their members to unnecessary disputes or claims.

Accordingly, we demand that Mr. Zurich immediately cease and desist from representing, implying, or suggesting that he is acting as legal counsel for the landlord, Mr. Neiswenter, or any jointly owned company entity unless expressly authorized in writing by all required parties. Mr. Zurich must also cease using the Law Offices of Zachary Zurich P.A. email address, law-firm letterhead, attorney signature block, or any similar indicia of legal representation in connection with company business, leasing matters, tenant disputes, negotiations, or communications with counterparties or counsel absent such written authorization.

In addition, please identify and produce:

1. All communications since January 1, 2020 between Mr. Zurich and any existing tenant, prospective tenant, tenant representative, counterparty, broker, vendor, or counsel in which Mr. Zurich used the Law Offices of Zachary Zurich P.A. email address, law-firm letterhead, attorney signature block, or any similar indication of legal representation;

2. All communications with Rainbow or its representatives, counsel, brokers, or affiliates concerning any company property, lease, proposed lease, lease amendment, dispute, negotiation, or related company matter;

3. All communications in which Mr. Zurich represented, implied, or suggested that he was acting as counsel for the landlord, Mr. Neiswenter, or any jointly owned company entity;

4. All documents identifying the persons or entities to whom such communications were sent or copied;

5. All authorizations, agreements, engagement letters, consents, or communications allegedly permitting Mr. Zurich to act in any legal-representation capacity for any landlord or jointly owned company entity; and

6. All communications concerning any objection, concern, confusion, dispute, or response arising from Mr. Zurich's use of a law-firm email address or attorney capacity in connection with company business.

Any prior and/or continued communication with tenants, prospective tenants, counterparties, or counsel in a manner suggesting that Mr. Zurich is acting as legal counsel for the landlord or the jointly owned companies will be considered further evidence of unauthorized conduct, interference with company business, misuse of asserted authority, and conduct warranting injunctive and equitable relief. All communications, emails, attachments, drafts, notes, tenant correspondence, attorney correspondence, and related documents concerning such communications must be preserved.

**Personal Credit Cards, Rewards Programs, and Personal Benefits Derived from Company Expenditures**

Information available to our client suggests that substantial company expenditures have been charged to personal credit card accounts maintained by Mr. Zurich rather than to company-owned accounts or company-issued credit facilities.

To the extent company expenses have been paid through personal credit card accounts, such arrangements appear to have generated personal economic benefits for Mr. Zurich, including but not limited to airline miles, travel rewards, points, rebates, statement credits, cash-back incentives, elite-status benefits, promotional benefits, and other rewards derived directly from company-funded expenditures.

Our client is unaware of any authorization permitting company expenditures to be routinely processed through personal accounts for the purpose of generating personal rewards, nor is our client aware of any accounting, allocation, reimbursement, or crediting mechanism through which the companies have received the benefit of rewards generated by company spending.

Accordingly, we demand that Mr. Zurich immediately cease utilizing personal credit card accounts as the primary vehicle for processing company expenditures and, to the extent credit card facilities are required for company operations, implement appropriate company-owned credit facilities or other transparent procedures that ensure any benefits generated by company expenditures accrue to the companies rather than to any individual member.

In addition, please identify and produce:

1. All personal credit card accounts used for Company expenditures since January 1, 2020;

2. The total amount of company expenditures charged to each such account on an annual basis;

3. All reward programs associated with such accounts;

4. All airline miles, reward points, statement credits, travel credits, cash-back awards, rebates, promotional incentives, loyalty benefits, and other economic benefits generated by company expenditures;

5. The individual recipient of each such benefit;

6. All accounting records reflecting reimbursement of personal credit card charges by any company;

7. All communications concerning the use of personal credit cards for company expenditures;

8. All policies, practices, or approvals authorizing such arrangements; and

9. All analyses, records, or calculations reflecting the value of benefits generated from company-funded spending.

To the extent company expenditures generated personal rewards, points, credits, rebates, travel benefits, or other economic value, please provide a complete accounting of the nature and value of such benefits and identify whether any such value has been credited, reimbursed, allocated, or otherwise returned to the companies.

The use of company expenditures to generate personal rewards, benefits, credits, or economic value raises significant concerns regarding self-dealing, misuse of company resources, improper personal enrichment, and breaches of fiduciary obligations. Accordingly, we demand that all records relating to such practices be preserved, including credit card statements, accounting records, reimbursement records, reward-program statements, airline-mile reports, travel-benefit records, and related communications.

Sincerely,
BUCHALTER LLP

Brian S. Goldberg
Partner

cc: Ashanti Armstrong (armstrong@haigler-firm.com)