Electronically Filed
Erica L. Woodford, Clerk
Bibb County Superior Court
Docket Date: 9/23/2026 12:00 PM

Denise M. McGhee

IN THE SUPERIOR COURT OF BIBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| ZACHARY ZURICH,<br><br>Plaintiff,<br><br>v.<br><br>DAVID NEISWENTER,<br><br>Defendant.<br><br>NEIS ACQUISITIONS 5192, LLC,<br>NEIS ACQUISITIONS GA, LLC,<br>2364 TICZ, LLC,<br>NEIS ACQUISITIONS AUXGA, LLC, and<br>NEIS ACQUISITIONS POPGA1, LLC<br><br>Nominal Defendants. | ) | Civil Action File Number:<br>2026-CV-085533 |

**DAVID NEISWENTER'S MOTION FOR ATTORNEY'S FEES AND EXPENSES OF LITIGATION PURSUANT TO O.C.G.A. § 9-15-14**

COMES NOW Defendant David Neiswenter ("Defendant"), and, pursuant to O.C.G.A. § 9-15-14, respectfully moves this Court for an award of the reasonable and necessary attorney's fees and expenses of litigation caused by Plaintiff Zachary Zurich's initiation and prosecution of this action, emergency motions, request for an expedited evidentiary hearing, post-hearing proceedings, and voluntary dismissal of the action after the Court ruled that a receiver would be appointed and identified the receiver who would serve, and shows the Court as follows:

**FACTUAL BACKGROUND**

On August 4, 2026, Plaintiff Zachary Zurich commenced this action against Defendant David Neiswenter and several affiliated entities, seeking judicial dissolution, appointment of a receiver, injunctive relief, and other remedies relating to commercial real estate and jointly owned limited liability companies. From the outset, Plaintiff characterized the matter as an emergency



112803561v2

DM

requiring immediate judicial intervention. Plaintiff urged the Court to appoint a receiver without notice, contending that the subject assets faced a risk of loss or injury and that further delay would cause significant harm. The Court declined to appoint a receiver *ex parte*, explaining that doing so would deprive Defendant of due process and that an evidentiary hearing was required before the requested extraordinary relief could be considered.

On August 17, 2026, Plaintiff filed an *Emergency Motion for Temporary and Permanent Injunction and Request for Expedited Hearing*. Plaintiff alleged that an approximately $8.5 million loan would mature on December 17, 2026; that the Companies lacked sufficient liquid funds to pay the loan; that a marketing and sale process could require four to five months; and that continued delay threatened the loss of tenants, increased vacancy, higher operating costs, foreclosure risk, and diminution in the value of the Companies' property. Plaintiff represented that monetary damages would not provide an adequate remedy and asked that the matter be heard at the earliest possible date.

Plaintiff's requested emergency relief was extensive. Among other relief, Plaintiff requested an order prohibiting distributions, new debt, further encumbrances, transfers of property, material leasing or sale decisions, and certain communications or negotiations regarding the property unless authorized by mutual agreement, the Court, or a court-appointed receiver. Plaintiff also asked the Court to direct Defendant to withdraw a response to a prospective tenant. Plaintiff simultaneously sought to amend the complaint to add a claim for breach of fiduciary duty and damages. The proposed amended complaint sought judicial dissolution of the jointly owned entities, appointment of a receiver with authority to manage, market, lease, and sell the subject properties, winding up of the entities, distribution of sale proceeds, permanent injunctive relief, and compensatory damages exceeding $15,000.

Plaintiff actively pursued an expedited evidentiary hearing. Plaintiff initially indicated that approximately twenty minutes would be required, but later advised the Court that the presentation might require approximately two hours. Plaintiff subsequently requested approximately ninety minutes for Plaintiff's presentation and advised that Plaintiff was assembling evidence, coordinating witness availability, arranging travel, and requesting a court reporter. When offered hearing dates of August 31 or September 8, Plaintiff selected August 31. The Court set the hearing for August 31, 2026, at 2:00 p.m. in Macon and directed that the hearing be conducted in person.

Accommodating the expedited hearing imposed immediate burdens upon Defendant and his counsel. Defendant retained counsel, entered an appearance, and filed a waiver of service. Undersigned counsel also arranged for another attorney to cover a previously scheduled August 31 deposition so that counsel could prepare for and attend Plaintiff's requested hearing in Macon.

In the days immediately preceding the hearing, Plaintiff continued to expand the materials requiring review and response. On August 28, Plaintiff filed a revised motion to amend. On August 31, Plaintiff filed a brief supporting appointment of a receiver, two sets of exhibits collectively identified as Exhibits 1 through 52, and, after the hearing, a motion for limited rehearing or reconsideration concerning the identity of the receiver.

The Court conducted the expedited evidentiary hearing on August 31, 2026. After the scheduled hearing concluded, Plaintiff immediately sought an additional hearing on Plaintiff's request for injunctive relief and moved for a limited rehearing or reconsideration so that Plaintiff's preferred receiver could testify regarding that candidate's qualifications, experience, and proposed compensation. Plaintiff expressly requested an opportunity for the Court to compare Plaintiff's proposed receiver with the receiver proposed by Defendant before the Court ruled.

On September 1, 2026, the Court denied Plaintiff's request for rehearing or reconsideration and announced its ruling on the receivership. The Court stated that it was appointing a receiver, that the receiver would possess the "full breadth of powers" warranted by the circumstances, including authority concerning negotiations, leasing, and sale, and that John F. Kennedy would serve as receiver. The Court found John F. Kennedy's experience more than adequate and identified his locality and availability as benefits to the receivership.

Plaintiff initially proceeded in accordance with that ruling. Plaintiff submitted a proposed order appointing John F. Kennedy as receiver, discussed the anticipated terms of his compensation, and subsequently advised the Court that Plaintiff would not object to John F. Kennedy's appointment based upon a potential issue Plaintiff had raised concerning separate litigation involving Target Corporation.

On September 2, 2026, the Court requested that John F. Kennedy provide his preferred form of appointment order so that the terms he considered helpful to performing his duties could be considered. The Court reiterated its intent to appoint him and stated that, if he did not submit a proposed order, the Court would modify the parties' submissions to provide the breadth of powers to be granted.

On September 3, 2026, John F. Kennedy submitted his proposed appointment order. Plaintiff then filed limited objections seeking continued informational access to the Companies' financial accounts, a receiver's bond of at least $2.5 million, and errors-and-omissions and fidelity coverage of at least $10 million. Plaintiff expressly stated in those objections that Plaintiff did not withdraw the request for appointment of a receiver, did not object to the appointment of John F. Kennedy, and did not object to the receiver holding exclusive signing and disposition authority over the Companies' accounts and assets.

Defendant advised the Court that Defendant had no objection to John F. Kennedy's proposed order and did not oppose Plaintiff's request for view-only access to the Companies' accounts. Later on September 3, however, Plaintiff advised that the receivership was becoming "wholly unworkable" and withdrew the request that a receiver be appointed. Plaintiff then filed a voluntary dismissal without prejudice at 8:09 p.m. that same evening.

Plaintiff's dismissal terminated the state-court proceeding before the contemplated appointment order was entered. By that time, however, Defendant had retained counsel, expedited preparation of multiple written submissions, reviewed Plaintiff's amended pleadings and numerous exhibits, rearranged previously scheduled professional obligations, prepared for and attended the in-person evidentiary hearing in Macon, investigated and secured the availability of a qualified receiver, responded to Plaintiff's post-hearing filings, and prepared proposed receivership orders at the Court's direction.

Thus, Plaintiff invoked emergency procedures, represented that immediate judicial intervention was required to prevent irreparable harm, selected and prepared for an expedited in-person evidentiary hearing, and obtained a ruling granting the principal interim relief requested, namely appointment of a receiver with broad authority. Plaintiff nevertheless dismissed the entire action after the Court selected John F. Kennedy and the parties and proposed receiver began addressing the terms under which the receivership would operate.

## ARGUMENT AND CITATION TO AUTHORITY

### A. Applicable Law Granting Request for Attorney's Fees

O.C.G.A. § 9-15-14 authorizes the Court to award attorney's fees and expenses of litigation where a party asserts claims, defenses, or positions that lack substantial justification or unnecessarily expand the proceedings. Pursuant to O.C.G.A. § 9-15-14(a):

> In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position, or against that party's attorney, or against both in such manner as is just.

Attorney's fees awarded under subsection (a) are mandatory when the statutory standard is satisfied. In addition, O.C.G.A. § 9-15-14(b) provides that:

> The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under Chapter 11 of this title, the "Georgia Civil Practice Act." As used in this Code section, 'lacked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious.

Under either subsection, any award must be apportioned to fees and expenses actually incurred as a result of the specific sanctionable conduct identified; unapportioned, lump-sum awards are not permitted. *Cheng v. Gloria Walker Revocable Living Tr*., 379 Ga. App. 197, 202, 925 S.E.2d 229, 234 (2026), reconsideration denied (Mar. 17, 2026) (citing Razavi v. Merchant, 330 Ga. App. 407, 410 (1)(c), 765 S.E.2d 479 (2014)).

Attorney's fees awarded pursuant to O.C.G.A. § 9-15-14 are limited to those fees and expenses that are reasonable and necessary to defend or assert a party's rights. The statute further authorizes the recovery of attorney's fees incurred in obtaining relief under O.C.G.A. § 9-15-14

itself. O.C.G.A. § 9-15-14(d). Such relief may be requested by motion not later than forty-five (45) days after final disposition of the action. O.C.G.A. § 9-15-14(e).

As set forth below, Plaintiff repeatedly and unnecessarily invoked this Court's emergency jurisdiction, demanded expedited proceedings, required Defendant to incur substantial fees and expenses preparing for emergency relief, expanded the scope of the litigation through additional motions and filings, sought and obtained a ruling appointing a receiver, and then voluntarily dismissed the action only after learning how the receivership would operate. Plaintiff's conduct unnecessarily expanded these proceedings and warrants an award of attorney's fees and expenses under O.C.G.A. § 9-15-14(b).

**B. <u>Plaintiff’s Conduct Unnecessarily Expanded These Proceedings</u>**

Plaintiff's conduct throughout this litigation unnecessarily expanded these proceedings and caused Defendant to incur substantial attorney's fees and expenses within the meaning of O.C.G.A. § 9-15-14(b). From the outset, Plaintiff repeatedly invoked this Court's emergency jurisdiction and insisted that immediate judicial intervention was required. Plaintiff represented that an $8.5 million loan maturity, impending leasing decisions, potential loss of tenants, and alleged deadlock created circumstances requiring expedited judicial action. Plaintiff requested an emergency hearing, emergency injunctive relief, appointment of a receiver, judicial dissolution, and ultimately liquidation and sale of assets. Plaintiff repeatedly urged the Court to hear the matter on an expedited basis and represented that delay would cause irreparable harm.

As a direct result of Plaintiff’s pursuit of emergency relief, Defendant was required to retain counsel, prepare expedited responses, review amended pleadings and multiple emergency motions, analyze voluminous evidentiary submissions, identify and vet a proposed receiver, prepare for and attend an evidentiary hearing in Macon, and incur substantial attorney’s fees and expenses.

Defendant's counsel was forced to rearrange previously scheduled professional obligations in order to attend the hearing requested by Plaintiff.

Plaintiff further expanded the proceedings by repeatedly amending and enlarging the scope of the litigation. In addition to the original complaint and emergency receiver motion, Plaintiff filed an emergency motion for temporary and permanent injunction, a motion to amend, an amended complaint seeking additional claims and damages, a lengthy brief in support of appointment of a receiver, more than fifty exhibits, and ultimately a motion seeking rehearing and reconsideration concerning the identity of the receiver.

Most significantly, Plaintiff ultimately obtained the very relief he repeatedly represented to the Court was urgently necessary to prevent irreparable harm. Following the August 31, 2026 evidentiary hearing, Judge Smith ruled that a receiver would be appointed and that the receiver would possess the full breadth of authority required under the circumstances, including leasing and sale authority. Thus, Plaintiff obtained the principal interim relief requested in his Complaint and Emergency Motion for Appointment of Receiver: a receiver with broad authority to operate, lease, and sell. Although Plaintiff continued to seek a separate hearing on his request for injunctive relief, Plaintiff voluntarily dismissed that request along with the remainder of the action several days later.

The Court further selected John F. Kennedy as the receiver. Plaintiff further represented to the Court that he would not object to Mr. Kennedy's appointment notwithstanding concerns he had briefly raised regarding unrelated litigation. Following that ruling, Plaintiff initially proceeded in accordance with the Court's decision. Plaintiff submitted a proposed order appointing John F. Kennedy as receiver, discussed his anticipated compensation, and ultimately advised the Court that Plaintiff would not object to John F. Kennedy's appointment. However, after obtaining a ruling

appointing a receiver, Plaintiff abruptly reversed course. On September 3, 2026, Plaintiff advised that the receivership had become "wholly unworkable" and withdrew the request that a receiver be appointed. Plaintiff then voluntarily dismissed the action that same evening.

Plaintiff therefore invoked emergency procedures, insisted that immediate judicial intervention was necessary, required an expedited evidentiary hearing, substantially enlarged the filings and evidentiary record, sought additional post-hearing proceedings, and caused Defendant to incur substantial fees responding to those efforts. After obtaining a ruling granting the principal interim relief sought, Plaintiff participated in the process of implementing the receivership but then abandoned the entire action once the practical operation of the receivership became apparent. Defendant was nevertheless required to retain counsel, respond to emergency motions, review amended pleadings and dozens of exhibits, rearrange existing professional obligations, prepare for and attend an evidentiary hearing in Macon, identify and vet a qualified receiver, address post-hearing filings, and prepare proposed receivership orders. Plaintiff’s voluntary dismissal rendered those efforts incapable of producing the emergency relief Plaintiff had repeatedly represented was essential. Under these circumstances, Plaintiff’s conduct unnecessarily expanded the proceedings within the meaning of O.C.G.A. § 9-15-14(b), warranting an award of the reasonable and necessary fees and expenses caused by that conduct.

Plaintiff's conduct is made even more significant by what occurred immediately after dismissal. As discussed above, on September 3, 2026, Plaintiff voluntarily dismissed this action after obtaining a ruling that a receiver would be appointed and after extensive proceedings had already occurred. The very next day, on September 4, 2026, Plaintiff filed a new federal action in the United States District Court for the Middle District of Georgia asserting substantially similar allegations concerning the same alleged 50/50 deadlock, seeking judicial dissolution, appointment

of a receiver, and damages arising from the same business dispute. A true and correct copy of the federal complaint is attached hereto as **Exhibit "A"** and incorporated herein by reference.

The timing of the dismissal and refiling demonstrates that Plaintiff's claimed emergency did not disappear. Rather, after invoking this Court's emergency jurisdiction, obtaining an expedited evidentiary hearing, and securing a ruling appointing a receiver, Plaintiff abandoned the state-court proceedings and immediately commenced new litigation elsewhere involving the same underlying controversy. The resulting duplication of proceedings further supports a finding that Plaintiff unnecessarily expanded the litigation within the meaning of O.C.G.A. § 9-15-14(b).

**C. <u>Defendant's Fees and Expenses are Reasonable, Necessary and Supported by the Record.</u>**

As demonstrated by the Affidavit of Brian S. Goldberg, attached as **Exhibit "B"**, and the billing records attached thereto as Exhibit "1," Defendant incurred reasonable and necessary attorney's fees in responding to Plaintiff's initiation and prosecution of this action, emergency motions, amended pleadings, voluminous evidentiary submissions, expedited evidentiary hearing, post-hearing proceedings, and Plaintiff's subsequent voluntary dismissal. Defendant's contemporaneous billing records identify the professional billers, dates of service, work performed, time expended, applicable billing rates, and resulting charges.

Defendant seeks only those fees and expenses reasonably attributable to defending this action and responding to the conduct identified in this Motion. Defendant has reviewed the billing records and seeks recovery only for work related to the state-court proceeding, including responding to Plaintiff's emergency motions, addressing the requested receivership, preparing for and attending the expedited evidentiary hearing, responding to post-hearing filings, participating in the proposed-order process, and preparing this Motion. Defendant does not seek recovery for unrelated legal matters or work that cannot reasonably be apportioned to this action.

The billing records reflect a total of 100.3 attorney hours and $56,822.50 in attorney's fees incurred through September 3, 2026. Those fees consist of:

| Professional | Hours | Rate | Fees |
|---|---|---|---|
| Brian S. Goldberg | 83.3 | $600.00 | $49,980.00 |
| Andrew Pinter | 15.3 | $375.00 | $5,737.50 |
| Jonathan Wilson | 1.7 | $650.00 | $1,105.00 |
| **Total** | **100.3** | | **$56,822.50** |

In addition, Defendant personally incurred travel and lodging expenses to attend the expedited evidentiary hearing demanded by Plaintiff. As reflected in the records attached as **Exhibit "C**," Defendant incurred airfare expenses of $342.50 and hotel expenses of $442.00, for a total of $784.50 in out-of-pocket litigation expenses.

Defendant further requests recovery of the reasonable attorney's fees and expenses incurred in preparing and prosecuting this Motion, as expressly authorized by O.C.G.A. § 9-15-14(d), with the precise amount of such additional fees to be established by supplemental affidavit and billing records prior to hearing or entry of an award.

## CONCLUSION

Plaintiff repeatedly represented to this Court that immediate judicial intervention was necessary to prevent irreparable harm and repeatedly invoked the Court's emergency jurisdiction. Plaintiff sought emergency appointment of a receiver, emergency injunctive relief, judicial dissolution, and sale-related relief, and required the parties and the Court to participate in expedited proceedings culminating in an evidentiary hearing. Plaintiff ultimately obtained the principal interim relief sought, namely appointment of a receiver with broad operational authority.

After obtaining that relief, however, Plaintiff voluntarily dismissed the action, thereby rendering moot the substantial efforts required of Defendant, Defendant's counsel, the proposed receiver, and the Court itself. Plaintiff then immediately refiled substantially the same dispute in federal court. Under these circumstances, Plaintiff's conduct unnecessarily expanded these proceedings within the meaning of O.C.G.A. § 9-15-14(b).

WHEREFORE, Defendant David Neiswenter respectfully requests that the Court:

1. Find that Plaintiff unnecessarily expanded these proceedings within the meaning of O.C.G.A. § 9-15-14(b);
2. Award Defendant attorney's fees and expenses of litigation in the amount of $57,607.00, consisting of $56,822.50 in attorney's fees and $784.50 in litigation expenses, together with such additional fees incurred in preparing and prosecuting this Motion as authorized by O.C.G.A. § 9-15-14(d).;
3. Award Defendant his additional reasonable fees and expenses incurred in preparing and prosecuting this Motion pursuant to O.C.G.A. § 9-15-14(d);
4. Conduct such hearing as the Court deems appropriate; and
5. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 23nd day of September, 2026.

BUCHALTER LLP

/s/ Brian S. Goldberg
Brian S. Goldberg
Georgia Bar No. 128007
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
Telephone: (404) 832-7667
Email: bgoldberg@buchalter.com

*Counsel for Defendant*
*David Neiswenter*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day served a true and correct copy of the foregoing Defendant David Neiswenter's Motion for Attorney's Fees and Expenses of Litigation Pursuant to O.C.G.A. § 9-15-14 upon all parties of record by filing the same with the Court's electronic filing system and by electronic mail addressed as follows:

Zachary Zurich
1113 Towlston Road
McLean, Virginia 22102
zaczurich@gmail.com
*Plaintiff, Pro Se*

This 23nd day of September, 2026.

<u>/s/ Brian S. Goldberg</u>
**Brian S. Goldberg**
Georgia Bar No. 128007
BUCHALTER LLP
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
Telephone: (404) 832-7667
Email: bgoldberg@buchalter.com
Counsel for Defendant
David Neiswenter

**<u>Exhibit "A"</u>**

Federal Complaint

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

Case No. 1:26-cv-130

**ZACHARY ZURICH,** a citizen of Virginia,
Plaintiff,

*v.*

**DAVID NEISWENTER,** a citizen of Florida,
**NEIS ACQUISITIONS 5192, LLC,** a Georgia Limited Liability Company named as a nominal defendant;
**NEIS ACQUISITIONS AUXGA, LLC,** a Georgia Limited Liability Company named as a nominal defendant,

Defendants,
______________________________________________/

# COMPLAINT

Plaintiff Zachary Zurich, pro se, files this Complaint and alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from an irreconcilable 50/50 deadlock between Zurich and Neiswenter concerning two closely held Georgia limited liability companies and valuable commercial real estate in Bibb County, Georgia.

2. Zurich seeks (a) judicial dissolution of the deadlocked companies under O.C.G.A. § 14-11-603; (b) appointment of a neutral receiver under Federal Rule of Civil Procedure 66 to preserve and administer the companies and their property pending adjudication of the dispute; and (c) damages against Neiswenter personally for breach of fiduciary duty.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Zurich and Neiswenter are citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Plaintiff Zachary Zurich is a natural person and a citizen of the Commonwealth of Virginia, domiciled in Fairfax County, Virginia.

5. Defendant David Neiswenter is a natural person and a citizen of the State of Florida, domiciled in Broward County, Florida.

6. Neis Acquisitions 5192, LLC ("5192") and Neis Acquisitions AUXGA, LLC ("AUXGA") are named only as nominal defendants. Zurich asserts no claim for damages against either entity. The substantive controversy is between Zurich and Neiswenter, the two 50% members whose deadlock prevents the entities from acting. The entity Defendants are included as nominal defendants to the extent necessary to effectuate the dissolution relief.

7. For purposes of diversity jurisdiction, federal courts disregard nominal parties and determine jurisdiction based upon the citizenship of the real parties to the controversy. *Thermoset Corp. v. Building Materials Corp. of America*, 849 F.3d 1313, 1317 (11th Cir. 2017). See also *Fox v. Bulkley*, No. 3:24-cv-00031-TES (M.D. Ga. May 17, 2024).

8. Plaintiff has no monetary claim against Neis Acquisitions 5192, LLC or Neis Acquisitions AUXGA, LLC. The real parties to the controversy are Zurich (Virginia) on one side and Neiswenter (Florida) on the other.

9. The amount in controversy independently exceeds $75,000 because Zurich seeks compensatory damages from Neiswenter personally in excess of $75,000. The economic interests affected by this dispute are substantially greater.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District and a substantial part of the property that is the subject of this action is situated in Bibb County, Georgia.

11. This action is properly assigned to the Macon Division because Bibb County lies within the Macon Division of the Middle District of Georgia. See 28 U.S.C. § 90(b)(2).

12. This Court may exercise personal jurisdiction over Neiswenter because he owns and manages interests in Georgia limited liability companies that own and operate Georgia real property, has transacted business concerning the Property in this District, and the claims arise directly from that conduct and those interests.

## III. PARTIES AND RELATED ENTITIES

13. Zachary Zurich owns a 50% membership interest in Neis Acquisitions 5192, LLC and 50% ownership interest in Neis Acquisitions Auxga, LLC.

14. David Neiswenter owns the remaining 50% membership interest in Neis Acquisitions 5192, LLC and 50% interest in Neis Acquisitions Auxga, LLC

15. Neis Acquisitions 5192, LLC is named as a nominal defendant. It owns a controlling interest in the Eisenhower Crossing shopping center located in Macon, Bibb County, Georgia described in Exhibit A (the "Property").

16. Neis Acquisitions AUXGA, LLC is named as a nominal defendant. It owns the majority of what will be referred to as the "Auxiliary Property," which is on a separate legal parcel but physically attached to property controlled by Neis Acquisitions 5192, LLC.

## IV. FACTS

17. Zurich and Neiswenter are deadlocked on material management decisions concerning leasing, capital allocation, and the timing and terms of a sale of the Property and Auxiliary Property.

18. Because of the deadlock, the companies cannot make important management decisions in a reasonably practicable manner.

19. The Property is subject to a City National Bank loan with an approximate principal balance of $8,500,000 that matures on December 17, 2026. The entities do not have sufficient cash to satisfy the principal balance at maturity.

20. The property controlled by Neis Acquisitions 5192, LLC and the Auxiliary Property have a value between $23,000,000 and $28,000,000. A sale process can take four to five months.

21. Existing and prospective tenants have expressed interest in leases, renewals, expansions, or other transactions at the Property and Auxiliary Property, including Ross, Dunkin'/DD, Five Below, Rainbow, GameStop, and others. Those transactions have the potential to increase occupancy, net operating income, and value.

22. Neiswenter has refused, failed, or delayed approval or execution of material lease renewals, amendments, and new leases, including transactions involving Ross, DD, Five Below, Rainbow, GameStop, and other opportunities, despite Zurich's objections and requests for timely action.

23. Five Below, for example, has been associated with approximately 30,000 square feet of vacant space. Continued vacancy of significant space materially affects cash flow and the value of the shopping center.

24. Neiswenter has also sought or advocated distributions of company funds at a time when the entities require liquidity for debt service, tenant improvements, leasing commissions, operating expenses, and preparations for the December 2026 loan maturity.

25. Without prompt resolution of the deadlock, the entities face a substantial risk of continued vacancy, lost leasing opportunities, impaired value, and a maturity default that could trigger default interest, legal fees, and foreclosure.

26. The parties' equal ownership and inability to agree on essential management decisions have made it not reasonably practicable to continue the businesses in conformity with their governing agreements.

27. Zurich has no adequate remedy that will restore functioning governance while the parties remain deadlocked. A neutral judicial mechanism is required to preserve value and protect the assets while the entities are dissolved and wound up.

**COUNT I - Judicial Dissolution under O.C.G.A. § 14-11-603**

28. Zurich incorporates paragraphs 1 through 27 as if fully set forth herein.

29. O.C.G.A. § 14-11-603(a) authorizes a court, on application by or for a member, to decree dissolution of a Georgia limited liability company when it is not reasonably practicable to carry on the business in conformity with the articles of organization or a written operating agreement.

30. The governing agreements of the defendant entities provide no effective mechanism for breaking the present deadlock, and the parties are unable to agree on material leasing, liquidity, and sale decisions necessary to operate the businesses and protect their assets.

31. The approaching loan maturity, inability to fund the principal balance, blocked or delayed leasing decisions, and inability to agree upon a timely disposition of the assets demonstrate that continued operation under the existing 50/50 governance structure is not reasonably practicable.

WHEREFORE, Plaintiff requests a decree judicially dissolving 5192 and AUXGA pursuant to O.C.G.A. § 14-11-603(a), together with such ancillary orders as are lawful and necessary to effectuate the dissolution and winding up of the entities. Plaintiff seeks recovery of legal fees and costs as may be appropriate under applicable law.

**COUNT II - Breach of Fiduciary Duty**

32. Plaintiff incorporates paragraphs 1 through 27.

33. Neiswenter participates in the management of 5192 and AUXGA. Subject to the terms of the governing agreements, Georgia law requires a managing member or manager to act in good faith and in the best interests of the limited liability company and with the care an ordinarily prudent person in a like position would exercise under similar circumstances. O.C.G.A. § 14-11-305.

34. Neiswenter breached those duties by refusing and failing to approve, execute, or timely act on the lease matters alleged above, and by conduct alleged above, in order to depress cash flow, occupancy, and value and to acquire Zurich's interest at a discount.

35. Those acts were in Neiswenter's self-interest and contrary to the best interests of the companies and of Zurich.

36. As a direct and proximate result, Zurich has suffered and will suffer damages, including lost rent, increased vacancy, diminished value, higher carrying costs, lost tenant opportunities, and other consequential damages.

37. Zurich seeks compensatory damages against Neiswenter in an amount to be proven at trial, exceeding $75,000, together with pre- and post-judgment interest and costs.

**WHEREFORE**, Plaintiff Zachary Zurich respectfully requests that the Court enter judgment in his favor and against Defendant David Neiswenter on Count III; award compensatory damages in an amount to be proven at trial, but in excess of $75,000; award pre-judgment and post-judgment interest and taxable costs as permitted by law; and grant such other and further relief as the Court deems just and proper. Plaintiff seeks recovery of legal fees and costs as may be appropriate under applicable law.

**Jury Trial Demand**

Plaintiff demands a trial by jury of any issue triable of right by a jury.

**/s/ Zachay Zurich**
Zachary Zurich, *Pro Se*
1113 Towlston Road
McLean, Virginia 22102
(954) 557-0389
zaczurich@gmail.com

**<u>Exhibit "B"</u>**

Affidavit of Brian S. Goldberg

IN THE SUPERIOR COURT OF BIBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| ZACHARY ZURICH,<br><br>Plaintiff,<br><br>v.<br><br>DAVID NEISWENTER,<br><br>Defendant.<br><br>NEIS ACQUISITIONS 5192, LLC,<br>NEIS ACQUISITIONS GA, LLC,<br>2364 TICZ, LLC,<br>NEIS ACQUISITIONS AUXGA, LLC, and<br>NEIS ACQUISITIONS POPGA1, LLC<br><br>Nominal Defendants. | ) | Civil Action File Number:<br>2026-CV-085533 |

**AFFIDAVIT OF BRIAN S. GOLDBERG IN SUPPORT OF MOTION FOR ATTORNEYS FEES AND EXPENSES OF LITIGATION**

Personally appeared before the undersigned officer duly authorized to administer oaths, Brian S. Goldberg, who, after being first duly sworn, states as follows:

1. My name is Brian S. Goldberg. I am over eighteen years of age, competent to testify, and make this Affidavit from my personal knowledge.

2. I am an attorney licensed to practice law in the State of Georgia and am counsel of record for Defendant David Neiswenter in this action.

3. I am a partner with Buchalter LLP. My office is located at 3475 Piedmont Road NE, Suite 1100, Atlanta, Georgia 30305.

4. I have practiced law since 2013. My practice includes commercial litigation, business disputes, real-estate litigation, and matters involving emergency and equitable relief.

5. Buchalter LLP was retained to represent Defendant in this action after Plaintiff Zachary Zurich commenced the action and began seeking emergency appointment of a receiver, emergency injunctive relief, judicial dissolution, and an expedited evidentiary hearing.

6. Because Plaintiff characterized the matter as an emergency and requested expedited judicial intervention, Buchalter LLP was required to undertake substantial work on an accelerated basis. That work included, among other things:

a. reviewing and analyzing Plaintiff's complaint, amended pleadings, emergency motions, briefs, exhibits, and other submissions;

b. investigating the relevant facts and reviewing company, financial, banking, leasing, and operational materials;

c. preparing Defendant's written submissions and defenses;

d. communicating with Defendant, Plaintiff, court personnel, prospective witnesses, and proposed receivers;

e. identifying and evaluating a qualified proposed receiver;

f. preparing for and attending the August 31, 2026 evidentiary hearing in Macon, Georgia;

g. traveling to and from the August 31 hearing;

h. reviewing and responding to Plaintiff's post-hearing filings and communications; and

i. preparing proposed receivership orders at the Court's direction.

7. Buchalter LLP maintained contemporaneous time records identifying the attorneys and other timekeepers who worked on this matter, the dates on which services were performed, the time expended, the nature of the work performed, and the corresponding charges.

8. Attached hereto as **Exhibit 1** is a true and correct summary of the time entries and fees attributable to Buchalter LLP's defense of this action through Plaintiff's voluntary dismissal on September 3, 2026.

9. After reviewing the relevant time records and excluding time not fairly attributable to this action, Buchalter LLP incurred 100.3 hours and $56,822.50 in attorney's fees through September 3, 2026.

10. The hourly rates reflected in the attached records are the rates charged by Buchalter LLP for the respective timekeepers' services in this matter.

11. The services reflected in Exhibit 1 were reasonably necessary to protect Defendant's interests and to respond to the pleadings, emergency motions, expedited proceedings, evidentiary submissions, hearing, and post-hearing proceedings initiated by Plaintiff.

12. In my professional judgment, the time expended and the resulting fees were reasonable and necessary in light of: (a) the emergency and expedited nature of the proceedings; (b) the scope and significance of the relief Plaintiff requested; (c) the volume and timing of Plaintiff's pleadings, motions, briefs, exhibits, and communications; (e) the need to investigate significant factual, financial, operational, and legal issues on an expedited basis; (f) the preparation required for the in-person evidentiary hearing; (g) the need to identify and evaluate a qualified receiver; and (f) the post-hearing proceedings concerning the receiver's identity, authority, and appointment order:

i. The rates charged were reasonable and consistent with rates customarily charged for attorneys and legal professionals of comparable skill and experience handling complex commercial litigation and emergency equitable proceedings in Georgia.

ii. Defendant also has incurred, and will continue to incur, reasonable attorney's fees and expenses in preparing, filing, supporting, and obtaining a ruling on the pending Motion under O.C.G.A. § 9-15-14. Those additional amounts will be established through supplemental billing records, affidavit, or testimony.

iii. Defendant seeks only those attorney's fees and expenses that are reasonable, necessary, and attributable to the conduct identified in the Motion.

Further Affiant sayeth not.
This 22nd day of September, 2026.

BRIAN S. GOLDBERG
Georgia Bar No. 128007

Sworn to and subscribed before me
this 22nd day of September, 2026.

Diamond A Jordan

Notary Public
My Commission Expires: 7/6/2029

DIAMOND A JORDAN
MY COMMISSION EXPIRES
NOTARY PUBLIC
07/06/2029
PAULDING COUNTY, GEORGIA



112803553v1

**EXHIBIT “1”**

Time Entries

# EXHIBIT 1

# ATTORNEY FEE DETAIL THROUGH SEPTEMBER 3, 2026

Zachary Zurich v. David Neiswenter | Civil Action File No. 2026-CV-085533

| Work Date | Professional Biller | Time Entry | Hours | Rate | Billing Amount |
|---|---|---|---|---|---|
| 08/13/2026 | Brian S. Goldberg | Telephone call with client re: case strategy for emergency receivership and TRO (1.1). Prepare email to court in response to hearing request (0.2). Prepare email to Z.Zurich. (0.2). | 1.5 | $600.00 | $900.00 |
| 08/14/2026 | Brian S. Goldberg | Review and analyze recommendations for receiver received from colleagues. | 0.3 | $600.00 | $180.00 |
| 08/14/2026 | Brian S. Goldberg | Telephone call with Z.Zurich re: case (0.5) and multiple calls with A.Neiswenter re: developement of case strategy (1.1). Continue to review and analyze client provided documents and mulple pleadings filed in the case in regards to emergency relief requested for receiver. (3.3). | 4.9 | $600.00 | $2,940.00 |
| 08/14/2026 | Jonathan Wilson | Call with B.Goldberg re: business divorce case in Bibb County. Preliminary review of client-provided documents [Corporate law attorney review of corporate documents for case)]. | 0.6 | $650.00 | $390.00 |
| 08/17/2026 | Brian S. Goldberg | Review and analyze email communications from Zach Zurich and the Court. (0.4). Prepare response email. (0.2) Review and analyze waiver of service procedures and strategic considerations in connection with receivership proceedings (0.7); review and evaluate client-provided documents and case materials (1.3); develop litigation strategy regarding service issues, receivership administration, and related procedural requirements (0.5). | 3.1 | $600.00 | $1,860.00 |
| 08/17/2026 | Brian S. Goldberg | Telephone calls with client re: strategy for TRO, receivership. | 0.8 | $600.00 | $480.00 |
| 08/17/2026 | Brian S. Goldberg | Review of client-provided documents and information in preparation for TRO hearing (1.2); analyze litigation strategy, evaluate potential expert witness testimony, and assess [redacted]; conference with client regarding factual developments, defenses, and strategic considerations. (1.8) | 3.0 | $600.00 | $1800.00 |
| 08/17/2026 | Jonathan Wilson | Call with B.Goldberg re: business divorce case in Bibb County. Second call re: comingling of assets between Georgia and Tennessee Entities. Prepare summary of assets and entities. Retrieve property ownership information for TN Property. | 0.8 | $650.00 | $520.00 |
| 08/18/2026 | Brian S. Goldberg | Prepare proposed email to Zach re: receivership for client approval. (0.8). Prepare notice of appearance and acknowledgement and waiver of service of process. (0.4). | 1.2 | $600.00 | $720.00 |
| 08/19/2026 | Brian S. Goldberg | Telephone call with client re: strategy for upcoming TRO and [redacted] | 2.0 | $600.00 | $1,200.00 |
| 08/20/2026 | Brian S. Goldberg | Multiple telephone calls with client concerning TRO strategy, discussed expert witness, and consent with Zach re: receiver. | 2.8 | $600.00 | $1,680.00 |
| 08/21/2026 | Andrew Pinter | Initial Review of Case File and Court Docket [Associate attoreny review]. | 0.7 | $375.00 | $262.50 |
| 08/21/2026 | Brian S. Goldberg | Telephone call with client re: status. (1.0). Prepare emails to Zach re: potential framework for receiver. (0.3) | 1.3 | $600.00 | $780.00 |
| 08/22/2026 | Brian S. Goldberg | Telephone call with client re: status, TRO, demand letter, and financials for upcoming emergency hearing. | 2.3 | $600.00 | $1,380.00 |
| 08/22/2026 | Brian S. Goldberg | Review and analyze response from Z.Zurch re: potential receivership consent. | 0.4 | $600.00 | $240.00 |
| 08/23/2026 | Brian S. Goldberg | Review and analyze correspondence from pro se plaintiff regarding proposed receivership framework, company operations, pending litigation, management authority, and asset disposition; (0.4); evaluate strategic implications of plaintiff's position concerning receiver authority, liquidation rights, distributions, operational control, and preservation of assets (0.8); analyze potential alignment between parties regarding appointment of neutral receiver and identify remaining disputed issues (0.2); assess impact on litigation strategy, injunctive relief, and receivership structure; (0.2) formulate response strategy and prepare detailed correspondence addressing proposed receivership scope, operational authority, asset preservation, pending litigation management, service issues, and reservation of client's rights and claims. (0.4) Additionaly, review and analyze extensive factual record concerning disputed company funds, including client correspondence, bank records, account screenshots, transfer histories, trust-account issues, Treasury investment transactions, and related communications between the parties; research and evaluate [redacted] (1.4) | 3.0 | $600.00 | $1,800.00 |
| 08/24/2026 | Andrew Pinter | Continue to develop case strategy, update, and discussion re: next steps and posturing of the same re: emergency receivership. | 1.0 | $375.00 | $375.00 |
| 08/24/2026 | Andrew Pinter | Continue to strategize re: approach to receiver at upcoming hearing and Georgia law re: emergency receivership. | 1.2 | $375.00 | $450.00 |
| 08/24/2026 | Andrew Pinter | Call with potential expert forensic accountant and client and strategize re: emergency receivership. | 2.5 | $375.00 | $937.50 |
| 08/24/2026 | Andrew Pinter | Continue review of case file and prior emails in furtherance of developing case strategy re: emergency receivership. | 0.5 | $375.00 | $187.50 |

| Work Date | Professional Biller | Time Entry | Hours | Rate | Billing Amount |
|---|---|---|---|---|---|
| 08/24/2026 | Brian S. Goldberg | Multiple phone calls with client. (2.5). Discuss and strategize receivership matters in depth with A.Pinter in anticipation of hearing. (1.1) Review, analyze, and supplement response to TRO and Receivership motions. (1.4) Meeting with potential expert witness Philip Schechter and Enrique and follow up call with client. (2.5). | 7.5 | $600.00 | $4,500.00 |
| 08/25/2026 | Andrew Pinter | Telephone call with Z.Zurich re: emergency hearing issues (0.7); Follow up call with client following call with Mr. Zurich re: strategy, debrief from Z.Zurich call. (1.4). | 2.1 | $375.00 | $787.50 |
| 08/25/2026 | Andrew Pinter | Review relevant IL law in furtherance of preparing for hearing re: LLC Act and Operating Agreement provisions re: IL Law as related to emergency receivership and issues therewith. | 2.7 | $375.00 | $1,012.50 |
| 08/25/2026 | Andrew Pinter | Strategize re: hearing prep and approach and to strategy for the same for emergency receivership. | 0.4 | $375.00 | $150.00 |
| 08/25/2026 | Brian S. Goldberg | Supplement demand letter to Z.Zurich re: matters involving the hearing and business divorce related to emergency receivership issues. | 1.1 | $600.00 | $660.00 |
| 08/25/2026 | Brian S. Goldberg | Telephone call with client re: upcoming hearing re: emergency receivership. | 1.0 | $600.00 | $600.00 |
| 08/25/2026 | Brian S. Goldberg | Telephone call with Z.Zurich re: emergency receivership. | 0.7 | $600.00 | $420.00 |
| 08/25/2026 | Brian S. Goldberg | Telephone call with client re: emergency receivership hearing | 1.0 | $600.00 | $600.00 |
| 08/26/2026 | Andrew Pinter | Review demand letter sent to Z.Zurich in preparation for hearing re: emergency receivership. | 0.5 | $375.00 | $187.50 |
| 08/26/2026 | Andrew Pinter | Preliminary review of requirements for [redacted] | 1.0 | $375.00 | $375.00 |
| 08/26/2026 | Andrew Pinter | Strategize re: preparing for hearing and approach to the same re: emergency receivership. | 1.0 | $375.00 | $375.00 |
| 08/26/2026 | Andrew Pinter | Review and analyze previous emails sent from Z.Zurich re: case and litigation in prepartion for hearing. | 0.6 | $375.00 | $225.00 |
| 08/26/2026 | Brian S. Goldberg | Multiple telephone calls with client re: emergency receivership issues. | 1.1 | $600.00 | $660.00 |
| 08/26/2026 | Brian S. Goldberg | Telephone call with O.Bitan. (receivership expert). | 0.6 | $600.00 | $360.00 |
| 08/26/2026 | Brian S. Goldberg | Telephone call with client re: emergency receivership. | 0.6 | $600.00 | $360.00 |
| 08/27/2026 | Brian S. Goldberg | Continue to prepare response in partial opposition to receiver and TRO. | 1.2 | $600.00 | $720.00 |
| 08/27/2026 | Brian S. Goldberg | Telephone call with client re: receivership. | 1.4 | $600.00 | $840.00 |
| 08/28/2026 | Brian S. Goldberg | Continue to prepare for hearing on receivership by gathering evidence and review documentation provided by client and by Z.Zurich. Prepare for Z.Zurich request for receivership and potential consequences and damages incurred and prepare attorney work product for purpose of hearing prep. | 5.4 | $600.00 | $3,240.00 |
| 08/28/2026 | Brian S. Goldberg | Telephone call with potential receiver John F. Kennedy's office to ask questions of potential service. | 0.2 | $600.00 | $120.00 |
| 08/28/2026 | Jonathan Wilson | Research re: GA law choice of law provisions in Operating Agreement. | 0.3 | $650.00 | $195.00 |
| 08/29/2026 | Brian S. Goldberg | Continue to prepare for hearing on receivership by gathering evidence and review documentation provided by client and by Z.Zurich. Prepare for Z.Zurich request for receivership and potential consequences and damages incurred and prepare attorney work product for purpose of hearing prep. | 4.6 | $600.00 | $2,760.00 |
| 08/30/2026 | Brian S. Goldberg | Continue to prepare for hearing on receivership by gathering evidence and review documentation provided by client and by Z.Zurich. Prepare for Z.Zurich request for receivership and potential consequences and damages incurred and prepare attorney work product for purpose of hearing prep. | 5.7 | $600.00 | $3,420.00 |
| 08/31/2026 | Andrew Pinter | Strategize re: hearing for receiver today and next steps re: same. | 0.5 | $375.00 | $187.50 |
| 08/31/2026 | Brian S. Goldberg | Continue to prep for hearing (1.1 hours); Travel to hearing (1.8 hours) Attend hearing (2.5 hours) Return travel (1.8 hours); Meet with client re: strategy and prep (3 hours). | 10.2 | $600.00 | $6,120.00 |
| 09/01/2026 | Andrew Pinter | Strategize in light of yesterday's hearing and Exhibits provided by Zach Zurich at same, and Court's latest correspondence. | 0.6 | $375.00 | $225.00 |
| 09/01/2026 | Brian S. Goldberg | Prepare proposed order for receivership. (4.2) Review and analyze multiple filings by Z.Zurich. (2.7). | 6.9 | $600.00 | $4,140.00 |
| 09/02/2026 | Brian S. Goldberg | Review, analyze, and respond to email and objections by Mr. Zurich to proposed order for receiver. | 3.6 | $600.00 | $2,160.00 |
| 09/03/2026 | Brian S. Goldberg | Telephone call with client re: proposed order for receivership and next steps and strategy. | 1.2 | $600.00 | $660.00 |
| 09/03/2026 | Brian S. Goldberg | Review and analyze correspondence with plaintiff regarding receivership order, research and evaluate O.C.G.A. § 9-8-10 bond requirements, assess procedural propriety of plaintiff's request for defendant bond, and draft response to court and counsel clarifying client's position regarding receiver bond and proposed order. | 1.7 | $600 | $1,020.00 |
| | | **TOTAL** | **100.3** | | **$56,822.50** |

Exhibit 1 - Attorney Fee Detail

**SUMMARY BY PROFESSIONAL BILLER**

| Professional Biller | Hours | Effective Rate | Billing Amount |
|---|---|---|---|
| Andrew Pinter | 15.3 | $375.00 | $5,737.50 |
| Brian S. Goldberg | 83.3 | $600.00 | $49,980.00 |
| Jonathan Wilson | 1.7 | $650.00 | $1,105.00 |
| **TOTAL** | **100.3** | | **$56,822.50** |

**Exhibit "C"**

Neiswenter Expenses

**Macon Marriott City Center**
240 Coliseum Drive
Macon, GA 31217 US
+1 478 621 5300

## Summary of Charges

**Guest Information** DAVID NEISWENTER
14817 SW 41ST STREET
DAVIE, FL 33331 US

**Dates of Stay** 08/30/2026 - 09/01/2026
**Room Number** 525
**Guest Number** 23058
**Member Number** [redacted]
**Group Number**

| Date | Description | Reference | Charges | Credits |
|---|---|---|---|---|
| 08/30/2026 | TELECOMM | BASEHSIA | 0.00 | |
| 08/30/2026 | TELECOMM | FREEHSIA | 0.00 | |
| 08/30/2026 | PARKING | AH | 20.00 | |
| 08/30/2026 | ROOM | 525, 1 | 175.00 | |
| 08/30/2026 | ST TAX | 525, 1 | 14.00 | |
| 08/30/2026 | OCC TAX | 525, 1 | 14.00 | |
| 08/30/2026 | GA RMFEE | 525, 1 | 5.00 | |
| 08/30/2026 | CITY FEE | 525, 1 | 3.00 | |
| 08/31/2026 | ROOM | 525, 1 | 175.00 | |
| 08/31/2026 | ST TAX | 525, 1 | 14.00 | |
| 08/31/2026 | OCC TAX | 525, 1 | 14.00 | |
| 08/31/2026 | GA RMFEE | 525, 1 | 5.00 | |
| 08/31/2026 | CITY FEE | 525, 1 | 3.00 | |
| 08/31/2026 | TELECOMM | BASEHSIA | 0.00 | |
| 08/31/2026 | TELECOMM | FREEHSIA | 0.00 | |
| 09/01/2026 | No Description | | | 442.00 |
| **Total balance** | | | | 0.00 USD |

**Questions about your bill?** Please contact your hotel directly at +1 478 621 5300

**Macon Marriott City Center**
240 Coliseum Drive
Macon, GA 31217 US
+1 478 621 5300

## Summary of Charges

## Important Information

### Authenticity of Hotel Bills

Marriott retains official records of all charges and credits to your account and will honor only these records.

### Privacy

Your privacy is important to us. For full details, please view our Privacy Statement.

### Credit of Marriott Bonvoy Points

After a stay, it may take up to seven days for Marriott Bonvoy points to be credited to your account.

**Goldberg, Brian S.**

**From:** Andy Neiswenter [redacted]
**Sent:** Friday, September 18, 2026 5:35 PM
**To:** Goldberg, Brian S.
**Subject:** Fwd: Your Contour Airlines trip confirmation – 13KF60

[redacted]

Begin forwarded message:

**From:** Contour Airlines <noreply@contourairlines.com>
**Date:** August 27, 2026 at 10:17:31 PM EDT
**To:** [redacted]
**Subject: Your Contour Airlines trip confirmation – 13KF60**

**You’re all set!**

Thank you for choosing Contour Airlines.

Manage Booking

This notice contains information to be used during your travels.
Please review the contents of this document carefully.

## Your Flight Details

Your Confirmation Number (PNR) is : **13KF60**

**Sunday, August 30, 2026** STANDARD

**11:05 AM** → **12:50 PM**

Fort Lauderdale, FL → Macon, GA

1h 45min LF 3118

**Tuesday, September 01, 2026** STANDARD

**8:45 AM** → **10:30 AM**

Macon, GA → Fort Lauderdale, FL

1h 45min LF 3117


**Special saving of up to 70% on hotel bookings!**

Learn More

**Need to rent a car? Find the best deals on priceline.**

Learn More

Please be aware that flight times are subject to change. Notification of schedule changes will be sent to the email address provided at the time of booking.

All flights are operated as a public charter by Corporate Flight Management, Inc. d.b.a. Contour Airlines are subject to our Contract of Carriage and Operator Participant Agreement

Do you have TSA Pre✓®? Don't forget to add your Known Traveler Number (KTN) to your reservation !

Beginning May 7th, 2025, you will need a state-issued REAL ID compliant license or identification card, or another acceptable form of ID (such as a passport), to fly within the United States. Find out more at www.tsa.gov.

Online check-in begins 24 hours prior and closes 45 minutes prior to your flight. It is recommended that you arrive at the airport 1 hour prior to departure time.

## Passenger Information

### David A Neiswenter

**Fort Lauderdale, FL - Macon, GA**

Seat: 9A

**Other Services Requested:**

### David A Neiswenter

**Macon, GA - Fort Lauderdale, FL**

Seat: 9A

**Other Services Requested:**

## Contact Person

David A Neiswenter

[redacted]

## Trip Receipt

E-Ticket Number: 5222400928234

TK 342.50 USD

This ticket is non-refundable unless the original ticket was issued at a fully refundable fare. Some fares may not allow changes. If allowed, any change to your itinerary may require payment of a change fee and increased fare. Failure to appear for any flight without notice to Contour will result forfeiture of your fare.

Note: When using certain vouchers to purchase tickets, remaining credits may not be refunded.

## Additional Information

Contour Airlines **does not accept cash** as a form of payment at airport locations. For more information, please visit our Airport Information page.

**Baggage**

The number of bags you can check depends on your destination. Checked bag fees apply may apply. All bag fees are non-refundable and apply per person, each way. Additional fees may apply for overweight / oversize bags or specialty items. Please click here for further information regarding our baggage policies.

Baggage claim policies and experience vary by airport. Find your destination airport's policy by visiting our airport information page here .

Planning ahead and packing properly will make your experience at the airport much quicker and easier. Review the lists below to know what you can pack in carry-on and checked baggage before arriving at the airport. Please note, even if an item is generally permitted, it may be subject to additional screening or not allowed through the checkpoint if it triggers an alarm during the screening process, appears to have been tampered with, or poses other security concerns.

For everyone's safety on board, some common items are restricted by the TSA and FAA. Be sure you know what you can carry on and what you can check in your bags before you go to the airport. Please view our complete list of Prohibited and Restricted Items.

**Flight Status**

Click here to check the departure and arrival status of your flight.

**Helpful Travel Resources**

Transportation Security Administration- Visit the TSA website to review their requirements for travel.

**Modify or Cancel Your Reservation**

If you need to modify or cancel your reservation, please visit the Manage Travel tab at contourairlines.com. If you cannot make your flight, please visit the Manage Travel tab at contourairlines.com or call us at +1 (888) 332-6686 at least 1 hour prior to the departure of any flight segment to make changes to your booking. Advance notification is required to avoid forfeiting the value of your reservation.

NOTICE: This email and any information, files, or attachments are for the exclusive and confidential use of the intended recipient. This message contains confidential and proprietary information of Contour Airlines (such as customer and business data) that may not be read, searched, distributed, or otherwise used by anyone other than the intended recipient. If you are not an intended recipient, do not read, distribute, or take action in reliance upon this message. Think you received this email by mistake? If so, please forward to customercare@contourairlines.com with an explanation, then delete this message from your computer.

Contour Airlines, 808 Blue Angel Way, Smyrna, TN 37167

© 2024 Corporate Flight Management, Inc. d.b.a. Contour Airlines