**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| ZACHARY ZURICH,<br><br>Plaintiff and<br>Counterclaim-Defendant,<br><br>v.<br><br>DAVID NEISWENTER, individually and as member of all named nominal defendants,<br><br>Defendant and<br>Counterclaim-Plaintiff,<br><br>NEIS ACQUISITIONS 5192, LLC, et al.,<br><br>Nominal Defendants. | CIVIL ACTION FILE NO.<br>5:26-cv-00388-MTT |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT ZACHARY ZURICH'S MOTION TO DISMISS COUNTERCLAIMS AND BRIEF IN SUPPORT**

Plaintiff and Counterclaim-Defendant Zachary Zurich moves under Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss all nine counts of the Counterclaims filed by Defendant David Neiswenter (Doc. 5). Zurich also moves under Rule 21 to drop eight of the Additional Nominal Defendants that Neiswenter joined, each of which is organized outside Georgia and none of which is the subject of any claim. The Court has granted Zurich leave to file a brief of up to thirty pages in support of this motion. (Doc. 11.)

This motion is filed by Zurich alone. The Law Office of Zachary Zurich, P.A. and 2364 TICZ, LLC, whom Neiswenter names as additional counterclaim defendants, have not been served. Nothing in this motion is an appearance on their behalf or a waiver of any defense available to them.

On October 21, 2026, the Court directed the parties to address subject-matter jurisdiction, including whether NEIS Acquisitions 5192, LLC and NEIS Acquisitions AUXGA, LLC are nominal parties. (Doc. 7 at 3–4.) Zurich will address those questions in his response to Neiswenter's emergency motion when that motion is properly before the Court, or otherwise as the Order provides. (*Id.*) This motion is limited to the sufficiency of the Counterclaims.

**BRIEF IN SUPPORT**

**INTRODUCTION**

Zurich and Neiswenter each own half of a group of commercial real estate companies, and they no longer agree on how to run them. Zurich filed this action for breach of fiduciary duty and judicial dissolution. (Doc. 2.) Neiswenter answered with nine counterclaims, two of which accuse Zurich of racketeering under federal and Georgia law.

The racketeering counts rest on transfers of company money on four dates between May 12 and August 18, 2026. Neiswenter's own pleading says where the money went: into United States Treasury investments and, between August 6 and August 18, into an account that Zurich identified to Neiswenter as his trust account. (Countercl. ¶¶ 64–83.) Neiswenter does not allege that any of the roughly $4 million at issue is gone, or that any of it was spent or used for Zurich's personal benefit. By his own account, it is still company money, invested in Treasury securities. (*Id.* ¶¶ 78–82, 86.) The supposed losses he claims for himself are limited to "access to," "oversight of," and the ability to "participate in" decisions about that money, along with the cost of tracing it and seeking access to it. (*Id.* ¶¶ 88, 305, 307.)

The First Circuit has called civil RICO, with its treble damages and fee shifting, "an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). On these thin allegations, Neiswenter seeks treble

damages under both the federal and Georgia racketeering statutes, an extraordinary claim. (Doc. 5 at 103.) This is a dispute between two members over how to safeguard their companies' cash. It is by no stretch racketeering.

Count IX, the federal RICO claim, fails for four independent reasons. The transfers are not wire fraud, because Neiswenter pleads no material misrepresentation and the only interest he claims to have lost is a right to control that the Supreme Court has held is not a property interest. Without wire fraud, Count IX has no predicate act and no RICO claim. The fraud is not pleaded with the particularity Rule 9(b) requires. The transfers also do not form a pattern of racketeering activity. RICO requires either predicate acts that extend over a substantial period of time or conduct that threatens to continue. Neiswenter alleges transfers on four dates, involving two sums of money, over fourteen weeks, all aimed at a single goal, in a dispute that both members have taken to court. Furthermore, Neiswenter lacks standing, because the injuries he claims are injuries to the companies. Count VIII, the Georgia RICO claim, fails because the transfers it relies on are neither theft nor wire fraud, and because it rests on the same derivative injuries that belong to the companies, not to Neiswenter himself.

The same problem defeats Counts I, II, and VI, which seek to recover company money for injuries to the companies. Those claims belong to the companies, and Neiswenter has not met the requirements Georgia law and Rule 23.1 impose before a member may bring them. Count II also never identifies the contract provision Zurich supposedly breached, and Count VI rests on an ownership interest in company property that Georgia law says a member does not have. Counts III, V, and VII are not causes of action at all. These counts merely seek remedies, namely an accounting, an injunction, and a receiver. Count IV asks for a declaration that would duplicate the

counts before it. Finally, the out-of-state entities Neiswenter joined as nominal parties have no claim pleaded against them.

**STATEMENT OF FACTS**

The facts below are taken from the Counterclaims and are accepted as true only for purposes of this motion.

Zurich and Neiswenter each hold a fifty percent interest, directly or indirectly, in a group of limited liability companies organized in Georgia and several other states. (Countercl. ¶¶ 1–2.) The companies own commercial real estate, including a shopping center in Macon held in a tenancy in common among NEIS Acquisitions 5192, LLC (Georgia), Neiswenter's wholly owned NEIS Acquisitions GA, LLC, and Zurich's wholly owned 2364 TICZ, LLC. (*Id.* ¶¶ 3, 25–28.) That property secures a City National Bank of Florida loan that matures on December 17, 2026. (*Id.* ¶ 30.)

The Counterclaims center on transfers made on four dates. On or about May 12, 2026, $1,994,384.44 moved from a company account to TreasuryDirect, the Treasury Department's platform for buying Treasury securities. (*Id.* ¶¶ 64–65.) On August 6, 2026, $1,941,000 moved from a money market account of NEIS Acquisitions 5192, LLC to an account ending in 642187. (*Id.* ¶¶ 66–67, 196.) Neiswenter contacted Zurich demanding to know where the money had gone, and Zurich responded, "The funds are in my trust account and they'll stay there until further order of the court." (*Id.* ¶¶ 70–71.) On August 11 and August 18, 2026, the same funds moved out of account 642187, through the operating account of NEIS Acquisitions 5192, LLC (Tennessee), and into TreasuryDirect, with $19,445.31 returned to account 642187. (*Id.* ¶¶ 79–83.) The August 11 and 18 transfers did not move new money. They moved the money transferred on August 6. (*Id.* ¶¶ 79–81.)

Neiswenter objected to the funds being held in a law firm trust account and demanded that Zurich return them. (*Id.* ¶ 74.) The Counterclaims allege that the funds were then placed into Treasury investments. (*Id.* ¶¶ 78–82.) They do not allege that any of the funds were spent, withdrawn for Zurich's benefit, or lost.

On these facts Neiswenter asserts nine counts. Count I alleges breach of fiduciary duty and Count II breach of "the Operating Agreements," both against Zurich. (*Id.* ¶¶ 90–121.) Count III seeks an accounting, Count IV a declaratory judgment, and Count V an injunction, all against every counterclaim defendant. (*Id.* ¶¶ 122–150.) Count VI alleges conversion of company funds. (*Id.* ¶¶ 151–170.) Count VII asks the Court to appoint a receiver over all of the companies. (*Id.* ¶¶ 171–185.) Count VIII alleges that each transfer was theft by taking, theft by conversion, or wire fraud under the Georgia RICO Act, O.C.G.A. § 16-14-1 *et seq.* (*Id.* ¶¶ 186–230.) Count IX alleges that each electronic transfer instruction was federal wire fraud, on the theory that each instruction "expressly or implicitly" told the banks that Zurich had authority to move the money, and that together they form a pattern of racketeering activity under 18 U.S.C. § 1962(c). (*Id.* ¶¶ 231–314.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not accepted as true. *Id.* Civil RICO claims built on fraud must also satisfy Rule 9(b), which requires the pleader to identify the precise statements made, the time and place of each and the person responsible for it, the content of the statements and how they misled the plaintiff,

and what the defendant obtained as a result. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007).

## ARGUMENT

### A. Count IX Does Not State a Claim Under Federal RICO.

To state a claim under 18 U.S.C. § 1962(c), Neiswenter must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The only alleged racketeering activity Count IX pleads is wire fraud under 18 U.S.C. § 1343. (Countercl. ¶¶ 261–282.) Count IX fails at the racketeering activity element, the particularity requirement, and the pattern element, and Neiswenter lacks standing to bring it. Each failure is independently fatal.

#### 1. The transfers were not wire fraud.

The wire fraud statute criminalizes the activity of a person who, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," uses interstate wires to carry out the scheme. 18 U.S.C. § 1343. The scheme Neiswenter pleads has neither deception nor obtaining a property interest as its object.

First, there was no material misrepresentation. The Supreme Court recently held that wire fraud does not require an intent to cause economic loss, but it reaffirmed that "materiality of falsehood is an element of" the federal fraud statutes and described materiality as "a limit on" them. *Kousisis v. United States*, 605 U.S. 114, 132 (2025) (first quotation quoting *Neder v. United States*, 527 U.S. 1, 25 (1999)). Neiswenter's theory is that every electronic transfer instruction "expressly or implicitly" told City National and TreasuryDirect that Zurich had authority to move the money. (Countercl. ¶¶ 251–255.) He identifies no statement anyone made to either institution,

he does not allege that either institution lost anything or has complained, and he pleads no facts showing that either was deceived. The only person Neiswenter claims was wronged is Neiswenter, and his own pleading shows that when he asked where the August 6 money had gone, Zurich told him. Zurich responded that the money was in his trust account and would stay there until a court ordered otherwise. (*Id.* ¶¶ 70–71.) Neiswenter learned of the May 12 transfer from the bank's own records, which identified it as a TreasuryDirect transaction. (*Id.* ¶ 65.) A scheme that announces openly and clearly where money is going can hardly be said to be a scheme to obtain it by false pretenses.

Nor does Neiswenter allege that the supposed scheme was aimed at depriving him of a property interest. A defendant commits wire fraud "only if his scheme 'aimed to deprive' the victim of a traditional property interest." *Kousisis*, 605 U.S. at 134 (quoting *Kelly v. United States*, 590 U.S. 391, 400 (2020)). Wire fraud "reaches only traditional property interests," and the right to complete information and control over one's assets is not one of them. *Ciminelli v. United States*, 598 U.S. 306, 309, 316 (2023). Every object of the scheme Neiswenter describes relates to control over the funds, not obtaining the funds themselves. He says the scheme sought to place company funds in accounts "not equally accessible to Neiswenter," to prevent him from "monitoring, administering, or participating in decisions concerning Company funds," and to withhold "information concerning the title, ownership, custody, administration, location, disposition, and investment of Company funds." (Countercl. ¶ 248(d)–(f).) The injuries he claims are the same. They are the "loss of contractual and property-based management rights," the "loss of access to and control over Company funds," and the cost of tracing company money. (*Id.* ¶ 307(a)–(f); see also *id.* ¶ 305.) That is the right-to-control theory *Ciminelli* rejected. Neiswenter alleges that Zurich controls the Treasury accounts (*id.* ¶¶ 65, 86, 277, 279), and that allegation is taken as true for this

motion. It describes control over company money, not the taking of it. Neiswenter's own pleading still calls the money in those accounts "Company funds." (*Id.* ¶ 86.) The money itself remains company money, invested in Treasury securities. (*Id.* ¶¶ 78–82.) Count IX does not allege facts showing that Zurich, or anyone else, obtained or sought to obtain any of it.

**2. The fraud allegations do not satisfy Rule 9(b).**

Even if the transfers could be characterized as fraud, Count IX does not plead them with particularity. Neiswenter does not identify a single statement made to either bank. Key predicate allegations, including how each transfer was initiated and why the implied representations were supposedly false, are made only "upon information and belief." (Countercl. ¶¶ 213–217, 252, 266, 272, 276, 279, 281, 285–286.) The scheme allegations attribute conduct to "Defendants" collectively, without saying which of Zurich or The Law Office of Zachary Zurich, P.A. did what. (*Id.* ¶¶ 247, 260, 262.) Rule 9(b) requires more. A pleading against multiple defendants "should inform each defendant of the nature of his alleged participation in the fraud." *Ambrosia Coal*, 482 F.3d at 1317 (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)). An inference that an electronic instruction carried an implied statement, alleged on information and belief and attributed to defendants as a group, does not meet that standard.

**3. Transfers on four dates over fourteen weeks, aimed at one goal, are not a pattern.**

A pattern of racketeering activity requires both relatedness and continuity. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). Continuity may be closed-ended, meaning a series of related predicates extending over a substantial period of time, or open-ended, meaning conduct that by its nature threatens to repeat. *Id.* at 1265. Neiswenter pleads neither.

Closed-ended continuity is absent because the alleged predicates span fourteen weeks, from May 12 to August 18, 2026. (Countercl. ¶¶ 265–282.) In *Jackson*, the Eleventh Circuit held

that a scheme lasting nine months did not extend over a substantial period of time, and noted that other circuits have rejected periods under a year. 372 F.3d at 1265–67. The court added that "where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Id.* at 1267. *Jackson* also relied on an earlier Eleventh Circuit holding that a six-month scheme was too short. *Id.* at 1266 (citing *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 593 (11th Cir. 1992)). Neiswenter's scheme is far shorter than either. It also had one alleged goal, to "obtain and maintain unilateral control over Company money," and one alleged victim, Neiswenter, together with the companies he co-owns. (Countercl. ¶¶ 283, 292.) And the transfers on those four dates involve just two sums of money, because the August 11 and August 18 transfers moved the funds already transferred on August 6. (*Id.* ¶¶ 79–81.)

Open-ended continuity requires allegations that the predicate acts were part of the defendant's regular way of doing business or that they threaten repetition in the future. *Jackson*, 372 F.3d at 1267. The Counterclaims offer only conclusions on both points. Neiswenter alleges that the defendants "possessed the means and opportunity to continue" moving company funds and that their conduct "demonstrated a threat that the alleged racketeering activity would continue." (Countercl. ¶¶ 294–295.) Any member with signature authority has the means and opportunity to move company money. The scheme Neiswenter describes ended with the funds invested in Treasury securities by August 18. (*Id.* ¶¶ 79–82.) A dispute that both members have taken to court, each asking at one point for a receiver, presents no threat of continuing racketeering. (*Id.* ¶¶ 182, 184.)

**4. Neiswenter lacks standing to recover under RICO for injuries to the companies.**

A civil RICO plaintiff must be "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). The Eleventh Circuit has held that "losses suffered by a company's stakeholders as a result of racketeering activity against the company do not give them standing under RICO," and that standing "will not arise solely because one is a shareholder or a limited partner in a company that was the target of the alleged RICO violation." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (11th Cir. 1998). Such an injury is "too indirect or 'derivative' to confer RICO standing." *Id.*

The Counterclaims place the companies at the center of the alleged racketeering. The companies are the alleged enterprise. (Countercl. ¶¶ 237–238.) The predicate acts allegedly "directly deprived the Companies of possession, use, availability, and ordinary control of their money," and the companies allegedly "sustained direct injury to business and property." (*Id.* ¶¶ 304, 308.) The injuries Neiswenter claims for himself are the loss of "management rights," the loss of "access to and control over Company funds," the loss of "the use and availability of Company funds," and the costs of "tracing and protecting Company assets" and determining "the location and disposition of Company funds." (*Id.* ¶ 307(a)–(e).) Each of those is a consequence of what allegedly happened to the companies' money. A member's right to oversee company funds has value only because the funds belong to the company, and money spent tracing and protecting company assets is spent on the company's behalf. Neiswenter does not claim that any of the money belonged to him. The rights he says the transfers took from him are rights "to access, oversee, administer, protect, and participate in decisions concerning Company money." (*Id.* ¶ 305.) The money belongs to the companies, and as Part C.6 explains, a member "has no interest in specific

limited liability company property." O.C.G.A. § 14-11-501(a). Simply labeling these supposed injuries "direct" does not change the fact that they are derivative. (Countercl. ¶¶ 305–306, 309.)

Neiswenter's alternative assertion of the companies' injuries "derivatively" does not save Count IX. (*Id.* ¶ 310.) *Bivens* recognizes that a properly brought derivative suit may assert a company's RICO injury. 140 F.3d at 909. But as Part C.2 explains, Neiswenter's derivative claims rest entirely on an allegation that demand would have been futile, which Georgia law does not accept. Count IX should be dismissed for lack of standing as well.

## B. Count VIII Does Not State a Claim Under the Georgia RICO Act.

A civil claim under the Georgia RICO Act requires a pattern of at least two acts of racketeering activity. O.C.G.A. § 16-14-3(4)(A). Neiswenter relies on three kinds of predicate acts, which are theft by taking, theft by conversion, and wire fraud. (Countercl. ¶¶ 205–217.) None of the three is adequately pleaded.

The wire fraud predicates fail for the reasons set out in Part A. Count VIII's wire fraud allegations are pleaded entirely on information and belief and rest on the same theory of implied representations to the banks. (*Id.* ¶¶ 213–217.)

Theft by conversion requires that a person, "having lawfully obtained funds . . . of another . . . under an agreement or other known legal obligation to make a specified application of such funds," "knowingly converts the funds . . . to his own use in violation of the agreement or legal obligation." O.C.G.A. § 16-8-4(a). Neiswenter identifies no specified application. He pleads only general obligations "to administer Company funds for authorized Company purposes," to "preserve the property and rights of the Companies and their members," and to "provide an accounting." (Countercl. ¶¶ 209–210.) Those are the ordinary duties of any manager, not an agreement to apply particular funds in a particular way. Theft by conversion "does not lie, as a

matter of law," when the obligation alleged is only to disburse funds "for general application." *Blanton v. Bank of Am.*, 256 Ga. App. 103, 105, 567 S.E.2d 313 (2002) (rejecting a civil RICO claim predicated on theft by conversion), *overruled on other grounds by Williams Gen. Corp. v. Stone*, 279 Ga. 428, 614 S.E.2d 758 (2005). Nor does Neiswenter allege that Zurich converted anything to his own use. His theory is that the funds were moved to Treasury investments and an account that held them pending court involvement. (Countercl. ¶¶ 71, 78–82.) Moving company money into Treasury securities is a decision about how company money is held. It is not using that money for oneself.

Theft by taking requires that the person take the property "with the intention of depriving" the owner of it. O.C.G.A. § 16-8-2. Under Georgia law, a person "deprive[s]" an owner by withholding property "without justification," whether "permanently or temporarily," or by disposing of it so that the owner is unlikely to get it back. O.C.G.A. § 16-8-1(1). Neiswenter says Zurich had that intent, but he says so only as a conclusion, without facts to back it up. (Countercl. ¶¶ 206, 211–212.)

The facts he does plead show the opposite. Zurich told Neiswenter where the funds were, stated that they would be held until a court ordered otherwise, and moved them out of the trust account after Neiswenter objected to their being held there. (*Id.* ¶¶ 71, 74, 79–82.) Funds held in Treasury securities pending resolution of a dispute that both members have taken to court, are not funds appropriated with an intent to deprive anyone of them. Additionally, Georgia law makes it a defense to theft that the accused acted "under an honest claim of right to the property" or "under a right to acquire or dispose of the property as he or she did." O.C.G.A. § 16-8-10(2)–(3). A member who discloses that he is holding company funds "until further order of the court" is asserting exactly that kind of claim on the face of the pleading. (Countercl. ¶ 71.) Each transfer is

pleaded as theft "upon information and belief," without facts that would distinguish a crime from a management disagreement. (*Id.* ¶ 212.)

Without a predicate act, there is no pattern.

Count VIII fails for a second reason. A Georgia RICO plaintiff must show that the violation was "the proximate cause of the injury." *Wylie v. Denton*, 323 Ga. App. 161, 165, 746 S.E.2d 689 (2013). Federal courts apply the same requirement under RICO and hold that it is not met when a member or shareholder claims losses that flow from harm done to the company. Such an injury is "too indirect" to support a claim. *Bivens*, 140 F.3d at 906. The injuries Neiswenter claims under Georgia law are the same ones he claims under federal law, namely the loss of access to and oversight of company funds and the companies' own loss of possession of their money. (Countercl. ¶¶ 227–229.) Any harm to Neiswenter from those losses comes to him only through the companies, so the alleged violation was not its proximate cause. And as Part C.2 explains, Neiswenter has not properly brought derivative claims on the companies' behalf. Count VIII should be dismissed.

## C. Counts I, II, and VI Assert the Companies' Claims, Not Neiswenter's.

### 1. The claims seek redress for injury to the companies.

Counts I, II, and VI are about company money. Count I alleges that Zurich "transferred Company funds without authorization," moved "Company funds" into accounts outside the companies' ordinary operating accounts, and commingled "Company assets and Company funds" with those of others. (Countercl. ¶¶ 92, 94, 96.) Count II rests on the same transfers. (*Id.* ¶¶ 111–112.) Count VI alleges that "the jointly owned Companies owned and possessed" the funds at issue and that Zurich converted them. (*Id.* ¶¶ 152, 155–156.) Count I also alleges that Zurich commingled company funds with those of affiliates and used company-paid personnel and resources for entities the parties do not jointly own. (*Id.* ¶¶ 96–97.) Each count pleads that the

companies were injured, and each seeks damages for the companies along with Neiswenter. (*Id.* ¶¶ 104, 121, 167.)

A claim for an injury to the company belongs to the company. Georgia applies to limited liability companies the reasons that ordinarily require a member to sue derivatively, which include preventing multiple suits, protecting the interests of all members, and protecting the company's creditors by ensuring that any recovery goes to the company. *Stoker v. Bellemeade, LLC*, 272 Ga. App. 817, 822–23, 615 S.E.2d 1 (2005), *rev'd in part on other grounds*, *Bellemead, LLC v. Stoker*, 280 Ga. 635, 631 S.E.2d 693 (2006). Neiswenter's pleading also confirms that the money he seeks to recover is not his. Under Georgia law, "[a] member has no interest in specific limited liability company property." O.C.G.A. § 14-11-501(a). To the extent Counts I, II, and VI seek the return of company funds or damages for injury to the companies, they are derivative claims. Neiswenter himself makes the very same point. In answering Zurich's complaint, he asserts that "[a]ny injury alleged [by Zurich] is derivative of an alleged injury to the entities" and that, "[t]o the extent any claim is derivative in nature, Plaintiff failed to satisfy all statutory and common-law prerequisites necessary to maintain such claims." (Doc. 5 at 25, Second & Third Defenses.) The rule he invokes against Zurich forecloses his own claims.

Georgia recognizes an exception for closely held companies, but it doesn't help Neiswenter here. *Stoker* allowed members of two-member LLCs to sue directly in part because "the record does not reflect any evidence of existing creditors." 272 Ga. App. at 823. Neiswenter's own pleading shows otherwise. The companies' Macon property secures a City National Bank loan that matures on December 17, 2026 (Countercl. ¶ 30), and Neiswenter alleges that the companies face "significant financial and operational issues," including that maturity and "the need for coordinated lender communications and refinancing efforts." (*Id.* ¶ 178.) Counts I, II, and VI seek to recover

company money. Letting one member recover that money in his own name would divert it from the companies as their secured loan comes due, which is conduct that the derivative rule exists to prevent.

**2. Neiswenter's alternative derivative claims fail for lack of demand.**

Georgia allows a member to bring a derivative action only if, among other conditions, "[t]he plaintiff has made written demand on those managers or those members with such authority requesting that such managers or such members take suitable action," and ninety days have passed or the demand has been rejected. O.C.G.A. § 14-11-801(2)–(3). Unlike some jurisdictions, Georgia does not recognize futility as a substitute for making a written demand. Whether demand is required is governed by the law of the state where the company is organized, which a federal court applies here. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96–97, 108–09 (1991); see O.C.G.A. § 14-11-701(a). Georgia's statute contains no exception for cases in which demand would be futile, and the Court of Appeals has declined to create one. *Pinnacle Benning, LLC v. Clark Realty Capital, LLC*, 314 Ga. App. 609, 615–16, 724 S.E.2d 894 (2012), *disapproved of on other grounds by Song v. eGPS Sols. I, Inc.*, 371 Ga. App. 357, 899 S.E.2d 530 (2024).

Federal Rule of Civil Procedure 23.1 separately requires a member who brings a derivative action to "state with particularity" any effort to obtain the desired action from the company and the reasons for not obtaining it or not making the effort. Fed. R. Civ. P. 23.1(b)(3).

Neiswenter asserts his derivative claims "for the benefit of the affected Companies," a group he never identifies with any particularity, made up of some unstated number of the fourteen companies organized in nine states. (Countercl. ¶¶ 2, 310.) Nor does he allege which company owned the money at issue. The transfers he challenges moved money from an unidentified "Company account" and from an account of "Neis Acquisitions 5192, LLC," a name shared by

three separate companies organized in Georgia, Tennessee, and Illinois. (*Id.* ¶¶ 2(a), (d), (e), 64, 196.) Rule 23.1 requires a derivative plaintiff to state with particularity his efforts to get the company to act. Fed. R. Civ. P. 23.1(b)(3). A single futility paragraph addressed to unidentified "affected Companies" does not meet that standard. (Countercl. ¶ 311.) As to the Georgia companies, the claims fail for the further reason that Georgia does not excuse demand for futility at all.

Neiswenter pleads his claims individually and, "to the extent applicable," derivatively on behalf of the companies. (Countercl. ¶ 310; Doc. 5 at 102.) Nowhere does he allege that he made the written demand § 14-11-801 requires. He alleges instead that demand "would have been futile because Zurich is the alleged wrongdoer, possesses a fifty-percent ownership interest and management authority, disputes any wrongdoing, and has refused to return or fully account for the funds." (Countercl. ¶ 311.) That is the very excuse Georgia law does not accept. *Pinnacle Benning*, 314 Ga. App. at 615–16. Because the statute has no futility exception, Neiswenter's own paragraph 311 concedes that the statutory condition was not met.

Neiswenter's August requests to Zurich do not satisfy the demand requirement. He alleges that after Zurich told him where the August 6 funds were, he "objected to the unilateral transfer," "demanded the immediate return of the funds," and warned that he would complain to bar authorities, and that Zurich answered, "go for it." (Countercl. ¶¶ 74–75.) The statute requires a written demand on the members with authority to act for the company "requesting that such managers or such members take suitable action," meaning action by the company to pursue its own claim. O.C.G.A. § 14-11-801(2). A demand that one member personally hand back money is a demand for relief to the member who makes it. It does not ask the company to decide whether to sue. Neiswenter does not allege that the August demand was in writing or that it asked either

company to take any action, and he does not rely on it as his statutory demand. He relies instead on futility (Countercl. ¶ 311), a ground Georgia law does not recognize. Counts I, II, and VI should be dismissed to the extent they seek recovery for injury to the companies. The same defect forecloses the derivative fallback in Counts VIII and IX.

### 3. What remains of Counts I and II is conclusory.

Counts I and II also allege that Zurich "restricted and, in some instances, denied" Neiswenter access to company bank accounts and records. (Countercl. ¶¶ 93, 113, 117.) The only specific instance the Counterclaims identify is Zurich's refusal to consent to adding Neiswenter as a signer on certain City National Bank accounts. (*Id.* ¶¶ 49–56.) Beyond that, the allegations do not identify a single record Neiswenter requested and was refused, or a date on which any such refusal occurred. They are precisely the kind of "[t]hreadbare recitals of the elements of a cause of action" that are insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

Neiswenter's governance allegations are no more specific. Counts I and II allege that Zurich permitted "third parties and family members" to hold authority over company accounts and that he "acted unilaterally concerning Company operations, financial relationships, leasing matters, banking relationships, and management decisions." (*Id.* ¶¶ 98–99; see *id.* ¶¶ 114–116.) The Counterclaims never name a person who was given access, an account that person could access, a lease or loan Zurich handled alone, or when any of the alleged acts happened. Count I closes by predicting that "additional breaches of fiduciary duty" will "be revealed through discovery." (*Id.* ¶ 103.) This is insufficient. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

**4. Count I cannot rest on Zurich's lawsuits.**

Count I also alleges that Zurich "utilized litigation and receivership proceedings as leverage" and faults him for abandoning an earlier proceeding and "immediately recommenc[ing] substantially similar litigation" in this Court. (Countercl. ¶¶ 101–102.) That is a claim that Zurich abused the litigation process, a claim Georgia allows only under its abusive litigation statute. "[N]o claim other than as provided in this article or in Code Section 9-15-14 shall be allowed, whether statutory or common law, for the torts of malicious use of civil proceedings, malicious abuse of civil process, nor abusive litigation," and the statute "is the exclusive remedy for abusive litigation." O.C.G.A. § 51-7-85. A claim under the statute requires written notice to the person accused, giving that person a chance to withdraw the challenged position, and it requires "the final termination of the proceeding in which the alleged abusive litigation" took place. O.C.G.A. § 51-7-84(a)–(b). Neiswenter alleges neither. Relabeling Zurich's lawsuits as a breach of fiduciary duty does not avoid the statute.

**5. Count II does not identify any contract term that was breached.**

Count II alleges breach of "the Operating Agreements" of all the companies collectively. (Countercl. ¶¶ 106–121.) Neiswenter says that the agreements "require compliance with the governance structure, approval procedures, member rights, information rights, management requirements, and financial-administration obligations established therein," and that Zurich acted "without obtaining the approvals required." (*Id.* ¶¶ 108, 111.) He never says which agreement contains the requirement, which section imposes it, or what the section says.

The Court can dispense with this threadbare allegation summarily. A contract claim that does not "point to any specific provision in any contract" that imposed a duty that was allegedly breached is "vague and conclusory" and fails. *Robinson v. SunTrust Mortg., Inc.*, 785 F. App'x

671, 677 (11th Cir. 2019) (applying Georgia law). Count II should be dismissed for this reason as well.

#### 6. Count VI rests on a property interest Neiswenter does not have.

Conversion requires that the plaintiff have the right to immediate possession of specific property. *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 358–59, 551 S.E.2d 765 (2001). Neiswenter's only claim to the funds is that, "[a]s a fifty-percent owner of the jointly owned Companies," he "possessed ownership rights and legally protected interests in Company funds." (Countercl. ¶ 153.)

Georgia law says the opposite. A member of a limited liability company "has no interest in specific limited liability company property." O.C.G.A. § 14-11-501(a). Neiswenter had no right to possess the companies' money, so he cannot sue in his own name for its conversion. Count VI also alleges that Zurich exercised dominion over company funds by restricting Neiswenter's access to accounts and information and by failing to provide records. (Countercl. ¶ 157(a)–(c).) Withholding information is not the conversion of property, and those allegations add nothing to the claim. Count VI should be dismissed.

### D. Counts III, IV, V, and VII Do Not State Independent Claims.

#### 1. Counts III and V seek remedies, not causes of action.

Count V seeks injunctive relief. (Countercl. ¶¶ 141–150.) An injunction is a remedy, and "any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005). Neiswenter may request injunctive relief as a remedy under any count that survives, and his prayer for relief already does so. (Doc. 5 at 104, Prayer ¶ I.) Count V should be dismissed as a freestanding claim.

Count III seeks an equitable accounting. (Countercl. ¶¶ 122–133.) Under Georgia law an equitable accounting is "granted only in carefully prescribed and determined circumstances," and requires a showing that the plaintiff has no adequate remedy at law. *Guarantee Ins. Co. v. Merchants Emp. Benefits, Inc.*, No. 5:07-cv-307 (CAR), 2010 WL 3937325, at *12 (M.D. Ga. Sept. 30, 2010) (quoting *Herring v. Standard Guar. Ins. Co.*, 238 Ga. 261, 262, 232 S.E.2d 544 (1977)); see O.C.G.A. § 23-2-70. In *Guarantee*, this Court held on summary judgment that a party seeking an accounting had an adequate remedy at law "in the form of its breach of contract action, with the availability of extensive discovery." 2010 WL 3937325, at *12. Neiswenter is in the same position. He pleads breach of fiduciary duty and breach of the operating agreements, and the information he says he needs, including the account records, transfer instructions, and Treasury records, is ordinary discovery in this action. (Countercl. ¶¶ 124–128.) His contrary allegation that he has no adequate remedy at law is a conclusion, and one at odds with the rest of his pleading, which seeks damages under most of its counts. (*Id.* ¶ 132.) Count III should be dismissed, without prejudice to Neiswenter's ability to seek an accounting as a remedy under a surviving count.

**2. Count IV duplicates the other counts.**

Count IV asks for a declaration of the parties' "respective rights, authority, duties, obligations, and limitations under the governing agreements and applicable law." (Countercl. ¶ 140.) Most of the eighteen disputes it lists are the subject of other counts, including each member's management authority, the propriety of the transfers, the location of the funds, access to accounts and records, the parties' fiduciary duties, and their rights under the operating agreements. (*Id.* ¶ 136(a)–(f), (l)–(r).)

This Court has dismissed, as redundant, a request for a declaration that a defendant's past conduct breached a contract, because the request "involves the exact same dispute as the breach of

contract claim," and the plaintiffs, if they prevailed on that claim, would "be able to secure full, adequate, and complete relief on their claims for past injuries." *Schott v. Allstate Ins. Co.*, No. 4:24-CV-136 (CDL), 2025 WL 1416286, at *4–5 (M.D. Ga. May 15, 2025). The remaining items concern authority over leasing, sales, and financing. (Countercl. ¶ 136(g)–(k).) Those questions are already before the Court in Zurich's dissolution claim, which rests on the members' inability to agree on leasing or selling the property or addressing the loan's maturity (Doc. 2 ¶¶ 40–70, 96–97), and in Neiswenter's own receivership count, which seeks court supervision of leasing and refinancing (Countercl. ¶¶ 178, 184). A declaration would add nothing to the relief available on those claims. Count IV should be dismissed.

**3. Count VII seeks a remedy, not a cause of action.**

Count VII asks the Court to appoint a receiver over every one of the "Companies," a term that covers every one of the jointly owned companies and their property. (Countercl. ¶¶ 2, 4, 171–185.) The appointment of a receiver "is not a substantive right; rather, it is an ancillary remedy which does not affect the ultimate outcome of the action." *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998). The Supreme Court made the same point long ago. "A receivership is only a means to reach some legitimate end sought through the exercise of the power of a court of equity. It is not an end in itself." *Kelleam v. Maryland Cas. Co.*, 312 U.S. 377, 381 (1941) (quoting *Gordon v. Washington*, 295 U.S. 30, 37 (1935)). A receiver may be requested, if at all, as relief ancillary to a viable claim, not as a claim unto itself.

The breadth of the receivership Neiswenter requests shows why the remedy cannot stand on its own. He asks that the receiver take control of the companies' funds, accounts, records, leasing, refinancing, and lender communications, and investigate the disputed transfers. (Countercl. ¶ 184.) The transfers he challenges involved a money-market account of NEIS

Acquisitions 5192, LLC, the Law Office's account ending in 642187, and the Tennessee entity's operating account. (*Id.* ¶¶ 64–83, 196.) Yet the receivership he seeks would reach companies and property in several other states. Because a receiver is only a means to an end, its scope must be tied to an end that justifies those means. Count VII ties it to nothing.

Neiswenter's remaining allegations do not change the analysis. He relies on Zurich's request for a receiver in an earlier state court proceeding. (Countercl. ¶¶ 178, 182.) What Zurich asked another court to do in a case he later dismissed does not create a cause of action here. And Neiswenter's own pleading is divided on the premise of his request. Count VII alleges that managing the companies "through ordinary cooperation is no longer reasonably achievable" (*id.* ¶ 177), while his answer insists that "the companies are capable of operating in conformity with their governing documents." (Doc. 5 at 27, Sixteenth Defense.) Count VII is unsupported and should be dismissed as a freestanding claim.

**E. Eight Out-of-State Nominal Defendants Should Be Dropped.**

Neiswenter joined thirteen entities as "Additional Nominal Defendants." (Doc. 5 at 1–2; Countercl. ¶¶ 12–17.) Zurich asks the Court to drop eight of them, each organized outside of Georgia, for want of any claim made against them. They are NEIS Acquisitions 6433 KY, LLC, NEIS Acquisitions 6471, LLC, NEIS Acquisitions 28232 PA, LLC, NEIS Acquisitions 28382 PA, LLC, NEIS Acquisitions 3502 IN, LLC, NEIS Acquisitions 22298, LLC, NEIS Acquisitions 4651 SC, LLC, and FDSTLMO 26945, LLC. (*Id.* ¶ 2.) The Court may "at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

No count asserts a claim against any of these entities, and the Counterclaims allege nothing any of them did. Their joinder rests on conclusory recitals that they "claim interests relating to" the funds and governance matters at issue and that complete relief cannot be had without them.

(Countercl. ¶¶ 13–17.) The transfers at the center of this case moved company money into Treasury investments, the August transfers by way of the Law Office's account and the Tennessee entity's operating account. (*Id.* ¶¶ 64–83, 196.) None of the eight companies Zurich asks the Court to drop is alleged to have held or received any of that money, and complete relief on Neiswenter's claims about the transfers does not require any of them.

## CONCLUSION

Zurich respectfully requests that the Court dismiss Counts VIII and IX of the Counterclaims with prejudice; dismiss Counts I, II, III, IV, V, VI, and VII; and drop NEIS Acquisitions 6433 KY, LLC, NEIS Acquisitions 6471, LLC, NEIS Acquisitions 28232 PA, LLC, NEIS Acquisitions 28382 PA, LLC, NEIS Acquisitions 3502 IN, LLC, NEIS Acquisitions 22298, LLC, NEIS Acquisitions 4651 SC, LLC, and FDSTLMO 26945, LLC as parties under Rule 21.

Respectfully submitted this 29th day of October, 2026.

HAIGLER & ASSOCIATES,
by J.A.S. Legal Firm, LLC

*/s/ Ashanti Armstrong*
Ashanti Armstrong, Esq.
Georgia Bar No. 878516
Attorney for Plaintiff and
Counterclaim-Defendant Zachary Zurich
400 Galleria Parkway, SE, Suite 1500
Atlanta, Georgia 30339
Telephone: (813) 392-9012
Email: armstrong@haigler-firm.com

**CERTIFICATE OF SERVICE**

I certify that on October 29th, 2026, I electronically filed the foregoing Plaintiff and Counterclaim-Defendant ZACHARY ZURICH'S MOTION TO DISMISS COUNTERCLAIMS AND BRIEF IN SUPPORT with the Clerk of Court using the CM/ECF system, which will send notice of the filing to all counsel of record, including the following.

Brian S. Goldberg
BUCHALTER LLP
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
bgoldberg@buchalter.com
Counsel for Defendant and Counterclaim-Plaintiff David Neiswenter

*/s/ Ashanti Armstrong*
Ashanti Armstrong, Esq.
Georgia Bar No. 878516