**EXHIBIT "A"**

Security Deed

Type: GEORGIA LAND RECORDS
Recorded: 1/21/2022 9:06:00 AM
Fee Amt: $25,025.00 Page 1 of 30
Intangible Tax: $25,000.00
Bibb County Superior Court
Erica Woodford Clerk

Participant ID(s): 3760043500,
7067927936

BK 11126 PG 348 - 377

After recording return to:
Chicago Title Insurance Company
711 Third Avenue, 8th Floor
New York, NY 10017

State of: Georgia
County of: Bibb

**DEED TO SECURE DEBT, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT**

THIS DEED TO SECURE DEBT, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT (the "Deed"), made on **December 16, 2021** from NEIS ACQUISITIONS 5192, LLC, a Georgia Limited Liability Company and 2364 TICZ, LLC, a Georgia Limited Liability Company, and NEIS ACQUISITIONS GA, LLC, a Georgia Limited Liability Company (the "Grantor"), whose address is 2885 Sandford Ave. SW 25343, Grandville, Michigan 49418 in favor CITY NATIONAL BANK OF FLORIDA (the "Grantee"), whose address is 100 S.E. 2nd Street, 13th Floor, Miami, FL 33131.

In consideration of Grantee's extension of new financial accommodations or continuation of existing financial accommodations to Grantor (such other person(s) or entity(ies), individually and collectively, "Borrower"), whose obligations to Grantee are being supported by Grantor, and other valuable consideration, the receipt and adequacy of which are hereby acknowledged, Grantor agrees as follows:

**ARTICLE I**

**DEFINITIONS, HEADINGS, RULES OF CONSTRUCTION AND SECURITY AGREEMENT**

1.1 Definitions. As used in this Deed and in the exhibits attached hereto, the following terms shall have the following meanings herein specified, such definition to be applicable equally to the singular and plural forms of such terms:

(a) Default Rate: The Default Rate as defined in the Note.

(b) Environmental Agreement: That certain Environmental Compliance and Indemnity Agreement dated as of even date herewith from Grantor and Guarantor in favor of Grantee.

(c) Environmental Law: Any law, enactment, statute, code, ordinance, order, rule, regulation, judgment, decree, writ, injunction, franchise, permit, certificate, license, authorization, or

**Return To:**
Fidelity National Title Group
3301 Windy Ridge Parkway, Suite 300
Atlanta, GA 30339
Attn: Kim Hogan- **212720GA**

other direction or requirement of any Governmental Authority, as same may be amended from time to time, whether now in existence or established or hereafter enacted, promulgated, adopted, entered or issued, both within and outside the present contemplation of the parties hereto, relating to pollution or protection of the environment.

(d) Events of Default: Those events described in **Article VII** hereof.

(e) Fixtures: All property and equipment now owned or hereafter acquired by Grantor and now or hereafter located under, on, or above the Land, whether or not permanently affixed, which, to the fullest extent permitted by applicable law in effect from time to time, shall be deemed fixtures and a part of the Land.

(g) Future Advances: Any loan of money from Grantee to Grantor made within twenty (20) years from the date hereof. The total amount of such loan or loans may decrease or increase from time to time, but the total unpaid aggregate balance secured by this Deed at any one time shall not exceed double the loan amount plus interest thereon, and any disbursements made for the payment of the Impositions (whether taxes, levies or otherwise), insurance, or other liens on the Deed Property, with interest on such disbursements. The Grantee has no obligation, whatsoever, to make a Future Advance.

(h) Governmental Authority: Any (domestic or foreign) federal, state, county, municipal or other governmental department, entity, authority, commission, board, bureau, court, agency or any instrumentality of any of them.

(i) Governmental Requirement: Any law, enactment, statute, code, ordinance, order, rule, regulation, judgment, decree, writ, injunction, franchise, permit, certificate, license, authorization, or other direction or requirement of any Governmental Authority now existing or hereafter enacted, adopted, promulgated, entered, or issued applicable to the Grantee, Grantor, the Land, the Improvements, or any of the Deed Property, including, without limitation, any Environmental Law.

(j) Guarantor(s): means, individually and/or collectively, ZACHARY ZURICH and DAVID NEISWENTER and their respective heirs, personal representatives, successors and assigns.

(k) Guaranty: means (i) that certain Guaranty of Payment and Performance dated as of even date herewith from Guarantor in favor of Grantee, and (ii) that certain Guaranty of Payment and Performance dated as of even date herewith from Guarantor in favor of Grantee, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

(l) Hazardous Substances: Any hazardous, toxic or dangerous waste, substance or material including, but not limited to, any elements or compounds which are now or hereafter (i) identified in Section 101(14) of the CERCLA, 42 U.S.C. Section 9601(14), and as set forth in 40 C.F.R. Section 302, as the same may be amended from time to time, (ii) determined to be toxic, a pollutant or contaminant, under any Environmental Law, (iii) contained in the list of hazardous substances adopted by the United States Environmental Protection Agency, (iv) defined as "petroleum" and "petroleum products" as defined in Fla. Stat. Section 376.301, as same may be amended from time to time, and (v) asbestos, radon, polychlorinated biphenyls and such other elements, compounds, materials, substances or waste which are otherwise dangerous, hazardous, harmful or deleterious to human or animal health or safety, or the environment.

(m) Impositions: All (i) real estate and personal property taxes and other taxes and assessments, public or private; utility rates and charges including those for water and sewer; all other governmental and non-governmental charges and any interest or costs or penalties with respect to any of the foregoing; and charges for any public improvement, easement or agreement maintained for the benefit of or involving the Deed Property, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever that at any time prior to or after the execution of this Deed may be assessed,

levied or imposed upon the Deed Property or the Rent or income received therefrom, or any use or occupancy thereof, (ii) other taxes, assessments, fees and governmental and non-governmental charges levied, imposed or assessed upon or against Grantor or any of its properties and (iii) taxes levied or assessed upon this Deed, the Note, and the other Obligations, or any of them.

(n) Improvements: All buildings, structures, appurtenances and improvements, including all additions thereto and replacements and extensions thereof, now constructed or hereafter to be constructed under, on or above the Land, which term includes any part thereof. Together with the fixtures, attachments, appliances, equipment, machinery, furnishings and other articles affixed or attached to said buildings and improvements or used or intended to be used with or in connection with the use, operation or enjoyment of the Property, including, without limitation, all building materials, electrical, plumbing, heating and air conditioning systems (including window units), all built-in appliances, cabinets and lighting fixtures, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of, any of the foregoing (all of the foregoing is hereinafter collectively referred to as the "Improvements and Personal Property"); and all minerals, shrubs, trees or other emblements now or hereafter on said Property or under or above the same or any part or parcel thereof.

(o) Land: The real property described in **Exhibit "A"** attached hereto and made a part hereof, together with all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, projections, appurtenances, water rights including riparian and littoral rights, streets, ways, alleys, and strips and gores of land now or hereafter in anyway belonging, adjoining, crossing or pertaining to the Land. Grantor is the owner in fee simple of the Land more particularly described in **Exhibit "A"** attached hereto.

(p) Leases: Any and all leases, usufructuary interests, and rights of Grantor in the Property, and all rights of Grantor as lessor or landlord under any lease or sublease letting or demising all or any portion of the Property or the Improvements as the same may be amended or modified from time to time, together with the security therefor, now or hereafter in force, oral or written, covering or affecting the Deed Property or any part thereof.

(q) Loan: That certain loan in the amount EIGHT MILLION NINE HUNDRED SIXTY-SEVEN THOUSAND NINE HUNDRED FIFTEEN AND 00/100 DOLLARS ($8,967,915.00), as evidenced by the Note and secured by this Deed.

(r) Loan Agreement: That certain Loan Agreement dated as of even date herewith, by and among the Grantor and Grantee, as the same may be amended, restated, modified or replaced from time to time.

(s) Loan Documents: Any document or instrument executed, submitted, or to be submitted by Grantor or others in connection with the Loan, including but not limited to: (i) the Note, (ii) this Deed, (iii) the financing statements, (iv) the Guaranty, (v) the Loan Agreement, (vi) the Environmental Agreement, and (vii) any other document or instrument executed by Grantor in connection with the Loan.

(t) Deed Property: The Land, the Improvements, the Fixtures, the Leases, the Rents and the Personal Property together with:

(i) all judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Deed Property or any part thereof under the power of eminent domain, or by agreement in lieu thereof, or for any damage thereto caused by any

governmental action (whether by such taking or otherwise), such as without limitation, any award for change of grade of streets;

(ii) all judgments, awards and settlements hereafter made, and all insurance proceeds hereafter paid for any damage to the Deed Property, and all unearned insurance premiums on any insurance policies maintained by the Grantor pursuant to this Deed;

(iii) all awards and refunds hereafter made with respect to any Imposition; and

(iv) the estate, right, title, interest, privilege, claim or demand whatsoever of Grantor, now or hereafter, either at law or in equity, in and to the Deed Property.

The term Deed Property includes any part of the foregoing property described as Deed Property, and all proceeds, products, replacements, improvements, betterments, extensions, additions, substitutions, renewals, accessories, and appurtenances thereto and thereof.

(u) Grantee: CITY NATIONAL BANK OF FLORIDA, its successors and/or assigns.

(v) Grantor: NEIS ACQUISITIONS 5192, LLC, a Georgia Limited Liability Company and 2364 TICZ, LLC, a Georgia Limited Liability Company, and NEIS ACQUISITIONS GA, LLC, a Georgia Limited Liability Company.

(w) Note: that certain Promissory Note dated as of even date herewith from Grantor in favor of Grantee in the principal amount of EIGHT MILLION NINE HUNDRED SIXTY-SEVEN THOUSAND NINE HUNDRED FIFTEEN AND 00/100 DOLLARS ($8,967,915.00)by this reference made a part hereof to the same extent as though set out in full herein, and any other note given to Grantee evidencing a Future Advance as any of said notes may from time to time hereafter be modified, amended, extended or renewed.The maturity date of the Note is December 17, 2026.

(x) Obligations:

(i) Any and all of the indebtedness, liabilities, covenants, promises, agreements, terms, conditions, and other obligations of every nature whatsoever, whether joint or several, direct or indirect, absolute or contingent, liquidated or unliquidated, of Grantor and Guarantor, or any of them, to Grantee, evidenced by, secured by, under and as set forth in the Note, this Deed, the Guaranty or any of the other Loan Documents;

(ii) Any and all other indebtedness, liabilities and obligations of every nature whatsoever (whether or not otherwise secured or to be secured) of Grantor (whether as maker, endorser, surety, guarantor or otherwise) to Grantee or any of Grantee's affiliates, whether now existing or hereafter created or arising or now owned or howsoever hereafter acquired by Grantee or any of the Grantee's affiliates, whether such indebtedness, liabilities and obligations are or will be joint or several, direct or indirect, absolute or contingent, liquidated or unliquidated, matured or unmatured, including, but not limited to, any letter of credit issued by Grantee for the account of; together with all expenses, attorneys' fees, paralegals' fees and legal assistants' fees incurred by Grantee in the preparation, execution, perfection or enforcement of any document relating to any of the foregoing; and

(iii) Any and all Future Advances.

(y) Permitted Title Exceptions: Those matters, if any, described in Schedule B to the title insurance policy insuring Grantee's interest in this Deed.

(z) Person: Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated organization, government, or agency or political subdivision thereof, or any other form of entity.

(aa) Personal Property: All of the following property of Grantor whether now owned or existing, or hereafter acquired or arising, whether located in, on, pertaining to, used or intended to be used in connection with or resulting or created from the ownership, development, management, or operation of the Land:

(1) all Improvements (to the extent same are not deemed to be real property) and landscaping;

(2) all Fixtures (to the extent same are not deemed to be real property) and goods to become Fixtures;

(3) all accounts, accounts receivable, other receivables, contract rights, chattel paper, instruments and documents; any other obligations or indebtedness owed to Grantor from whatever source arising; all rights of Grantor to receive any performance or any payments in money or kind; all guaranties of the foregoing and security thereof; all of the right, title and interest of Grantor in and with respect to the goods, services, or other property that gave rise to or that secure any of the foregoing, and all rights of Grantor as an unpaid seller of goods and services, including, but not limited to, the rights to stoppage in transit, replevin, reclamation, and resale;

(4) all goods, including without limitation, all machinery, equipment, furniture, furnishings, building supplies and materials, appliances, business machines, tools, aircraft and motor vehicles of every kind and description, and all warranties and guaranties for any of the foregoing;

(5) all inventory, merchandise, raw materials, parts, supplies, work-in-process and finished products intended for sale, of every kind and description, in the custody or possession, actual or constructive, of Grantor including such inventory as is temporarily out of the custody or possession of Grantor, any returns upon any accounts and other proceeds resulting from the sale or disposition of any of the foregoing, including, without limitation, raw materials, work-in-process, and finished goods;

(6) all general intangibles, including, without limitation, corporate or other business records and books, computer records whether on tape disc or otherwise stored, blueprints, surveys, architectural or engineering drawings, plans and specifications, trademarks, tradenames, goodwill, telephone numbers, licenses, governmental approvals, franchises, permits, payment and performance bonds, tax refund claims, and agreements with utility companies, together with any deposits, prepaid fees and charges paid thereon;

(7) all Leases and Rents (to the extent same are not deemed to be real property);

(8) all judgments, awards of damages and settlements from any condemnation or eminent domain proceedings regarding the Land, the Improvements or any of the Deed Property;

(9) all insurance policies required by this Deed, the unearned premiums therefor and all loss proceeds thereof;

(10) all other personal property, including without limitation, management contracts, construction contracts, architectural contracts, service contracts, advertising contracts, contracts for purchase and sale of any of the Deed Property, purchase orders, equipment leases, monies in escrow accounts, reservation agreements, prepaid expenses, deposits and down payments with respect to the sale or rental of any of the Deed Property, options and agreements with respect to additional real property for use or development of the Deed Property, end-loan commitments, surveys, abstracts of title, all brochures, advertising materials, condominium documents and prospectuses; and

(11) all proceeds, products, replacements, additions, betterments, extensions, improvements, substitutions, renewals and accessions of any and all of the foregoing.

(aa) Rents: All of the rents, royalties, issues, revenues, income, profits, receipts, reserves, security deposits and other benefits, whether past due or now or hereafter arising from the Deed Property and the occupancy, use and enjoyment thereof, and any insurance proceeds and condemnation awards now or hereafter accruing or owing from any Leases or otherwise derived from the Deed Property, including, without limitation, all amounts payable by any party thereto on account of maintenance, repairs, taxes, insurance and common area or other charges and all amounts paid in cancellation of any Leases, whether accruing before or after the foreclosure of this Deed or during any appeal period after a final judgment of foreclosure, minimum rents, additional rents, percentage rents, parking, maintenance and deficiency rents.

1.2 Rules of Construction. The use of any gender shall include all other genders. The singular shall include the plural and the plural shall include the singular. The word "or" is not exclusive and the use of the word "and" may be conjunctive or disjunctive in the sole and absolute discretion of Grantee. The captions of Articles, Sections and Subsections of this Deed are for convenient reference only, and shall not affect the construction or interpretation of any of the terms and provisions set forth herein.

1.3 Security Agreement. This Deed constitutes a "Security Agreement" within the meaning of and shall create a security interest under the Uniform Commercial Code-Secured Transactions as adopted by the State of Florida, with respect to the Fixtures, Leases, Rents and Personal Property. The debtor's principal place of business and the secured party's address is set forth in the introduction to this Deed.

## ARTICLE II

## GRANT

2.1 Grant. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to secure the payment, observance, performance and discharge of the Obligations, Grantor does by these presents, give, transfer, grant, bargain, sell, alien, remise, release, assign, secure by Deed, hypothecate, deposit, pledge, set over, confirm, convey and warrant unto Grantee all estate, right, title and interest of Grantor in and to the Deed Property, whether now owned or held or hereafter acquired by Grantor, subject, however, to the Permitted Title Exceptions, to have and to hold the Deed Property unto Grantee, its successors and assigns forever.

2.2 Condition of Grant.

2.2.1 Subject to the provisions of this Deed, the condition of these presents is such that if Grantor shall pay, observe, perform and discharge the Obligations, or cause same to be paid, observed, performed and discharged in strict accordance with the terms thereof, then this Deed and the estates, interests, rights and assignments granted hereby shall be null and void, but otherwise shall remain in full force and effect.

2.2.2 This instrument is a deed passing legal title to the Premises pursuant to the laws of the State of Georgia governing loan or security deeds and security agreements and is not a mortgage, as "mortgage" is defined for the purpose of the real property law of the State of Georgia and is made and intended to secure (i) the payment of the indebtedness evidenced by the Note and any modifications, extensions, renewals or consolidations thereof and substitutions therefor, either in whole or in part; (ii) any and all additional advances made by Grantee to protect or preserve the Premises or the security interest created hereby on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Premises at the time of such advance); (iii) the performance of all obligations of Grantor under this Deed; (iv) the performance of all obligations of Grantor under any loan agreement (including, without limitation, any construction loan agreement), guaranty and other agreements, documents or instruments evidencing, securing or otherwise relating to the indebtedness evidenced or guaranteed by the Note); and (v) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due to become due, and all renewals, modifications, consolidations and extensions thereof and substitutions therefor, either in whole or in part. All of the foregoing secured hereby are collectively described herein as the "Secured Indebtedness."

2.3 Subrogation. The Grantee is hereby subrogated to the claims and liens of all parties whose claims or liens are fully or partially discharged or paid with the proceeds of the indebtedness secured by this Deed notwithstanding that such claims or liens may have been cancelled and satisfied of record.

## ARTICLE III

## ASSIGNMENT OF LEASES AND RENTS

3.1 Assignment. The Grantor does hereby absolutely and unconditionally assign and transfer to Grantee all of Grantor's estate, right, title and interest in and to the Leases and Rents, to have and to hold the Leases and Rents unto Grantee, its successors and assigns forever. From time to time, upon request of Grantee, Grantor shall give further evidence of this assignment to Grantee by executing and delivering to Grantee specific assignments of the Leases and Rents, in form and content approved by Grantee. All such specific assignments shall be of the same dignity and priority as this Deed. From time to time, upon request of Grantee, Grantor shall also execute and deliver to Grantee any notification to tenants or other document reasonably required by Grantee.

3.2 Payment of Rents to Grantor, as Licensee, Until Default. So long as no Event of Default has occurred, Grantee confers a license for the use and benefit of Grantee, as licensee, to collect, receive and accept the Rents as they become due and payable (but in no event for more than two (2) months in advance); provided, however, that if the Rents exceed the payments due under the Note, Grantor may use such excess, first, for the operation and benefit of the Deed Property and, second, for the general benefit of the Grantor. Upon the occurrence of an Event of Default, Grantee may, at its option, remove the Grantor as licensee for the collection of the Rents and appoint any other person including, but not limited to, itself as a substitute licensee to collect, receive, accept and use all such Rents in payment of the Obligations, in such order as Grantee shall elect in its sole and absolute discretion, whether or not Grantee takes possession of the Deed Property. Grantor hereby directs each of the respective tenants under the Leases, and any rental agent, to

pay to Grantee all such Rents, as may now be due or shall hereafter become due, upon demand for payment thereof by Grantee without any obligation on the part of any such tenant or rental agent to determine whether or not an Event of Default has in fact occurred. Upon an Event of Default, the permission hereby given to Grantor to collect, receive and accept such Rents as licensee shall terminate and such permission shall not be reinstated upon a cure of the Event of Default without Grantee's specific written consent. Exercise of Grantee's rights under this **Section**, and the application of any such Rents to the Obligations, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant hereto, but shall be cumulative and in addition to all other rights and remedies of Grantee.

3.3 Performance Under Leases. Grantor covenants that it shall, at its sole cost and expense, (a) duly and punctually perform and discharge, or cause to be performed and discharged, all of the obligations and undertakings of Grantor or its agents under the Leases, (b) use its best efforts to enforce or secure, or cause to be enforced or secured, the performance of each and every obligation and undertaking of the respective tenants under the Leases, (c) promptly notify Grantee if Grantor receives any notice from a tenant claiming that Grantor is in default under a Lease and (d) appear in and defend any action or proceeding arising under or in any manner connected with the Leases. In the event any tenant of the Deed Property should be the subject of any proceeding under any state of local law which provides for the possible termination or rejection of any of Lease assigned hereby, Grantor covenants and agrees that if any such Lease is so terminated and/or rejected, no settlement for damages shall be made without the prior written consent of Grantee, except in the ordinary course of business, and any amounts received as payment for such damages for termination and/or rejection of any such Lease shall be made payable to Grantor.

3.4 Leases in Good Standing. All Leases are in full force and effect, and to the best of Grantor's knowledge, there are no defaults thereunder or any defenses or offsets thereto on the part of any tenant or subtenant.

3.5 Provisions of Leases and Approval of Tenants and Subtenants. All Leases shall be inferior and subordinate to the lien of this Deed and the terms of each Lease shall so expressly provide. Grantor covenants that all Leases hereafter entered into by Grantor shall be in form and substance satisfactory to Grantee. Further, if an Event of Default exists, the Grantee specifically reserves the right to approve all proposed tenants and subtenants, and any assignee or sublessee of any existing tenant or subtenant.

3.6 Termination or Modification. If an Event of Default exists, Grantor covenants that it shall not, without the prior express written consent of Grantee, enter into a Lease, or modify, terminate, extend, amend, or consent to the cancellation or surrender of any Lease, or permit any subtenant under any Lease to assign or sublet its rights thereunder.

3.7 Delivery of Executed Leases and Annual Rent Roll. Grantor covenants that it shall furnish Grantee promptly after request, with executed copies of all Leases, and an annual rent roll, together with such other related information as may be reasonably required by Grantee.

3.8 No Obligation of Grantee. This Assignment shall not be deemed or construed to constitute Grantee as a Grantee in possession of the Deed Property nor shall it obligate Grantee to take any action or to incur expenses or perform or discharge any obligation, duty or liability of Grantor under any Lease.

3.9 Cumulative Remedies. Each and every right, remedy and power granted to Grantee by this **Article** shall be cumulative and in addition to every other right, remedy and power given by the Loan Documents and now or hereafter existing in equity, at law, or by virtue of statute or otherwise. The failure of Grantee to avail itself of any of its rights, remedies and powers shall not be construed or deemed to be a waiver thereof.

3.10 Notification of Grantee's Rights. Grantee shall have the right, but not the obligation, at any time and from time to time, to notify any tenant under any Lease of the rights of Grantee as provided in this **Article** and Grantor, upon demand from Grantee, shall confirm to such tenant the existence of such rights.

3.11 Other Assignments. Grantor shall not further assign or transfer the Leases or Rents except in favor of Grantee as provided in this **Article**, and shall not create or permit to be created or to remain, any Deed, pledge, lien, encumbrance, claim, or charge on the Leases or Rents. Any transaction prohibited under this **Section** shall be null and void.

3.12 Grantee's Right to Assign. Grantee shall have the right to assign to any subsequent holder of this Deed, or to any person acquiring title to the Deed Property, the Grantor's rights, title and interest in any Leases hereby or hereafter assigned, subject, however, to the provisions of this Deed. After the Grantor shall have been barred and foreclosed of all right, title and interest and equity of redemption in said Deed Property, no assignee of the Grantor's interest in said Leases shall be liable to account to the Grantor for any Rents or other payments.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES

4.1 Representations and Warranties. Grantor hereby represents and warrants to Grantee that:

(a) Organization, Corporate Power, Partnership Power, Etc. Grantor is a limited liability company and such entity (A) is duly organized, validly existing and in good standing under the laws of the State of Delaware, (B) has the power and authority to own its properties and to carry on its business as now being conducted, and all of its issued and outstanding membership interests are fully paid and nonassessable, there are no outstanding rights or options to acquire any additional membership interests, and its membership interests have not been pledged or encumbered in any manner whatsoever, (C) is qualified to do business in the State of Florida, (D) is in compliance with all Governmental Requirements, and (E) has not amended or modified its operating agreement except as previously disclosed in writing to Grantee prior to the execution hereof.

(b) Validity of Loan Documents. (i) the execution, delivery and performance by Grantor of the Loan Documents, and the borrowing evidenced by the Note (A) are within the powers and purposes of Grantor, (B) have been duly authorized by all requisite action of Grantor, (C) do not require the approval of any Governmental Authority, and (D) will not violate any Governmental Requirement, the articles of organization or the operating agreement of Grantor, or any indenture, agreement or other instrument to which Grantor is a party or by which it or any of its property is bound, or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated by the provisions of the Loan Documents; and (ii) the Loan Documents constitute the legal, valid and binding obligations of Grantor and other obligors named therein, if any, in accordance with their respective terms.

(c) Financial Statements. All balance sheets, statements of profit and loss, and other financial data that have been given to Grantee with respect to Grantor and other parties from which financial statements will be submitted to Grantee (the "Other Parties"), (i) are complete and correct in all

material respects, (ii) accurately present the financial condition of said parties as of the dates, and the results of its or their operations, for the periods for which the same have been furnished and (iii) have been prepared in accordance with generally accepted accounting principles consistently followed throughout the periods covered thereby; all balance sheets disclose all known liabilities, direct and contingent, as of their respective dates; and there has been no change in the condition of the Grantor's financial or otherwise, since the date of the most recent financial statements given to Grantee with respect to said parties, other than changes in the ordinary course of business, none of which changes has been materially adverse.

(d) Other Agreements. Grantor is not a party to any agreement or instrument materially and adversely affecting any of the Deed Property, Grantor, or Grantor's present or proposed businesses, properties or assets, operation or condition, financial or otherwise, and Grantor is not in default in the performance, observance or fulfillment of any of the material obligations, covenants or conditions set forth in any agreement or instrument to which it is a party.

(e) Other Information. All other information, including reports, financial statements, certificates, papers, data and otherwise, given and to be given to Grantee with respect (i) to Grantor (ii) to the Loan and (iii) to others obligated under the terms of the Loan Documents, are true, accurate and correct in all material respects and complete.

(f) Title. Grantor is indefeasibly seized of and has and will have fee simple title to the Land and Improvements free and clear of any and all Deeds, liens, encumbrances, claims, charges, equities, covenants, conditions, restrictions, easements, rights-of-way and all other matters affecting the Land and Improvements, whether or not of record, except for the Permitted Title Exceptions. Grantor has and will have good, absolute and marketable title to the Fixtures and Personal Property all free and clear of any and all liens, charges, encumbrances, security interests and adverse claims whatsoever, except those in favor of Grantee. Grantor will preserve its title to the Deed Property and will forever warrant and defend the same to Grantee and will forever warrant and defend the validity and priority of the lien of this Deed against the claims of all persons and parties whomsoever.

(g) No Violations. No Governmental Requirement (including, but not limited to, 21 U.S.C. Section 811 and 881, and 18 U.S.C. Section 1961), and no covenant, condition, restriction, easement or similar matter affecting the Land or Improvements or any of the Deed Property has, to the best of Grantor's knowledge, been violated, and Grantor has not received any notice of violation from any Governmental Authority or any other person with respect to any of the foregoing matters.

(h) Taxes. Grantor has filed all federal, state, county and municipal income tax returns required to have been filed by it, and has paid all taxes that have become due pursuant to such returns, pursuant to any assessments received by it or pursuant to law, and Grantor does not know of any basis for additional assessment with respect to such taxes or additional taxes. The Land is assessed separately from all other adjacent land for the purposes of real estate taxes and there is no intended public improvement, which may involve any charge being levied or assessed, or which may result in the creation of any lien upon the Deed Property.

(i) Litigation. There are no judgments outstanding against Grantor and there is no action, suit, proceeding, or investigation now pending (or to the best of Grantor's knowledge, after diligent inquiry threatened) against, involving or affecting Grantor or the Deed Property, or any part thereof, at law, in equity or before any Governmental Authority that if adversely determined as to the Deed Property or as to Grantor would result in a material adverse change in the business or financial condition of the Grantor or Grantor's operation and ownership of the Deed Property, nor is there any basis for such action, suit, proceeding or investigation.

(j) Utilities. There is available to the Land and Improvements through public or private easements or rights-of-way abutting or crossing the Land (which would inure to the benefit of Grantee in case of enforcement of this Deed) a water supply and a sanitary sewer service approved by all health and other authorities having jurisdiction, and electric, gas (if applicable) and telephone service, all of sufficient capacity to serve the needs of the Land and Improvements according to their intended purpose.

(k) Condition of Deed Property. Neither the Land, the Improvements nor any of the Deed Property or any part thereof, now existing, is damaged or injured as a result of any fire, explosion, accident, flood or other casualty. The Improvements, as of the date of this Deed, are free of any defects in material, structure and construction and to the best of Grantor's knowledge do not violate any Governmental Requirements. There is no known existing, proposed or contemplated plan to modify or realign any street or highway or any existing, proposed or contemplated eminent domain proceeding that would result in the taking of all or any part of the Land, the Improvements, or any part of the Deed Property, or that would adversely affect the use or the operation of the Land, the Improvements or any part of the Deed Property.

(l) Zoning. The Land is zoned so as to permit the Land and Improvements to be used for their intended purpose.

(m) No Default. No default or Event of Default exists under any of the Loan Documents; and no event has occurred and is continuing which, with notice or the lapse of time, or both, would constitute a default under any provision thereof.

(n) Environmental Contamination/Hazardous Substances. Grantor and the Deed Property are to the best of Grantor's knowledge in full compliance with all Environmental Laws, and there are no civil, criminal or administrative actions, suits, demands, claims, hearings, notices or demand letters, notices of violation, investigations, or proceedings pending or threatened against the Grantor or the Deed Property relating in any way to any Environmental Law or any agreement, plan, order, decree, judgment, injunction, notice or demand letter issued, entered, promulgated or approved under any Environmental Law. To the best of Grantor's knowledge there have never been nor are there currently any Hazardous Substances in violation of law located on, in, or under the Deed Property or used in connection therewith, and neither Grantor nor any other person has ever used the Deed Property for the manufacture, processing, distribution, use, transport, handling, treatment, storage, disposal, emission, discharge or release of any Hazardous Substance in violation of law. No notice or advice has been received by Grantor of any condition or state of facts that would be contributing to a claim of pollution or any other damage to the environment by reason of the conduct of any business on the Deed Property or the operation thereof, whether past or present.

(o) Rents. Grantor has not sold, assigned, transferred, Deed or pledged any of the Rents or other payments from any Leases or any part thereof, whether now due or hereafter to become due.

(p) Representations and Warranties in Other Loan Documents. All of the representations and warranties contained in the other Loan Documents are true and correct.

4.2 Reliance on Representations. The Grantor acknowledges that the Grantee has relied upon the Grantor's representations, has made no independent investigation of the truth thereof, is not charged with any knowledge contrary thereto that may be received by an examination of the public records in the County in which the Land is located, or that may have been received by any officer, director, agent, employee or shareholder of Grantee.

## ARTICLE V

## AFFIRMATIVE COVENANTS

5.1 Payment and Performance. Grantor shall promptly pay and punctually perform, or shall cause to be promptly paid and punctually performed, all of the Obligations as and when due and payable.

5.2 Existence. Grantor shall preserve and keep in full force and effect its existence, rights, franchises, trade names and qualification to transact business in the State of Florida.

5.3 Compliance With Laws. Grantor shall promptly and faithfully comply with, conform to and obey all Governmental Requirements and the rules and regulations now existing or hereafter adopted by every Board of Fire Underwriters having jurisdiction, or similar body exercising similar functions, that may be applicable to Grantor, the Land, the Improvements, or any of the Deed Property or to the use or manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of the Deed Property, whether or not such Governmental Requirement or rule or regulation shall necessitate structural changes or improvements or interfere with the use or enjoyment of the Deed Property.

5.4 Impositions.

(a) Grantor shall pay all Impositions on the Land, the Improvements and the other Deed Property and all taxes levied or assessed upon this Deed, the Note and the Obligations, or any of them. In the event of the passage, after the date of this Deed, of any law (i) making it illegal for the Grantor to pay the whole or any part of the Impositions, or charges or liens herein required to be paid by Grantor, or (ii) rendering the payment by Grantor of any and all taxes levied or assessed upon this Deed, the Note, or the Obligations or the interest in the Deed Property represented by this Deed unlawful, or (iii) rendering the covenants for the payment of the matters set forth in Subparts (i) and (ii) of this **Subsection** by Grantor legally inoperative, the Grantor shall pay, upon demand, the entire unpaid Obligations notwithstanding anything in the Note, this Deed, or the other Loan Documents to the contrary.

(b) Grantor shall pay all ad valorem taxes on the Deed Property on or before the date same become delinquent and shall deliver to Grantee tax receipts evidencing said payment within ten (10) days thereof. Grantor shall also deliver to Grantee receipts evidencing the payment of all other Impositions within thirty (30) days after same become due and payable or before same shall become delinquent, whichever is sooner.

5.5 Insurance.

(a) The Grantor shall obtain, maintain and keep in full force and effect during the term of the Loan, or cause Grantor's lessees to obtain, maintain and keep adequate insurance coverage, with all premiums paid thereon and without notice or demand, with respect to its properties and business against loss or damage of the kinds and in the amounts customarily insured against by companies of established reputation engaged in the same or similar businesses including, without limitation:

(i) Hazard/Windstorm/Hail Insurance reflecting coverage to be lesser of 80% replacement cost value (RCV) or loan amount, but not less than 80% of RCV and a deductible of five percent (5%) of policy face amount. With a deductible of the lesser of 5% of policy face amount or $50,000. Such policy shall include an additional insured endorsement naming the Lender as additional insured and loss payee;

(ii) Commercial general liability insurance insuring against all claims for personal or bodily injury, death, or property damage occurring upon, in or about the Land in an amount of not less than $1,000,000.00 single limit and $2,000,000.00 aggregate coverage for the Land. With a deductible of the lesser of 5% of policy face amount or $50,000. Such policy shall include an additional insured endorsement naming the Lender as additional insured and loss payee;

(iii) Insurance in such amounts and against such other casualties and contingencies as may from time to time be reasonably required by Lender, including, without limitation, flood hazard insurance to the extent, if any, required by law;

(iv) If the Land is located in an area designated by the Director of Federal Emergency Management Agency as a special flood hazard area, Borrower shall provide evidence for such parcel of flood insurance which shall be in the maximum amount of coverage available under the National Flood Insurance Program (NFIP) with a maximum deductible of $5,000.00. Such policy shall include an additional insured endorsement naming the Lender as additional insured and loss payee.

(b) All policies of insurance required hereunder shall: (i) be written by carriers which are licensed or authorized to transact business in the State of Florida, and are rated **[*"A"*]** or higher, Class XII or higher, according to the latest published Best's Key Rating Guide and which shall be otherwise acceptable to Grantee in all other respects, (ii) provide that the Grantee shall receive thirty (30) days' prior written notice from the insurer before a cancellation, modification, material change or non-renewal of the policy becomes effective, and (iii) be otherwise reasonably satisfactory to Grantee.

(c) Grantor shall not, without the prior written consent of Grantee, take out separate insurance concurrent in form or contributing with regard to any insurance coverage required by Grantee.

(d) At all times during the term of this Deed, Grantor shall have delivered to Grantee the original (or a certified copy) of all policies of insurance required hereby, together with receipts or other evidence that the premiums therefor have been paid.

(e) Not less than thirty (30) days prior to the expiration date of any insurance policy, Grantor shall deliver to Grantee the original (or certified copy), or the original certificate, as applicable, of each renewal policy, together with receipts or other evidence that the premiums therefor have been paid.

(f) The delivery of any insurance policy and any renewals thereof shall constitute an assignment thereof to Grantee, and Grantor hereby grants to Grantee a security interest in all such policies, in all proceeds thereof and in all unearned premiums therefor.

5.6 <u>Tax and Insurance Escrow</u>. Supplementing the provisions of **Sections 5.4** and **5.5** hereof, upon the occurrence of an Event of Default, at Grantee's option, Grantor shall pay to Grantee on the payment date of installments of interest as provided in the Note, together with and in addition to such installments of interest, an installment of the Impositions and insurance premiums for such insurance as is required hereunder, next due on the Deed Property in an amount sufficient, as estimated by Grantee, to accumulate the sum required to pay such Impositions and insurance, as applicable, thirty (30) days prior to the due date thereof. Amounts held hereunder shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Grantee, and no interest shall be payable with respect thereto. Upon

demand of Grantee, Grantor shall deliver to Grantee, within ten (10) days after such demand, such additional money as is necessary to make up any deficiencies in the amounts necessary to enable Grantee to pay such Impositions and insurance premiums when due. In case of an Event of Default, Grantee may apply any amount under this **Section** remaining to Grantor's credit to the reduction of the Obligations, at such times and in such manner as Grantee shall determine.

5.7 Repair. Grantor shall keep the Land, the Improvements and the other Deed Property in good order and condition and make all necessary or appropriate repairs and replacements thereof and betterments and improvements thereto, ordinary and extraordinary, foreseen and unforeseen, and use its best efforts to prevent any act that might impair the value or usefulness of the Deed Property.

5.8 Restoration Following Casualty.

(a) If all or any part of the Improvements or any of the Deed Property shall be damaged or destroyed by a casualty covered by insurance under **Section 5.5**, Grantor shall immediately give written notice thereof to Grantee and the appropriate insurer, and Grantee is authorized and empowered (but not obligated or required) to make proof of loss and to settle, adjust or compromise any claims for loss, damage or destruction under any policies of insurance required under this Deed. All proceeds of insurance, as provided in **Section 5.5**, shall be paid to Grantee and shall be applied first to the payment of all costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, incurred by Grantee in obtaining such proceeds; and second, at the option of Grantee, either to the payment of the Obligations whether or not due in such order as Grantee may elect, or to the restoration, repair or replacement of the Improvements and the other Deed Property damaged or destroyed. Such proceeds shall be disbursed to Grantor as work progresses pursuant to a construction and disbursing agreement in form and content satisfactory to Grantee, in its sole discretion, and Grantor shall promptly and diligently, regardless of whether there shall be sufficient insurance proceeds therefor, restore, repair and rebuild the Improvements and the other Deed Property to the equivalent of its condition immediately prior to the casualty. During the period of restoration and repair, Grantor shall continue to duly and promptly pay, perform, observe and comply with all of the Obligations. The election by Grantee to apply the insurance proceeds to the restoration, repair or replacement of the Deed Property shall not affect the lien of this Deed or affect or reduce the Obligations.

(b) If all or any of the Improvements or the other Deed Property shall be damaged or destroyed by a casualty not covered by insurance under **Section 5.5**, or, if so covered, the insurer fails or refuses to pay the claim within thirty (30) days following the filing thereof, Grantor shall immediately give written notice thereof to Grantee, and Grantor shall promptly and diligently, at Grantor's sole cost and expense, restore, repair and rebuild the Improvements and the other Deed Property to the equivalent of its condition immediately prior to the casualty. During the period of restoration and repair, Grantor shall continue to duly and promptly pay, perform, observe and comply with all of the Obligations.

(c) If any work required to be performed under **Subsections (a)** or **(b)** above, or both, shall involve an estimated expenditure of more than $50,000.00, no such work shall be undertaken until plans and specifications therefor, prepared by an architect satisfactory to Grantee, have been submitted to and approved by Grantee.

5.9 Condemnation.

(a) Grantor shall immediately notify Grantee upon obtaining any knowledge of the institution of any proceedings for the condemnation of the Deed Property or any part thereof.

(b) If all or any part of the Deed Property shall be damaged or taken through condemnation (which term when used in this Deed shall include any damage or taking by any Governmental Authority and any transfer by private sale in lieu thereof, either temporarily or permanently), Grantee at its option may declare all of the unpaid Obligations to be immediately due and payable, and upon ten (10) days written notice from Grantee to Grantor all such Obligations shall immediately become due and payable as fully and to the same effect as if such date were the date originally specified for the final payment or maturity thereof. Grantee shall be entitled to all compensation, awards and other payments resulting from such condemnation and is hereby authorized, at its option, to commence, appear in and prosecute, in its own or in Grantor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by Grantor to Grantee and shall, be applied first to the payment of all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Grantee in connection with any action or proceeding under this **Section**, and second, at the option of Grantee, either to the payment of the Obligations whether or not due in such order as Grantee may elect, or to the restoration, repair or alteration of the Deed Property. If Grantee elects to apply the condemnation awards to the restoration, repair or alteration of the Deed Property, such awards shall be disbursed to Grantor as work progresses pursuant to a construction and disbursing agreement in form and content satisfactory to Grantee, in its sole discretion, and Grantor shall promptly and diligently, regardless of whether there shall be sufficient condemnation awards therefor, restore, repair and alter the Deed Property in a manner satisfactory to Grantee. During the period of restoration, repair and alteration, the Grantor shall continue to duly and promptly pay, perform, observe and comply with all of the Obligations. The election by Grantee to apply the condemnation awards to the restoration, repair or alteration of the Deed Property shall not affect the lien of this Deed or affect or reduce the Obligations. If any restoration, repair or alteration of the Deed Property shall involve an estimated expenditure of more than $50,000.00, same shall not be commenced until plans and specifications therefor, prepared by an architect satisfactory to Grantee, have been submitted to and approved by Grantee.

5.10 Inspection. Grantor shall permit Grantee and its agents to inspect the Land, Improvements and the other Deed Property at any time during normal business hours and at all other reasonable times.

5.11 Contest of Tax Assessments, Etc. After prior written notice to Grantee, Grantor, at its own expense, may contest by appropriate legal proceedings, promptly initiated and conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of (a) any of the Governmental Requirements referred to in **Section 5.3**, or (b) any Imposition; provided that: (i) in the case of any unpaid Imposition, such proceedings shall suspend the collection thereof from Grantor, the lessor, the Land, the Improvements and the other Deed Property, (ii) the Land, the Improvements and the other Deed Property or any part thereof will not be in danger of being sold, forfeited, terminated, cancelled or lost, (iii) the use of the Land, the Improvements and the other Deed Property or any part thereof for its present or future intended purpose or purposes will not be interrupted, lost or terminated, (iv) Grantor shall have set aside adequate reserves with respect thereto, and (v) Grantor shall have furnished such security as may be required in the proceedings or as may be reasonably requested by Grantee.

5.12 Expenses.

(a) Grantor shall pay all reasonable costs and expenses in connection with the Loan and the preparation, execution, and delivery of the Loan Documents including, but not limited to, reasonable fees and disbursements of counsel appointed by Grantee, and all recording costs and expenses, documentary stamp tax and intangible tax on the entire amount of funds disbursed under the Loan, and other

taxes, surveys, appraisals, premiums for policies of title and other insurance and all other fees, costs and expenses, if any, or otherwise connected with the Loan transaction.

(b) Grantor shall pay or reimburse Grantee for all reasonable costs, charges, expenses, and reasonable attorneys' fees paid or incurred by Grantee pursuant to this Deed or the other Loan Documents including but not limited to those costs, charges, expenses and fees paid or incurred for the payment of the Impositions, insurance, completion of construction, repairs, appraisal fees, recording charges title insurance, search fees, premiums, documentary stamps and intangible taxes, environmental assessment fees, or any other fees or in any action, proceeding or dispute of any kind in which Grantee is a party because of any Obligation not being duly and promptly performed or being violated, including, but not limited to, the foreclosure or other enforcement of this Deed, any condemnation or eminent domain action involving the Land, the Improvements or any part of the Deed Property or any part thereof, any action to protect the security hereof, or any proceeding in probate, reorganization, bankruptcy, arbitration, or forfeiture in rem. All such amounts paid or incurred by Grantee, together with interest thereon at the Default Rate from the date incurred by Grantee, shall be secured by this Deed and shall be due and payable by Grantor immediately, whether or not there be notice or demand therefor.

(c) Any reference in this Deed to attorneys' or counsels' fees paid or incurred by Grantee shall be deemed to include paralegals' fees and legal assistants' fees. Moreover, wherever provision is made herein for payment of attorneys' or counsels' fees or expenses incurred by the Grantee, said provision shall include, but not be limited to, such fees or expenses incurred in any and all judicial, bankruptcy, reorganization, administrative, or other proceedings, including appellate proceedings, whether such fees or expenses arise before proceedings are commenced or after entry of a final judgment.

(d) Grantor shall pay Grantee all fees, costs, charges, and expenses required by the Note.

5.13 Preservation of Agreements. Grantor shall preserve and keep in full force and effect all agreements, approvals, permits and licenses necessary for the development, use and operation of the Deed Property for its intended purpose or purposes.

5.14 Books and Records. The Grantor shall keep and maintain, at all times, full, true and accurate books of accounts and records, adequate to correctly reflect the results of the operation of the Deed Property. The Grantee shall have the right to examine such books and records and to make such copies or extracts therefrom as the Grantee shall require.

5.15 Indemnification.

(a) Grantor shall at its own expense, and does hereby agree to, protect, indemnify, reimburse, defend and hold harmless Grantee and its directors, officers, agents, employees attorneys, successors and assigns from and against any and all liabilities (including strict liability), losses, suits, proceedings, settlements, judgments, orders, penalties, fines, liens, assessments, claims, demands, damages, injuries, obligations, costs, disbursements, expenses or fees, of any kind or nature (including attorneys' fees and expenses paid or incurred in connection therewith) arising out of or by reason of (i) an incorrect legal description of the Land; (ii) any action, or inaction of Grantee in connection with the Note, this Deed, the other Loan Documents or the Deed Property; (iii) the construction of any Improvements; (iv) the Improvements; (v) the use and operation of the Deed Property; (vi) any acts or omissions of Grantor or any other Person at, on or about the Deed Property regarding the contamination of air, soil, surface waters or groundwaters over, on or under the Land; (vii) the presence, whether past, present or future, of any Hazardous

Substances on, in or under the Land; or (viii) any past, present or future events, conditions, circumstances, activities, practices, incidents, actions or plans involving the manufacture, processing, distribution, use, transport, handling, treatment, storage, disposal, cleanup, emission, discharge, seepage, spillage, leakage, release or threatened release of any Hazardous Substance on, in, under or from the Land, in connection with Grantor's operations on the Land, the Improvements of the other Deed Property, or otherwise; all of the foregoing regardless of whether within the control of the Grantee.

(b) The indemnifications of this **Section** shall survive the full payment and performance of the Obligations and the satisfaction of this Deed.

5.16 Further Assurances. Grantor, at its sole expense, upon the request of Grantee, shall execute, acknowledge and deliver such further instruments and do such further acts as may, in the opinion of the Grantee, be necessary, desirable, or proper to carry out more effectively the purpose of this Deed and to subject to the lien hereof any property intended by the terms hereof to be covered hereby, including, without limitation, any proceeds, renewals, additions, substitutions, replacements, products, betterments, accessions and appurtenances thereto and thereof.

5.17 Financing Statements. Grantor shall execute and deliver to Grantee, in form and substance satisfactory to Grantee, such financing statements, continuation statements, and such further assurances as Grantee may from time to time consider reasonably necessary to create, perfect, preserve and maintain in full force and effect Grantee's lien upon the Fixtures, Leases, Rents and Personal Property; and, Grantee, at the expense of Grantor, may cause such statements and assurances to be recorded and rerecorded, filed and re-filed, in the name of Grantor, and Grantor hereby irrevocably appoints Grantee its true and lawful attorney-in-fact, which appointment is coupled with an interest, with full power of substitution, and empowers said attorney or attorneys in the name of Grantor, but at the option of said attorney-in-fact, to execute and file any and all financing statements.

5.18 Hazardous Substances.

(a) Grantor shall immediately notify Grantee orally and in writing if Grantor (i) becomes aware of the presence of any Hazardous Substance or other environmental problem or liability on, in, under, released from or associated with the Deed Property, or (ii) receives any complaint, order, citation, notice or other written or oral communication (collectively an "Environmental Complaint") regarding air emissions, water discharges or any other environmental, health or safety matter affecting the Land, the Improvements, or the other Deed Property or any part thereof, or the presence of any Hazardous Substance on, in, under, released from or associated with the Deed Property, or any past, present or future events, conditions, circumstances, activities, practices, incidents, actions or plans involving the manufacture, processing, distribution, use, transport, handling, treatment, storage, disposal, cleanup, emission, discharge, seepage, spillage, leakage, release or threatened release of any Hazardous Substance on, under or from the Deed Property. Grantor shall forthwith transmit to Grantee copies of any Environmental Complaint.

(b) Grantor shall, at its own cost and expense, take any action necessary or advisable for the cleanup of any Hazardous Substance on, in, under, released from or associated with the Deed Property, including any removal, containment or remedial actions in accordance with all applicable Environmental Laws, and shall pay or cause to be paid all cleanup, administrative, enforcement and other costs, expenses or fines which may be asserted against Grantor, Grantee, the Deed Property, or any other Person in connection therewith. Grantee shall have the right but not the obligation, and without any limitation of Grantee's other rights under this Deed, to enter onto the Land and the Improvements or to take any action as it deems necessary or advisable to cleanup, remove, resolve or minimize the impact of, or otherwise deal

with, any Hazardous Substance or any Environmental Complaint following receipt of any notice from any Person or Governmental Authority asserting the existence of any Hazardous Substance or an Environmental Complaint pertaining to the Deed Property or any part thereof which, if true, could result in an order, suit or other action against Grantor or Grantee which, in the sole opinion of Grantee, could jeopardize Grantee's security under this Deed. All costs and expenses incurred by Grantee in the exercise of any such rights shall be secured by this Deed and shall be payable by Grantor upon demand if the excise results from Grantor's failure to comply with Environmental Laws or this Deed and such failure persists after written notice of the failure and a reasonable opportunity to cure it.

(c) In the event that Grantee has reasonable cause to believe that the Deed Property is not in compliance with any applicable Environmental Law, Grantee shall have the right, in its sole discretion, to require Grantor to periodically perform an environmental audit of the Land, the Improvements and the other Deed Property (but not more frequently than annually unless an Environmental Complaint is then outstanding) and, if deemed necessary by Grantee, an environmental risk assessment of the Land, the Improvements and the other Deed Property including Hazardous Substances waste management practices and Hazardous Substances waste disposal sites thereon. All environmental audits and environmental risk assessments shall be at Grantor's expense, shall be performed and prepared by an environmental consultant satisfactory to Grantee, and shall otherwise be in form and substance satisfactory to Grantee. Should Grantor fail to provide such environmental audit or environmental risk assessment within thirty (30) days of the Grantee's written request, Grantee shall have the right, but not the obligation, to retain an environmental consultant to perform and prepare same. All costs and expenses incurred by Grantee in the exercise of such rights shall be secured by this Deed and shall be payable by Grantor upon demand or charged to Grantor's loan balance at the discretion of Grantee.

5.19 Appraisal. Grantee may obtain a new or updated appraisal (the "Appraisal") of the Deed Property at Grantor's expense. Appraisals shall not be required more than once annually unless an Event of Default exists or if required by a governmental or banking agency or authority. Each Appraisal shall be performed and prepared by an appraiser certified or licensed under the State of Florida and acceptable to Grantee, which Appraisal shall meet all appraisal standards prescribed by all Governmental Authorities regulating Grantee, and shall otherwise be in form and substance satisfactory to Grantee.

5.20 Performance of Loan Documents. Grantor shall duly and punctually perform all covenants, terms and agreements expressed as binding upon it under all of the Loan Documents.

5.21 Performance of Other Agreements. Grantor shall duly and punctually perform all covenants, terms and agreements expressed as binding upon it under any Permitted Title Exception, or any other agreement of any nature whatsoever binding upon it with respect to the Deed Property.

## ARTICLE VI

## NEGATIVE COVENANTS

6.1 Use Violations, Etc. Grantor shall not use the Deed Property or allow the same to be used or occupied for any unlawful purpose or in violation of any Governmental Requirement or restrictive covenant covering, affecting or applying to the ownership, use or occupancy thereof, commit or permit or suffer any act to be done or any condition to exist on the Deed Property or any article to be brought thereon that may be dangerous, or that may in any way increase any ordinary fire or other hazard, unless safeguarded as required by law, or that may, in law, constitute a nuisance, public or private.

6.2 Care of the Deed Property.

(a) Grantor shall not commit or permit any waste, impairment, or deterioration of the Deed Property, or perform any clearing, grading, filling or excavation of the Deed Property, or make or permit to be made to the Deed Property any alterations or additions that would have the effect of materially diminishing the value thereof (in Grantee's sole opinion) or take or permit any action that will in any way increase any ordinary fire or other hazard arising out of the construction or operation thereof.

(b) Grantor shall not, without the prior written consent of Grantee, remove, demolish or substantially alter, or permit the removal, demolishment or substantial alteration of, any structural Improvements on the Land that would materially decrease the value of the Improvements excluding demolition, removal, installation and alteration of interior improvements for space leased or to be leased to tenants, which may be accomplished without Grantee consent. In the event such consent is required and given and if any work to be performed shall involve an estimated expenditure of more than $50,000.00, no such work shall be undertaken until plans and specifications therefor, prepared by an architect satisfactory to Grantee, shall have been submitted to and approved by Grantee.

(c) Grantor shall not permit any of the Fixtures or Personal Property to be demolished or to be removed from the Land, without the prior written consent of Grantee. In the event such consent is given, the Grantee may require that said Fixture or Personal Property be replaced by an article of equal suitability and value, owned by Grantor free and clear of any vendor's lien, chattel Deed, or security interest of any kind, except such as may be approved in writing by Grantee, and that such replacement article be encumbered by the lien of this Deed.

6.3 Other Liens and Deeds. Grantor shall not, without the prior written consent of Grantee, create or permit to be created or to remain, any Deed, pledge, construction lien or other lien, conditional sale or other title retention agreement, encumbrance, claim, or charge on (whether prior or subordinate to the lien of this Deed or the other Loan Documents) the Deed Property or income therefrom, other than this Deed, the other Loan Documents and the Permitted Title Exceptions. Any transaction prohibited under this **Section** shall be null and void.

6.4 Transfer of Deed Property. Except for Leases entered into in the ordinary course of business, which shall not require Grantee's consent so long as no Event of Default exists, Grantor shall not sell, convey, or transfer or permit to be sold, conveyed or transferred any interest in the Deed Property or any part thereof. A contract to deed or agreement for deed, or an assignment, pledge, or encumbrance of a beneficial interest in any land trust, or a lease for all or substantially all of the Land or Improvements shall constitute a transfer prohibited by the provisions of this **Section** and shall be null and void.

6.5 Transfer of Other Assets. Grantor shall not, directly or indirectly, sell, convey, or transfer or permit to be sold, conveyed, or transferred any of its assets to any Person to which Grantor is related or connected. The term "assets" as used in this **Section** does not include the Deed Property, the sale, conveyance, or transfer of which is prohibited as provided in **Section 6.4** hereof.

6.6 Environmental Contamination/Hazardous Substances. Grantor and the Deed Property shall at all times remain in full compliance with all Environmental Laws. Grantor shall not, nor permit any other person to manufacture, process, distribute, use, transport, handle, treat, store, dispose, emit, discharge, leak, spill or release any Hazardous Substance on, in, under or from the Deed Property in violation of Environmental Laws.

## ARTICLE VII

## EVENTS OF DEFAULT

7.1 Events of Default. An "Event of Default", as used in this Deed, shall occur at any time or from time to time:

(a) Failure to Pay. If any Obligation or any installment thereof is not paid when due; or

(b) Failure to Perform. If any Obligation other than an Obligation requiring the payment of money or the occurrence of an event described in Subsections (c) through (n), MUST CONFORM TO ALWAYS INCLUDE ALL SUBECTIONS OF 7.1 after (c) inclusive, below is not duly and promptly performed or is violated, and the same continues for more than fifteen (15) days after written notice; or

(c) False Representation. If any representation or warranty made in any Loan Document by or on behalf of Grantor or any Guarantor or if any financial statement or operating statement or any schedule attached thereto furnished by Grantor or any Guarantor is at any time false, misleading, or breached; or

(d) Judgment. If a final judgment for the payment of money is rendered against Grantor and the same remains unsatisfied except for such period of time as execution on the judgment is effectively stayed; or

(e) Voluntary Bankruptcy, Etc. If Grantor or any Guarantor (i) is voluntarily adjudicated bankrupt or insolvent, (ii) seeks or consents to the appointment of a receiver or trustee for itself or for all or any part of its property, (iii) files a petition seeking relief, including reorganization, arrangement or similar relief, under the present Bankruptcy Code or other similar present or future applicable laws of the United States or any state or any other competent jurisdiction, (iv) makes a general assignment for the benefit of creditors or (v) admits in writing its inability to pay its debts as they mature; or

(f) Involuntary Bankruptcy, Etc. If a receiver or trustee is appointed for Grantor or any Guarantor or for all or any part of their respective properties without their respective consents and such appointment is not vacated within sixty (60) days, or if a petition is filed against Grantor seeking relief, including reorganization, arrangement or similar relief, under the present Bankruptcy Code or other similar present or future applicable laws of the United States or any state or other competent jurisdiction, and such petition is not dismissed within sixty (60) days after the filing thereof; or

(g) Default Under Loan Documents. If any Event of Default occurs under the Loan Agreement or any of the other Loan Documents, or if any obligation of Grantor under any of the other Loan Documents is not fully performed and the same continues beyond any applicable notice and cure period set forth therein; or

(h) Cross Default. If Grantor or any affiliate of Grantor or any Guarantor defaults under any loan, contract or agreement extended by Grantee or any of its affiliates; or

(i) Foreclosure of Other Liens. If the holder of any Deed or other lien on the Deed Property, whether a Permitted Title Exception or not (without hereby implying Grantee's consent to any

such Deed or other lien) institutes foreclosure or other proceedings for the enforcement of any of its remedies thereunder; or

(j) Notice Limiting Future Advances. If Grantor, pursuant to Florida Statutes Section 697.04(1)(b) as amended from time to time, files for record a notice limiting the maximum amount which may be secured by this Deed; or

(k) Death or Incapacity of Guarantor. The death of, appointment of a guardian for, or legal incapacity of any Guarantor.

(l) Liens. If any federal, state or local tax lien or any claim of lien for labor or materials or any other lien or encumbrance of any nature whatsoever is recorded against Grantor or the Deed Property and is not removed by payment or transferred to substitute security in the manner provided by law within fifteen (15) days after it is recorded in accordance with applicable law.

(m) Dissolution, Termination of Existence, Etc. The dissolution of, termination of existence of or loss of good standing status by Grantor, its subsidiaries or affiliates, if any, or any other party to the Loan Documents.

## ARTICLE VIII

## RIGHTS AND REMEDIES

8.1 Remedies. If an Event of Default shall have occurred, Grantee may, at its option, exercise any, some or all of the following remedies, concurrently or consecutively.

(a) Acceleration. Grantee may declare all of the unpaid Obligations, together with all accrued interest thereon, to be due and payable without notice or demand which are hereby expressly waived, and upon such declaration all such Obligations shall immediately become due and payable as fully and to the same effect as if the date of such declaration were the date originally specified for the full payment or maturity thereof.

(b) Grantee's Right to Enter and Take Possession, Operate and Apply Income.

(i) Grantee may demand that Grantor surrender the actual possession of the Deed Property and upon such demand, Grantor shall forthwith surrender same to Grantee and, to the extent permitted by law, Grantee itself, or by such officers or agents as it may appoint, may enter and take possession of all of the Deed Property and may exclude Grantor and its agents and employees wholly therefrom.

(ii) If Grantor shall for any reason fail to surrender or deliver the Deed Property or any part thereof after Grantee's demand, Grantee may obtain a judgment or order conferring on Grantee the right to immediate possession or requiring the Grantor to deliver immediate possession to Grantee, to the entry of which judgment or decree the Grantor hereby specifically consents.

(iii) Grantee may from time to time: (A) continue and complete construction of, hold, store, use, operate, manage and control the Deed Property and conduct the business thereof; (B) make all reasonably necessary maintenance, repairs, renewals, replacements, additions, betterments and

improvements thereto and thereon and purchase or otherwise acquire additional Fixtures and Personal Property; (C) insure or keep the Deed Property insured; (D) exercise all the rights and powers of the Grantor in its name or otherwise with respect to the same; and (E) enter into agreements with others (including, without limitation, new Leases or amendments, extensions, or cancellations to existing Leases) all as Grantee from time to time may determine in its sole discretion. Grantor hereby irrevocably appoints Grantee its true and lawful attorney-in-fact, which appointment is coupled with an interest, with full power of substitution, and empowers said attorney or attorneys in the name of Grantor, but at the option of said attorney-in-fact, to do any and all acts and execute any and all agreements that Grantee may deem necessary or proper to implement and perform any and all of the foregoing.

(iv) The Grantee may, with or without taking possession of the Deed Property as hereinabove provided, collect and receive all the Rents therefrom, including those past due as well as those accruing thereafter, and shall apply the monies so received first, to the payment of all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Grantee and its agents in connection with the collection of same, whether or not in possession of the Deed Property, and second, in such order as Grantee may elect, to the payment of the Obligations.

(c) Proceedings To Recover Sums Due.

(i) If any installment or part of any Obligation shall fail to be paid when due, Grantee shall be entitled to sue for and to recover judgment against the Grantor for the amount so due and unpaid together with all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Grantee in connection with such proceeding, together with interest thereon at the Default Rate from the date incurred by Grantee. All such costs and expenses shall be secured by this Deed and shall be due and payable by Grantor immediately.

(ii) If Grantor shall fail to pay upon the Grantee's demand, after acceleration as provided in **Subsection 8.1(a)**, all of the unpaid Obligations, together with all accrued interest thereon, Grantee shall be entitled to sue for and to recover judgment against the Grantor for the entire amount so due and unpaid together with all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Grantee in connection with such proceeding, together with interest thereon at the Default Rate from the date incurred by Grantee. All such costs and expenses shall be secured by this Deed and shall be payable by Grantor immediately. Grantee's right under this **Subsection** may be exercised by Grantee either before, after or during the pendency of any proceedings for the enforcement of this Deed, including appellate proceedings.

(iii) No recovery of any judgment as provided in **Subsections (i)** and **(ii)** above and no attachment or levy of any execution upon any of the Deed Property or any other property shall in any way affect the lien of this Deed upon the Deed Property or any part thereof, or any lien, rights, powers, or remedies of Grantee hereunder, but such lien, rights, powers and remedies shall continue unimpaired as before.

(d) Foreclosure.

(i) Grantee may institute proceedings for the partial or complete foreclosure of this Deed and Grantee may, pursuant to any final judgment of foreclosure, sell the Deed Property as an entirety or in separate lots, units, or parcels.

(ii) In case of a foreclosure sale of all or any part of the Deed Property, the proceeds of sale shall be applied in accordance with **Section 8.8** below hereof, and the Grantee shall be entitled to seek a deficiency judgment against the Grantor to enforce payment of any and all Obligations then remaining due and unpaid, together with interest thereon, and to recover a judgment against the Grantor therefor.

(iii) The Grantee is authorized to foreclose this Deed subject to the rights of any tenants of the Deed Property, or Grantee may elect which tenants Grantee desires to name as parties defendant in such foreclosure and failure to make any such tenants parties defendant to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted by the Grantor to be, a defense to any proceedings instituted by the Grantee to collect the unpaid Obligations or to collect any deficiency remaining unpaid after the foreclosure sale of the Deed Property.

(e) Receiver. Grantee may apply to any court of competent jurisdiction to have a receiver appointed to enter upon and take possession of the Deed Property, collect the Rents therefrom and apply the same as the court may direct, such receiver to have all of the rights and powers permitted under the laws of the State of Florida. The right of the appointment of such receiver shall be a matter of strict right without regard to the value or the occupancy of the Deed Property or the solvency or insolvency of Grantor. The expenses, including receiver's fees, attorneys' fees, costs and agent's commission incurred pursuant to the powers herein contained, together with interest thereon at the Default Rate, shall be secured hereby and shall be due and payable by Grantor immediately without notice or demand. Notwithstanding the appointment of any receiver or other custodian, Grantee shall be entitled as pledgee to the possession and control of any cash or deposits at the time held by, payable, or deliverable under the terms of this Deed to the Grantee, and the Grantee shall have the right to offset the unpaid Obligations against any such cash or deposits in such order as Grantee may elect.

(f) Remedies as to Personal Property. Grantee may exercise any or all of its rights and remedies under the Uniform Commercial Code-Secured Transactions as adopted by the State of Florida or other applicable law as well as all other rights and remedies possessed by Grantee, all of which shall be cumulative. Grantee is hereby authorized and empowered to enter the Deed Property or other place where the Personal Property may be located without legal process, and to take possession of the Personal Property without notice or demand, which hereby are waived to the maximum extent permitted by the laws of the State of Florida. Upon demand by Grantee, Grantor shall make the Personal Property available to Grantee at a place reasonably convenient to Grantee. Grantee may sell at one or more public or private sales and for such price as Grantee may deem commercially reasonable, any and all of the Personal Property secured by this Deed, and any other security or property held by Grantee and Grantee may be the purchaser of any or all of the Personal Property.

(g) Other. Grantee may institute and maintain any suits and proceedings as the Grantee may deem advisable (i) to prevent any impairment of the Deed Property by any acts which may be unlawful or in violation of this Deed, (ii) to preserve or protect its interest in the Deed Property, and (iii) to restrain the enforcement of or compliance with any Governmental Requirement that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such Governmental Requirement might impair the security hereunder or be prejudicial to the Grantee's interest.

8.2 Remedies Cumulative and Concurrent. No right, power or remedy of Grantee as provided in the Note, this Deed, or the other Loan Documents is intended to be exclusive of any other right, power, or remedy of Grantee, but each and every such right, power and remedy shall be cumulative and concurrent and in addition to any other right, power or remedy available to Grantee now or hereafter existing

at law or in equity and may be pursued separately, successively or together against Grantor, or any endorser, co-maker, surety or guarantor of the Obligations, or the Deed Property or any part thereof, or any one or more of them, at the sole discretion of Grantee. The failure of Grantee to exercise any such right, power or remedy shall in no event be construed as a waiver or release thereof.

8.3 Waiver, Delay or Omission. No waiver of any Event of Default hereunder shall extend to or affect any subsequent or any other Event of Default then existing, or impair any rights, powers or remedies consequent thereon, and no delay or omission of Grantee to exercise any right, power or remedy shall be construed to waive any such Event of Default or to constitute acquiescence therein.

8.4 Credit of Grantee. To the maximum extent permitted by the laws of the State of Florida, upon any sale made under or by virtue of this **Article**, Grantee may bid for and acquire the Deed Property, or any part thereof, and in lieu of paying cash therefor may apply to the purchase price, any portion of or all of the unpaid Obligations in such order as Grantee may elect.

8.5 Sale. Any sale or sales made under or by virtue of this **Article** shall operate to divest all the estate, right, title, interest, claim and demand whatsoever at law or in equity, of the Grantor and all Persons, except tenants pursuant to Leases approved by Grantee, claiming by, through or under Grantor in and to the properties and rights so sold, whether sold to Grantee or to others.

8.6 Proofs of Claim. In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition, seizure of the Deed Property by any Governmental Authority, or other judicial proceedings affecting Grantor, any endorser, co-maker, surety, or guarantor of the Obligations, or any of their respective properties, the Grantee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have its claim allowed in such proceedings for the entire unpaid Obligations at the date of the institution of such proceedings, and for any additional amounts which may become due and payable after such date.

8.7 Waiver of Redemption, Notice, Marshalling, Etc. Grantor hereby waives and releases, for itself and anyone claiming through, by, or under it, to the maximum extent permitted by the laws of the State of Florida:

(a) all benefit that might accrue to Grantor by virtue of any present or future law exempting the Deed Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale on execution, or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment,

(b) unless specifically required herein, all notices of default, or Grantee's actual exercise of any option or remedy under the Loan Documents, or otherwise, and

(c) any right to have the Deed Property marshalled.

8.8 Application of Proceeds. The proceeds of any sale of all or any portion of the Deed Property shall be applied by Grantee first, to the payment of receiver's fees and expenses, if any, and to the payment of all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Grantee, together with interest thereon at the Default Rate from the date so incurred, in connection with any entry, action or proceeding under this **Article** and, second, in such order as Grantee may elect, to the payment of the Obligations. Grantor shall be and remain liable to Grantee for any difference

between the net proceeds of sale and the amount of the Obligations until all of the Obligations have been paid in full.

8.9 Discontinuance of Proceedings. If Grantee shall have proceeded to enforce any right under any Loan Document and such proceedings shall have been discontinued or abandoned for any reason, then except as may be provided in any written agreement between Grantor and Grantee providing for the discontinuance or abandonment of such proceedings, Grantor and Grantee shall be restored to their former positions and the rights, remedies and powers of Grantee shall continue as if no such proceedings had been instituted.

8.10 Grantee's Actions. Grantee may, at any time without notice to any Person and without consideration, do or refrain from doing any or all of the following actions, and neither the Grantor, any endorser, co-maker, surety or guarantor of the Obligations, nor any other Person (hereinafter in this **Section** collectively referred to as the "Obligor") now or hereafter liable for the payment and performance of the Obligations shall be relieved from the payment and performance thereof, unless specifically released in writing by Grantee: (a) renew, extend or modify the terms of the Note, this Deed, and the other Loan Documents, or any of them; (b) forbear or extend the time for the payment or performance of any or all of the Obligations; (c) apply payments by any Obligor to the reduction of the unpaid Obligations in such manner, in such amounts, and at such times and in such order and priority as Grantee may see fit; (d) release any Obligor; (e) substitute or release in whole or in part the Deed Property or any other collateral or any portion thereof now or hereafter held as security for the Obligations without affecting, disturbing or impairing in any manner whatsoever the validity and priority of the lien of this Deed upon the Deed Property which is not released or substituted, or the validity and priority of any security interest of the Grantee in such other collateral which is not released or substituted; (f) subordinate the lien of this Deed or the lien of any other security interest in any other collateral now or hereafter held as security for the Obligations; (g) join in the execution of a plat or replat of the Land; (h) join in and consent to the filing of a declaration of condominium or declaration of restrictive covenants regarding all or any part of the Land; (i) consent to the granting of any easement on the Land; and (j) generally deal with any Obligor or any other party as Grantee may see fit.

## ARTICLE IX

## MISCELLANEOUS

9.1 Maximum Rate of Interest. Nothing contained herein, in the Note, in the Loan Agreement, or in any other Loan Document or in any instrument or transaction related thereto, shall be construed or so operate as to require the Grantor or any person liable for the payment of the Loan made pursuant to the Note, or liable for the payment of any Obligations, to pay interest, or any charge in the nature of interest, in an amount or at a rate which exceeds the maximum rate of interest allowed by applicable law, as amended from time to time. Should any interest or other charges in the nature of interest received by Grantee or paid by the Grantor or any parties liable for the payment of the Loan made pursuant to the Note, or liable for the payment of any Obligations, exceed the maximum rate of interest allowed by applicable law, as amended from time to time, then such excess sum shall be credited against the principal balance of the Note or the balance of the other Obligations, as applicable, unless the Grantor or such other parties liable for such payments, as applicable, shall notify the Grantee, in writing, that the Grantor or such other party elects to have such excess sum returned to it forthwith, it being the intent of the parties hereto that under no circumstances shall the Grantor or any parties liable for any of the aforesaid payments be required to pay interest in excess of the maximum rate of interest allowed by applicable law, as amended from time to time. The Grantee may, in determining the maximum rate of interest allowed under applicable law, as amended from time to time,

take advantage of any state or federal law, rule or regulation in effect from time to time which may govern the maximum rate of interest which may be reserved, charged or taken.

9.2 Continuing Agreement. This Deed and all of the Grantor's representations, warranties and covenants herein, Grantee's security interest in the Deed Property and all of the rights, powers and remedies of Grantee hereunder shall continue in full force and effect until all of the Obligations have been paid and performed in full; until Grantee has no further obligation to make any advances under the Loan; and until Grantee, upon the request of the Grantor, has executed a satisfaction of Deed. Furthermore, if for any reason no Obligations are owing, notwithstanding such occurrence, this Deed shall remain valid and in full force and effect as to subsequent Obligations, so long as Grantee has not executed a satisfaction of Deed; provided, however, that the indemnifications set forth in **Article V** of this Deed shall survive the satisfaction of this Deed.

9.3 Survival of Warranties and Covenants. The warranties, representations, covenants and agreements set forth in this Deed shall survive the making of the Loan and the execution and delivery of the Note, and shall continue in full force and effect until all of the Obligations shall have been paid and performed in full.

9.4 No Representation By Grantee. By accepting or approving anything required to be observed, performed or fulfilled, or to be given to Grantee, pursuant to this Deed, the Loan Agreement, or the other Loan Documents, including, but not limited to, any officer's certificate, balance sheet, statement, survey or appraisal, Grantee shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation with respect thereto by Grantee.

9.5 Notice. All notices, demands, requests and other communications required under this Deed may be given orally (either in person or by telephone if confirmed in writing within three (3) days thereafter), in writing delivered by hand or mail and shall be conclusively deemed to have been received if delivered or attempted to be delivered by United States first class mail, return receipt requested, postage prepaid, addressed to the party for whom it is intended at its address set forth in the introduction to this Deed. Any party may designate a change of address by written notice to the other party, received by such other party at least ten (10) days before such change of address is to become effective.

9.6 Grantee's Right to Pay and Perform. If Grantor shall fail to duly pay or perform any of the Obligations required by this Deed beyond the expiration of any applicable notice or cure period set forth herein, then at any time thereafter without notice to or demand upon Grantor, and without waiving or releasing any right, remedy, or power of Grantee, and without releasing any of the Obligations or any Event of Default, Grantee may pay or perform such Obligation for the account of and at the expense of Grantor, and shall have the right to enter and to authorize others to enter upon the Deed Property for such purpose and to take all such action thereon and with respect to the Deed Property as may be necessary or appropriate for such purpose. All payments made and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Grantee, together with interest thereon at the Default Rate from the date incurred by Grantee shall be secured by this Deed and shall be due and payable by Grantor immediately, whether or not there be notice, demand, an attempt to collect same, or suit pending.

9.7 Covenants Running With the Land. All covenants contained in this Deed shall be binding on the Grantor and shall run with the Land.

9.8 Successors and Assigns. All of the terms of this Deed shall apply to and be binding upon, and inure to the benefit of, the heirs, devisees, personal representatives, successors and assigns of Grantor and Grantee, respectively, and all persons claiming under or through them.

9.9 Invalidity.

(a) If any one or more of the provisions contained in this Deed is declared or found by a court of competent jurisdiction to be invalid, illegal, or unenforceable, such provision or portion thereof shall be deemed stricken and severed and the remaining provisions hereof shall continue in full force and effect.

(b) If any one or more of the Obligations is declared or found by a court of competent jurisdiction to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining Obligations shall continue in full force and effect.

9.10 Modification. No agreement unless in writing and signed by an authorized officer of Grantee and no course of dealing between the parties hereto shall be effective to change, waive, terminate, modify, discharge, or release in whole or in part any provision of this Deed. No waiver of any rights or powers of Grantee or consent by it shall be valid unless in writing signed by an authorized officer of Grantee and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

9.11 Applicable Law. This Deed shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Georgia (excluding the principles thereof governing conflicts of law), and federal law, in the event federal law permits a higher rate of interest than Georgia law.

9.12 Strict Performance. It is specifically agreed that time is of the essence as to all matters provided for in this Deed and that no waiver of any Obligation hereunder or secured hereby shall at any time thereafter be held to be a waiver of the Obligations.

9.13 Counterparts. Grantor may execute this Deed in several counterparts, and all counterparts so executed shall constitute one Deed, binding on Grantor.

9.14 USA Patriot Act Notice. Grantee hereby notifies Grantor that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "Act"), Grantee is required to obtain, verify and record information that identifies Grantor, which information includes the name and address of Grantor and other information that will allow Grantee to identify Grantor in accordance with the Act.

**9.15 WAIVER OF GRANTORS RIGHTS. BY EXECUTING THIS INSTRUMENT AND BY INITIALING THIS PARAGRAPH 9.15, GRANTOR EXPRESSLY ACKNOWLEDGES THAT UPON GRANTOR'S DEFAULT HEREUNDER, GRANTEE IS GIVEN THE RIGHT TO ACCELERATE THE DEBT SECURED HEREBY AND TO SELL THE PROPERTY CONVEYED HEREBY AT PUBLIC AUCTION PURSUANT TO THE POWER OF SALE CONTAINED HEREIN, AND GRANTOR HEREBY EXPRESSLY WAIVES ANY RIGHTS TO NOTICE AND HEARING BEFORE SUCH SALE UNDER POWER BY GRANTEE, OTHER THAN THE REQUIRED ADVERTISEMENT ONCE A WEEK FOR FOUR WEEKS PLUS GRANTOR'S INHERENT LEGAL RIGHT TO SEEK A COURT INJUNCTION. GRANTOR MAKES THIS WAIVER KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY, AFTER HAVING BEEN GIVEN FULL EXPLANATION**

**OF GRANTEE'S RIGHTS HEREUNDER PLUS THE OPPORTUNITY TO CONSULT AN ATTORNEY OF GRANTOR'S OWN CHOOSING BEFORE EXECUTING THIS INSTRUMENT AND INITIALING THIS PARAGRAPH.**

**Approved by Grantor** ________ **(Initials)**

9.16 Due on Sale Clause. If all or any part of Property or an interest therein Is sold or transferred by Grantor without Grantee's prior written consent, excluding: (a) the creation of a lien or encumbrance subordinate to this Deed; (b) the creation of a purchase money security interest for household appliances; (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant; or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Grantee may, at Grantee's option, declare all the sums secured by this Deed to be immediately due and payable. Grantee shall have waived such option to accelerate if, prior to the sale or transfer, Grantee and the person to whom Property is to be sold or transferred reach an agreement in writing that the credit of such person is satisfactory to Grantee herein and the interest payable on the sums secured by this Deed shall be at such rate as Grantee herein shall request. Acceptance by Grantee of one or more installment payments on the indebtedness secured thereby subsequent to any sale or change in ownership or possession of said real estate, or any part thereof, as to which the Grantee has not granted its written consent, shall not constitute a waiver of the Grantee's said option, which may be exercised by the Grantee at any time.

[EXECUTION APPEARS ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Grantor has executed this instrument as of the day and year first above written.

Signed, sealed and delivered in the presence of:

Name: Unofficial Witness

Name: Notary Public

NATALY STUART
Notary Public - State of Florida
Commission # HH 135674
My Comm. Expires 05-27-2025
Bonded Through
NNAF

**GRANTOR:**

Neis Acquisitions 5192, LLC, a GA LLC

By: ______________________
Name: Zachary Zurich
Title: Member

Signed, sealed and delivered in the presence of:

Name: Unofficial Witness

Name: Notary Public

NATALY STUART
Notary Public - State of Florida
Commission # HH 135674
My Comm. Expires 05-27-2025
Bonded Through
NNAF

**GRANTOR:**

Neis Acquisitions GA, LLC

By: ______________________
Name: David Neiswenter
Title: Member

Signed, sealed and delivered in the presence of:

Name: Unofficial Witness

Name: Notary Public

**GRANTOR:**

2364 TICZ, LLC, a GA LLC

By: ______________________
Name: Zachary Zurich
Title: Member

NATALY STUART
Notary Public - State of Florida
Commission # HH 135674
My Comm. Expires 05-27-2025
Bonded Through
NNAF

## EXHIBIT "A"
Legal Description

All that tract or parcel of land being and being in Land Lot 111 of the 4th Land District, Bibb County, Georgia being more particularly described as follows:

To find the True Point of Beginning, commence at an iron pin set at the intersection of the Westerly right-of-way line of Log Cabin Drive (60 foot right-of-way) and the Northerly right-of-way line of Presidential Parkway (right-of-way varies); thence running in a Southerly direction along the Westerly right-of-way line of Log Cabin Drive South 00° 22' 46" West a distance of 118.45 feet to a point located at the intersection of the Westerly right-of-way line of Log Cabin Drive and the Southerly right-of-way line of Presidential Parkway; thence running along the Southerly right-of-way line of Presidential Parkway North 89°32' 20" West a distance of 204.11 feet to a point and the True Point of Beginning; from said True Point of Beginning thus established, thence running along the Southern right-of-way line of Presidential Parkway North 89° 32' 20" West a distance of 234.00 feet to a point; thence leaving said Southerly right-of-way line and running South 00° 27' 40" West a distance of 168.44 feet to a point; thence running North 89° 32' 20" West a distance of 124.50 feet to a point; thence running North 00° 27' 40" East a distance of 168.44 feet to a point located on the Southerly right-of-way line of Presidential Parkway; thence running along said Southerly right-of-way line the following courses and distances: North 89° 32' 20" West a distance of 379.18 feet to a point; along the arc of a curve to the left (said arc having a radius of 205.00 feet and being subtended by a 289.91 foot chord bearing South 45° 27' 40" West) an arc distance of 322.01 feet to a point; South 00° 27' 40" West a distance of 55.07 feet to a point; thence leaving said right-of-way line of Presidential Parkway and running South 89° 32' 20" East a distance of 417.80 feet to a point; thence running South 00° 21' 29" West a distance of 174.40 feet to a point; thence running South 89°32' 20" East a distance of 5.28 feet to a point; thence running South 00° 27' 40" West a distance of 90.00 feet to a point, thence running South 89°32' 20" East a distance of 21.25 feet to a point; thence running South 00° 27' 40" West a distance of 20.35 feet to a point, thence running South 15° 04' 55" East a distance of 208.39 feet to a 1/2" rebar found on the Northwestern comer of land now or formerly owned by Chijobibco the Northerly line or said land now formerly owned by Chijobibco; thence running along the Northerly line of said land now or formerly owned by Chijobibco South 89° 37' 22" a distance 684.29 feet to a 1/2" rebar found on the Westerly right-of-way line of Log Cabin Drive; thence running along the Westerly right-of-way line of Log Cabin Drive along the arc of a curve to the right (said arc having a radius of 1175.92 feet and being subtended by a 85.10 foot chord bearing North 11° 56' 28" West) an arc distance of 85.12 feet to a point; thence leaving said Westerly right-of-way line of Log Cabin Drive and running North 89° 32' 20" West a distance of 182.31 feet to a point; thence running North 00° 27' 40" East a distance of 175.33 feet to a point; thence running along the arc of a curve to the right (said arc having a radius of 45.00 feet and being subtended by a 63.64 foot chord bearing North 45° 27' 40" East) an are distance of 70.69 feet to a point; thence running South 89°32' 20" East a distance of 118.24 feet to a point on the Westerly right-of-way line of Log Cabin Drive; thence running along said right-of-way line of Log Cabin Drive North 00° 22' 46" East a distance of 176.13 feet to a point; thence leaving said Westerly right-of-way line of Log Cabin Drive and running North 89°32' 20" West a distance of 204.49 feet to a point; thence running North 00° 27' 40" East a distance of 265.00 feet to a point and the True Point of Beginning.

Said tract of land totaling 12.00 acres, more or less, and more particularly shown as Eastern Developer Tract Phase 2 (7.42 acres, more or less, excluding right-of-way area) and Kroger Tax Parcel Phase II (4.58 acres, more or less) on that certain Survey entitled "As-built Survey for Faison-Sofran Partnership No. II, and Inland Southeast Eisenhower, L.L.C." prepared by Donaidson, Garrett & Associates, Inc., bearing the seal of Ralph A True, G.R.L.S. No. 2202, dated January 30, 2002, last revised March 21, 2002.

As a matter of information only:

Bibb County, GA tax parcel L0840167 and L0840168

This is a PROFORMA Policy. It does not reflect the present state of the Title and is not a commitment to (i) insure the Title or (ii) issue any of the attached endorsements. Any such commitment must be an express written undertaking on appropriate forms of the Company.

**Copyright American Land Title Association. All rights reserved.**

AMERICAN LAND TITLE ASSOCIATION

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.