# EXHIBIT 1

**(ZACHARY ZURICH'S SUPPLEMENTAL BRIEF ON SUBJECT-MATTER JURISDICTION)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| ZACHARY ZURICH,<br><br>Plaintiff and<br>Counterclaim-Defendant,<br><br>v.<br><br>DAVID NEISWENTER, individually and as member of all named nominal defendants,<br><br>Defendant and<br>Counterclaim-Plaintiff,<br><br>NEIS ACQUISITIONS 5192, LLC, et al.,<br><br>Nominal Defendants. | CIVIL ACTION FILE NO.<br>5:26-cv-00388-MTT |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT ZACHARY ZURICH'S SUPPLEMENTAL BRIEF ON SUBJECT-MATTER JURISDICTION**

Plaintiff and Counterclaim-Defendant, Zachary Zurich, submits this supplemental brief on the questions of subject-matter jurisdiction raised in the Court's October 21, 2026 Order (Doc. 7) and at the November 6, 2026 hearing (Doc. 21 at 1–2). It supplements the jurisdiction section of Zurich's response to Defendant David Neiswenter's emergency motion. (Doc. 15.)

## INTRODUCTION

This dispute is between two men. Zurich, a Virginia citizen, and Neiswenter, a Florida citizen, each own half of NEIS Acquisitions AUXGA, LLC ("AUXGA") and half of NEIS Acquisitions 5192, LLC, an Illinois limited liability company ("5192 Illinois"), which the complaint identifies as the member of record of NEIS Acquisitions 5192, LLC, a Georgia limited liability company ("5192 Georgia"). (Doc. 2 ¶¶ 6–7, 16; Doc. 5, Countercl. ¶¶ 1–3.) The companies

are named only because Count II asks the Court to dissolve them as an alternatively pled relief request. Zurich seeks nothing from either of them. (Doc. 2 ¶ 14.) Count I is Zurich's claim for damages against Neiswenter personally, and Georgia law permits him to bring it directly. The two men are the only owners of each company, are both before the Court, and the recovery Zurich seeks would come from Neiswenter rather than from the companies. On Count I alone, the Court has diversity jurisdiction. Neiswenter agrees that the companies are nominal parties, including for purposes of dissolution. (Doc. 10-1 at 25–29.) If the Court concludes otherwise as to Count II, the remedy is to drop the companies and that claim, not to dismiss the action.

## ARGUMENT

### A. Count I Is Zurich's Direct Claim Against Neiswenter.

Under Georgia law, generally a suit "seeking to recover damages for breach of fiduciary duties owed to [a] corporation must be brought as a derivative suit on behalf of the corporation." *Stoker v. Bellemeade, LLC*, 272 Ga. App. 817, 822 (2005) (whole court), *rev'd in part on other grounds*, 280 Ga. 635 (2006). The companies would be parties to it in substance if Count I were such a claim, but it is not.

*Practice Benefits, LLC v. Entera Holdings, LLC*, 340 Ga. App. 378 (2017), frames the question with slightly more nuance for a limited liability company. The managing members of a Georgia LLC "owe fiduciary duties to the company and its member investors." *Id.* at 380 (citing O.C.G.A. § 14-11-305(1)). Neiswenter agrees that he and Zurich "each owed fiduciary duties to the Companies and to one another." (Countercl. ¶ 46.) A member may sue directly when he alleges a "special injury," meaning that he was "injured in a way which is different from the other shareholders or independently of the corporation." *Id.* (quoting *Grace Bros., Ltd. v. Farley Indus., Inc.*, 264 Ga. 817, 819 (1994)). "The determination whether the claims were derivative or direct is

made by looking to what the pleader alleged," and it is "the nature of the wrong alleged" that controls. *Id.* (quotation omitted). In *Practice Benefits*, the trial court dismissed a member's fiduciary claims for lack of subject-matter jurisdiction on the ground that they were derivative. *Id.* at 379. The Court of Appeals reversed, because the allegations, construed in the member's favor, did "not disclose with certainty" that the member could not recover under the special-injury exception. *Id.* at 381. Count I is direct under that standard for two independent reasons.

**1. Zurich alleges an injury aimed at him.**

A direct claim lies where those in control engage in "self-serving manipulation of corporate affairs" that "causes a singular economic injury to minority interests alone." *Grace Bros.*, 264 Ga. at 820 (quotation omitted). The rule stated in *Grace Bros.*, concerning injury to minority interests, exists to protect the owner who is not in control. When two equal members are deadlocked and one of them uses his veto to block every transaction in order to strong-arm the other, the injured member is functionally in the minority position, and the complaint alleges exactly that. Neiswenter withheld consent to the leases and the sale "in order to . . . suppress the market value of the shopping center and of the membership interests in the companies, and thereby to compel Zurich to sell his membership interests to Neiswenter at a price below fair value." (Doc. 2 ¶ 71; *see id.* ¶ 72.) Neiswenter's "object was Zurich's membership interests, and the value suppressed was the value at which Neiswenter proposed to acquire them." (*Id.* ¶ 86.) He has refused to list the property or to let Zurich market it. (*Id.* ¶¶ 64–66.) Zurich's injuries are the coercive acquisition effort directed at him personally and the entrapment of his capital in companies he cannot exit, which is the leverage for that effort. (*Id.* ¶¶ 79, 86.) Neiswenter alone laid and sprang that trap. The injury falls on Zurich, and Neiswenter stands to profit from it.

**2. None of the reasons for requiring a derivative suit applies.**

Even apart from special injury, a member of a closely held company may sue directly when the reasons for the derivative rule do not apply. *Thomas v. Dickson*, 250 Ga. 772, 774 (1983); *see Stoker*, 272 Ga. App. at 823–24 (reading *Grace Bros.* to require special injury only "outside the context of a close corporation" and extending *Thomas* to closely held LLCs). Those reasons are to prevent multiple suits, to protect creditors, to protect the other owners, and to compensate the injured owner through an increase in the value of his interest. *Thomas*, 250 Ga. at 774. In *Stoker*, the whole Court of Appeals applied *Thomas* to "the two-member LLCs at issue" and allowed one member to sue the other directly. 272 Ga. App. at 822–23. "Since both members of the LLC in each claim are parties to the suit," there was "no danger of multiple suits and no concern that a recovery would prejudice the rights of the other member." *Id.* And a plaintiff member "would gain no benefit from a derivative recovery on behalf of the LLC given the lack of a ready market for closely held LLC interests." *Id.* at 823. Money paid to the company raises the value of his interest only on paper. The court later called *Stoker* "apposite and controlling" in a suit between two fifty-percent shareholders. *Telcom Cost Consulting, Inc. v. Warren*, 275 Ga. App. 830, 834–35 (2005); *see also Practice Benefits*, 340 Ga. App. at 381 & n.12.

The same is true here. Zurich and Neiswenter are the only members of AUXGA and the only owners, directly or through 5192 Illinois, of 5192 Georgia, and both are parties. (Doc. 2 ¶ 85(a)–(b).) No absent owner needs protection. A recovery paid to the companies would return half of a judgment against Neiswenter to Neiswenter, and the operating agreements bar any sale of Zurich's interest without a consent he cannot obtain. (*Id.* ¶¶ 85(d), 86.)

Zurich's damages include "the diminution in the value of his membership interests" and "lost distributions." (*Id.* ¶ 89.) In a company with other owners, those losses would ordinarily

belong to the company, but when both members of a two-member company are before the court, that logic breaks down.

The members in *Stoker* alleged no special injury. 272 Ga. App. at 822. They sued the other member directly for usurping company opportunities and converting company assets, and the court allowed it. *Id.* at 822–23. It allowed the same for a claim that excessive costs had reduced the companies' profits. *Id.* at 828. A direct suit "with all the members joined may prevent a defendant member from inappropriately sharing in the recovery." *Id.* at 823.

The remaining reason, the protection of creditors, also does not apply to the instant case. *Thomas* withholds a direct recovery where it would risk "prejudice to other interested parties, such as creditors." 250 Ga. at 774. Far from threatening any creditor, Zurich's claim is aligned with the interests of the companies' lender, City National Bank of Florida. City National has asserted a covenant default, and its loan matures on December 17, 2026. (Doc. 2 ¶¶ 28–29.) Zurich has consistently pressed for steps that would see it repaid, and Neiswenter has repeatedly blocked them. He signed the Rainbow lease amendment, which would add rent at the center, and asked Neiswenter to countersign it. (*Id.* ¶¶ 44, 74.) Instead, on August 3, weeks after the tenant's one-week deadline had passed, Neiswenter answered that the amendment "as drafted is factually incorrect" and was one "which we could not execute in its current form anyway," and he proposed nothing in its place. (*Id.* ¶¶ 41, 43, 46.) When purchase offers came in, one of them for approximately $22,400,000, Neiswenter refused to list the property or to permit Zurich to market it. (*Id.* ¶¶ 64–66.) Zurich demanded in writing that Neiswenter list the property, initiate financing, respond to the offer, and sign the Rainbow amendment, and Neiswenter did none of those things. (*Id.* ¶¶ 68, 70.) Zurich also guarantees the loan personally. (*Id.* ¶ 79.) It is precisely Neiswenter's

refusals that expose the companies to "default interest, enforcement costs, and the risk of foreclosure," and expose the creditor to the risk of non-payment. (*Id.* ¶ 78.)

Nor would Zurich's recovery divert anything from the companies. Count I seeks "a personal judgment against Neiswenter." (*Id.* ¶ 85(c).) It "does not reach the assets of either company, does not withhold from either company proceeds to which it is entitled, does not diminish the collateral securing the CNB Loan, and does not alter the obligations of any guarantor." (*Id.*) That distinguishes Count I from Neiswenter's counterclaims, which seek to recover company money in his own name. (*See* Doc. 14 § C.1.) A member "has no interest in specific limited liability company property," O.C.G.A. § 14-11-501(a), so a claim to recover it belongs to the company. A claim against the other member personally, for an injury aimed at the plaintiff's own interest, does not.

**B. The Companies Are Nominal Parties.**

Federal courts "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (quotation omitted). A nominal party is one "neither necessary nor indispensable," and the "ultimate test" is whether, in its absence, the court can enter a final judgment "which would not be in any way unfair or inequitable to plaintiff." *Id.* (quotation omitted). Count I seeks damages from Neiswenter alone and nothing from the companies, so the Court can "accord complete relief among existing parties" without either company. Fed. R. Civ. P. 19(a)(1)(A).

The companies are also nominal as to Count II. Georgia's dissolution statute permits a court to dissolve a limited liability company "[o]n application by or for a member." O.C.G.A. § 14-11-603(a). Applying *Thermoset*, a court in this district held that a Georgia limited liability

company was a nominal party to a member's dissolution action because the member "did not have to name" the company and had "no claims, monetary or otherwise," against it. *Fox v. Bulkley*, No. 3:24-cv-00031-TES, 2024 WL 2239742, at *4 (M.D. Ga. May 17, 2024), *reconsideration denied*, 2024 WL 2884167 (M.D. Ga. June 7, 2024); *see Moses v. Pennebaker*, 312 Ga. App. 623 (2011). So too here. Zurich asserts no claim against either company, and he seeks no receiver and no injunction against either of them. (Doc. 2 ¶ 14 & at 18.) *Masters v. Harkleroad*, 303 F. App'x 859, 861 (11th Cir. 2008) (per curiam), concerned limited liability companies that the plaintiffs sought to place in receivership, dissolve, and enjoin from doing business, and it does not address a claim for dissolution alone.

Neiswenter agrees. Although his answer denied that the companies were dispensable (Doc. 5, Answer ¶ 17), his brief filed in response to the Court's Order asks the Court to "treat 5192 and AUXGA as nominal defendants to Zurich's claims." (Doc. 10-1 at 25.) He acknowledges that there is "no requirement under Georgia law that 5192 or AUXGA be named as parties for any of the relief sought by either Zurich or Neiswenter." (*Id.* at 27.) The parties cannot confer jurisdiction by agreement, but they agree on the facts and the governing law that decide this question.

**C. If the Court Concludes Otherwise, It Should Drop the Companies Rather Than Dismiss the Action.**

"On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Rule 21 permits a court to drop "a dispensable nondiverse party . . . at any time, even after judgment has been rendered." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). This Court has done so, dismissing nondiverse defendants without prejudice and "retain[ing] jurisdiction" over the remaining parties. *Branch Banking & Tr. Co. v. WCDM Dev., LP*, No. 5:11-CV-122 (MTT), 2012 WL 928696, at *3 (M.D. Ga. Mar. 19, 2012). The companies

are dispensable to Count I, which seeks damages from Neiswenter alone, and Zurich has requested this relief in the alternative. (Doc. 2 ¶ 17 & Prayer (C).)

Count II could not proceed without the companies. If the Court concludes that the companies are real parties to Count II, Zurich asks that the Court say so and allow him to amend his complaint to remove that count. *See Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 958 (11th Cir. 2018) (the "easiest and most obvious" way to dismiss a single claim "is to seek and obtain leave to amend the complaint to eliminate the remaining claim, pursuant to Rule 15"). Count I would remain, between a citizen of Virginia and a citizen of Florida, for damages well in excess of $75,000. (Doc. 2 ¶¶ 6–7, 12–13.)

### D. Jurisdiction Rests on Zurich's Complaint, and Neiswenter's Later Filings Cannot Defeat It.

The parties' citizenship is measured by "the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (quotation omitted). Everything else turns on "the claims and parties that the plaintiff includes in a complaint," and the complaint that counts is the operative one. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 36 & n.5 (2025). When Zurich sued, he was a citizen of Virginia and Neiswenter a citizen of Florida. (Doc. 2 ¶¶ 6–7.) His operative complaint seeks damages from Neiswenter alone on Count I and asserts no claim against either company. (*Id.* ¶¶ 14, 85(c).) Jurisdiction that exists when an action is commenced "may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (per curiam). "Much less is such jurisdiction defeated by the intervention . . . of a party whose presence is not essential to a decision of the controversy between the original parties." *Id.* (quoting *Wichita R.R. & Light Co. v. Pub. Utils. Comm'n of Kan.*, 260 U.S. 48, 54 (1922)).

The complications that have arisen since Zurich filed came from Neiswenter. His answer denied that the companies were dispensable, a position the Court noted in directing briefing and that he has since abandoned. (Doc. 7 at 3; Doc. 5, Answer ¶ 17; Doc. 10-1 at 25.) His counterclaims assert injuries "derivatively and for the benefit of" the companies (Countercl. ¶ 310), and in a derivative suit the company "is the real party in interest." *Ross v. Bernhard*, 396 U.S. 531, 538 (1970). They "now seek appointment of a receiver" (Doc. 10-1 at 29), the relief that led the Eleventh Circuit in *Masters* to treat limited liability companies as real parties. 303 F. App'x at 861. And they join the Law Office, 2364 TICZ, LLC, and thirteen other entities, among them 5192 Illinois. (Countercl. ¶¶ 13–18.)

None of that changes the parties' citizenship when Zurich sued, and none of it is part of Zurich's complaint. A defendant's counterclaims rest on supplemental jurisdiction, which "shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Section 1367(b) limits only "claims by plaintiffs" and those seeking to join as plaintiffs. *Id.* § 1367(b). A defendant may therefore join nondiverse parties to his counterclaims, because "defendants are involuntarily brought into court." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 492–93 (4th Cir. 1998). Claims that need no diversity of their own cannot take away diversity over the plaintiff's claims. If the Court concludes that any counterclaim lies outside its jurisdiction, or that the receivership Neiswenter seeks would make the companies real parties to his claims, the remedy runs to those claims. The Court can deny the receivership, decline supplemental jurisdiction over a particular counterclaim under § 1367(c), or drop the parties Neiswenter joined under Rule 21. It need not dismiss Zurich's action. Jurisdiction over the counterclaims also does not depend on Count IX, which Zurich has moved to dismiss. (Doc. 14; Doc. 15, Subject-Matter Jurisdiction Part B.)

## CONCLUSION

The Court has diversity jurisdiction over Zurich's claims, because the controversy is between a citizen of Virginia and a citizen of Florida and the companies are nominal parties. It has supplemental jurisdiction over the counterclaims. Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). If the Court concludes that either company is a real party to Count II, Zurich respectfully asks that the Court drop the companies under Rule 21, permit him to amend his complaint to remove Count II, and retain jurisdiction over Count I.

Respectfully submitted this 17th day of November, 2026.

HAIGLER & ASSOCIATES,
by J.A.S. Legal Firm, LLC

*/s/ Ashanti Armstrong*
Ashanti Armstrong, Esq.
Georgia Bar No. 878516
Attorney for Plaintiff and
Counterclaim-Defendant Zachary Zurich
400 Galleria Parkway, SE, Suite 1500
Atlanta, Georgia 30339
Telephone: (404) 475-2585
Email: armstrong@haigler-firm.com

**CERTIFICATE OF SERVICE**

I certify that on November 17th 2026, I electronically filed the foregoing Plaintiff and Counterclaim-Defendant ZACHARY ZURICH'S SUPPLEMENTAL BRIEF ON SUBJECT-MATTER JURISDICTION with the Clerk of Court using the CM/ECF system, which will send notice of the filing to all counsel of record, including the following.

Brian S. Goldberg
BUCHALTER LLP
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
bgoldberg@buchalter.com
Counsel for Defendant and Counterclaim-Plaintiff David Neiswenter

*/s/ Ashanti Armstrong*
Ashanti Armstrong, Esq.
Georgia Bar No. 878516